**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------X

VLADIMIR JEANTY

        Plaintiff,

        -against-

THE CITY OF NEW YORK, CAMBA, THE LEGAL AID
SOCIETY, LT CARLOS SERRANO, TAX ID #946236;
PO ALI WILLACY, TAX ID #966905; PO ASHLEY
PHILLIPS, TAX ID #972872; PO JEAN SOUFFRANT,
TAX ID #958086; PO SHUNJIE LAI, TAX ID #967155;
PO EDMUND MAYS, TAX ID #956900; PO JONATHAN
AQUINO, TAX ID #957337; PO BRIAN CHENG, TAX
ID, #957452; PO GREGORY RODRIGUEZ, TAX ID
#973154; PO YURI ENORME TAX ID #956623; DET.
ALEX ARTY, TAX ID #914534; PO BENJAMIN CHEN,
TAX ID #960362; SCHOOL SAFETY AGENT MELANIE
WHITE, TAX ID #343692; SCHOOL SAFETY AGENT
IAN MCCAIN, TAX ID #372038 SCHOOL SAFETY
AGENT ELIZABETH APONTE, TAX ID #353281;
SCHOOL SAFETY AGENT MARIBEL ROMAN, TAX ID
#358418; SCHOOL SAFETY AGENT JOSHUA
MERCADO, TAX ID #363829; SGT. GODWIN NGAI,
TAX ID #954175; PO LANDREY CHERENFANT, TAX
ID#946454; BRIAN MAHER, TAX ID #955113; LEGAL
ASST. VANESSA CONTRATTO, CHARMAINE NOEL,
KRISTINA BEECHER, CAROLINE OKUN, ESQ;
MENACHEM WHITE, ESQ; UNA P. SANDERS;
JOHN/JANE DOE ONE TO FIVE IN THEIR
INDIVIDUAL AND OFFICIAL CAPACITIES AS
EMPLOYEES OF THE CITY OF NEW YORK;

        Defendants.

-----------------------------------------------------------------------X

**CIVIL ACTION NO.:**

**1:23-cv-09472**

**FIRST AMENDED
COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiff, Vladimir Jeanty, pro-se for his Complaint alleges as follows:

## A. <u>PRELIMINARY STATEMENT</u>

1. Plaintiff Vladimir Jeanty, Pro-se brings this seemingly expansive action against multiple

    private individuals and New York City employees.

2. Mr. Jeanty will outline facts below of how these private individuals and City employees individually and in concert violated Mr. Jeanty's Federal and State Constitutional Rights.

3. Additionally, certain City officials violated Mr. Jeanty's Civil Right under NYC Municipal and State laws.

4. The facts will demonstrate that all named Defendants callously, purposely, intentionally and knowingly violated Mr. Jeanty's rights and did so with malice.

5. The named Defendant violated Mr. Jeanty's rights simply because Mr. Jeanty is a black male who simply wanted/wants to be involved in raising His daughter who at all times relevant was under the age of 8.

6. Mr. Jeanty brings this action to address and vindicate the egregious and persistent violation of His rights by the named Defendants.

## B. <u>PARTIES</u>

7. Plaintiff Vladimir Jeanty (Hereinafter "Mr. Jeanty") is now a 50 year black male father of 4 who at all times relevant was a resident of New York. Mr. Jeanty has a child in common, NAJ, with Una P. Sanders. Mr. Jeanty at all times relevant lived in Far Rockaway New York.

8. Subject child NAJ is Mr. Jeanty and Una Sanders' now 7 ½  year old daughter. At all times relevant NAJ lived with her mother Una P. Sanders in Brooklyn, New York.

9. Defendant Una P. Sanders ("Sanders") is a 40 year old black woman. She is a mother of 4. She has a child in common, NAJ, with Mr. Jeanty. She lives at 230 Lott Ave., Apt 1I Brooklyn, New York.

10. Defendant City of New York (the "City") is a municipal corporation duly organized under the laws of the State of New York. At all times relevant hereto, the City, acting

through Department of Education (DOE), Department of Homeless Services (DHS) through CAMBA, and the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all DOE, DHS through CAMBA and NYPD matters, including the appointment, training, supervision, and conduct of all DOE, DHS through CAMBA and NYPD personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of DOE, DHS through CAMBA and of the NYPD and for ensuring that DOE, DHS through CAMBA and NYPD personnel obey the laws of the United States, the State of New York and the City of New York. Business address is City of New Yor, Corporation Counsel, 100 Church St. New York, NY 10007.

11. Defendant, Police Lieutenant Carlos Serrano, Tax ID #946236 , ("Serrano") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is NYPD TB Bus Enforcement Unit, 130 Livingston St., Brooklyn, NY 11201.

12. Defendant, Police Officer Ashley Phillips, Tax ID #.972872, ("Phillips") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of her employment as such. Business Address is 79th Precinct, 263 Tompkins Ave, Brooklyn, NY 11216.

13. Defendant, Police Officer Ali Willacy, Tax ID #966905, ("Willacy") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business Address is 79th Precinct, 263 Tompkins Ave, Brooklyn, NY 11216.

14. Defendant, Police Officer Jean Souffrant, Tax ID #958086, ("Souffrant") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business Address is 79th Precinct, 263 Tompkins Ave, Brooklyn, NY 11216.

15. Defendant, Police Officer Shunjie Lai, Tax ID #967155, ("Lai") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is NYPD TB Bus Enforcement Unit, 130 Livingston St., Brooklyn, NY 11201.

16. Defendant, Police Officer Gregory Rodriguez, Tax ID #973154, ("Rodriguez") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

17. Defendant, Police Officer Yuri Enorme, Tax ID #956623, ("Enorme") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

18. Defendant, Police Officer Edmund Mays, Tax ID #956900,  ("Mays") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 73rd Precinct, 1470 E New York Ave, Brooklyn, NY 11212.

19. Defendant, Police Sergeant Godwin Ngai, Tax ID #954175, ("Ngai") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

20. Defendant, Police Officer Landrey Cherenfant, Tax ID#946454, ("Cherenfant") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

21. Defendant, Police Officer Brian Maher, Tax ID #955113, ("Maher") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

22. Defendant Police Officer Benjamin Chen, Tax ID #960362, ("Chen") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 115th Precinct, 92-15 Northern Blvd, Queens, NY 11372.

23. Defendant Police Officer Jonathan Aquino, Tax ID #957337 ("Aquino") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 73rd Precinct, 1470 E New York Ave, Brooklyn, NY 11212.

24. Defendant, Police Officer Brian Cheng, Tax ID #957452, ("Cheng") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 73rd Precinct, 1470 E New York Ave, Brooklyn, NY 11212.

25. Defendant, Police Detective Alex Arty, Tax ID #914534, ("Arty") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 73rd Precinct, 1470 E New York Ave, Brooklyn, NY 11212.

26. Defendant, School Safety Agent Ian McCain, Tax ID #372038, ("McCain") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

27. Defendant, School Safety Agent Joshua Mercado Tax ID #363829, ("Mercado") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

28. Defendant, School Safety Agent Maribel Roman, Tax ID #358418, ("Roman") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the scope of her employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211. Roman is on Military leave.

29. Defendant, School Safety Agent Melanie White, Tax ID #3436925, ("SSA M. White") of the NYPD acting in the capacity of agent, servant, and employee of the City, and

within the scope of her employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

30. Defendant, School Safety Agent Elizabeth Aponte, Tax ID #353281 ("Aponte") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the scope of her employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

31. Defendant, Kristina Beecher ("Beecher"), was at all relevant times, the principal at PS003, Bedford Village School of the New York City Department of Education, She was at all relevant times acting in the capacity of agent, servant, and employee of the City , and within the scope of her employment as such. Business address is 50 Jefferson St., Brooklyn, NY 11216.

32. Defendant, Charmaine Noel ("Noel"), was at all relevant times, the Supervisor of the CAMBA after school program at PS003 the Bedford Village School of the New York City Department of Education; She was at all relevant times, acting in the capacity of agent, servant, and employee of the City, and within the scope of her employment as such. Noel is employed by Defendant CAMBA. Business address 1720 Church Avenue, 2nd Fl. Brooklyn, NY 11226.

33. Defendant, Vanessa Contratto, ("Contratto"), Registration No. 5934484, is a legal assistant in the Kings County District Attorney's Office; She was at all relevant times, acting in concert with and in the capacity of agent, servant, and employee of the City, and within the scope of her actions as such. Business address is 350 Jay St. Brooklyn NY 11201.

34. Defendant, Menachem White, ("M. White"), Registration No. 4916789, is a private individual, a practicing attorney of law and a citizen of New York State; He was at all relevant times, acting in concert with and in the capacity of agent, servant, and employee of the City, and within the scope of his actions as such. Business address is 4 Brower Ave, Ste. 3 Woodmere NY 11598.

35. Defendant, Caroline Okun, ("Okun"), Registration No. 5070214, is a private individual, a practicing attorney of law and a citizen of New York State. She was at all relevant times, acting in concert with Defendant Menachem White, Esq., and Defendant Una Sanders, and within the scope of her actions as such. Business address is 111 Livingston St., Fl 8 Brooklyn, NY 11201,

36. Defendant CAMBA, ("CAMBA"), at all relevant times was and is a domestic business corporation, duly organized and existing under and by virtue of the laws of the State of New York. CAMBA is a multi-service agency that provides community-based programming including infant and maternal health, family support, and youth development programs. For more than 20 years, CAMBA has provided quality shelter services under contract with the NYC Department of Homeless Services (DHS). Business address is 1720 Church Avenue, 2nd Fl. Brooklyn, NY 11226.

37. Defendant Legal Aid Society, (LAS), at all relevant times was and is a domestic business corporation, duly organized and existing under and by virtue of the laws of the State of New York. LAS works throughout New York City to ensure everyone has access to justice. Business address is 111 Livingston Street Brooklyn, New York 11201, 8th Floor

## C. JURISDICTION AND VENUE

38. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983,1988, New York State law and New York City Administrative Code.

39. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367.

40. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the acts complained of occurred in the Eastern District of New York.

## D. JURY DEMAND

41. Plaintiff demands trial by jury.

## E. FACTUAL ALLEGATIONS

### i. Conditions Precedent/Notice of Claim

42. Plaintiff served notices of claim on the City of New York on or about October 21, 2022 relating to the 9/26/2022 arrest, 1/4/2022 relating to the 6/11/2021 & 1/8/2021 arrests and on 4/29/2022 relating to the 2/1/2022 arrest.

43. At least thirty days have elapsed since the service of the notices of claim, and adjustment or payment of the claims has been neglected or refused.

44. This action has been commenced within one year and ninety days after September 26, 2022; the happening of the events, in part upon which the claims are based.

### ii. New York Custody and Visitation Rights

45. In New York State Custody a Custody Order gives responsibility for the child's care and how the child is brought up to one or both of the child's parents or to someone else. There are two parts of custody: (1) legal custody and (2) physical custody. A New York court can make orders about the child's custody only until the child is 18 years old. The Court gives custody based on what is best for the child, this is called the "best interest of the

child." If there is no court order, then both parents have equal rights to physical and legal custody of the child[1].

46. In New York State whoever has legal custody has the right to make important decisions about a child's care such as medical care or religious upbringing. If the Judge gives joint legal custody, the parents make major decisions about the child together. It doesn't matter which parent the child lives with; both parents must agree on the decisions together. If the Judge gives one parent sole legal custody, only one parent has the right to make major decisions for the child.

47. In New York State whoever has physical custody, also known as residential custody, is responsible for the actual physical care and supervision of a child. If the Judge gives joint physical custody, the child lives with each parent for an equal amount of time. If the Judge gives sole physical custody, the child lives with this adult more than 50% of the time and this person is the custodial party and the noncustodial party will have visitation.

### iii.     Mr. Jeanty and Defendant Sanders' Family Court case

48. NAJ a female was born on 6/8/2016.

49. Mr. Jeanty had previously informed Defendant Sanders that he did not want to have any children with her.

50. Despite Mr. Jeanty's feelings toward Ms. Sanders Mr. Jeanty welcomed the birth of NAJ.

51. Mr. Jeanty accompanied Defendant Sanders to her prenatal doctor's appointments.

52. Mr. Jeanty was present at NAJ's birth.

53. Mr. Jeanty picked up Defendant Sanders and NAJ from the hospital.

---

[1] https://www.nycourts.gov/courthelp/family/custody.shtml

54. Mr. Jeanty expressed to Defendant Sanders his desire to be in NAJ's life and to help raise her.

55. From birth to approximately March of 2017 everything was fine between Mr. Jeanty and Defendant Sanders.

56. In March of 2017 Defendant Sanders found out Mr. Jeanty was involved with another female.

57. Ms. Sanders began to refuse to allow Mr. Jeanty any contact with NAJ.

58. In April of 2018, Mr. Jeanty went to Queens County Family Court to file a visitation petition.

59. Mr. Jeanty was informed that he had to file in Kings County because NAJ was part of a Neglect proceeding in that Court.

60. Mr. Jeanty went to KCFC and found out for the first time that NAJ was part of Defendant Sanders' Article 10 Neglect Petition for allegedly leaving NAJ unsupervised at a McDonald in Brooklyn.

61. This neglect petition proceeding terminated in September of 2020 when defendant Sanders accepted an ACD disposition.

At all relevant times Mr. Jeanty was granted multiple variations of a visitation order which allowed Mr. Jeanty to visit with NAJ.Mr. Jeanty requested this visitation order because Defendant Sanders refused to allow Mr. Jeanty to spend any time with NAJ.

62. Mr. Jeanty is not and never was and absent dad.

63. As of April 2018, to present Mr. Jeanty and Defendant Sanders have pending cross-motions for custody of NAJ.

64. At all times relevant and from 6/8/2016 (NAJ birth) to 10/15/2023 neither Mr. Jeanty nor Defendant Sanders had legal custody of NAJ nor legal physical custody of NAJ by Court order or otherwise.

65. Mr. Jeanty and Defendant Sanders had equal legal rights to NAJ.

66. At all relevant times Mr. Jeanty had a Court issued visitation order.

67. On 10/16/2023 during an ex-parte proceeding Judge Caroline Cohen of KCFC granted Defendant Sanders temporary custody of NAJ in part as a result of the events leading to the arrest of Mr. Jeanty on 9/26/2022.

### iv. Events and Facts of 1/8/2021 Arrest as to Defendants Sanders, Chen and Aquino

68. On or about  an unknown date and time Defendant Sanders made a complaint with Defendant Aquino and Chen.

69. Defendant Sanders alleged that Mr. Jeanty violated a temporary limited order of protection dated 12/14/2020 issued by a Family Court Referee.

70. Defendant Sanders alleged that on 12/28/2020 Mr. Jeanty followed, scared, alarmed and annoyed her after exchanging NAJ after a visit.

71. Defendant Sanders reported:

> "After [Mr. Jeanty] transferred physical custody of [NAJ] to [Defendant Sanders], [Mr. Jeanty] did follow [Defendant Sanders] for a block and impede [Defendant Sanders'] path causing [Defendant Sanders] to step and walk around [Mr. Jeanty]."

72. Defendant Aquino and Chen had no further information from Defendant Sanders that Mr. Jeanty followed her or followed her with the intent of harassing annoying or alarming Defendant Sanders.

73. Mr. Jeanty could not possibly or physically follow Defendant Sanders and at the same time impede her path. Clearly Defendant Sanders was walking behind and following Mr. Jeanty causing her to step and walk around Mr. Jeanty.

74. Defendant Sanders alleged that on 1/6/2021 Mr. Jeanty repeatedly texted Defendant Sanders thereby alarming and annoying her.

75. Defendant Sanders did not provide Defendant Aquino a copy of these alleged text messages.

76. If Defendant Sanders did provide a copy of these alleged text messages, Defendant Aquino and Chen read them and would have understood that they were messages sent via text during a back and forth conversation.

77. Mr. Jeanty did not harass, menace, intimidate or threaten Defendant Sanders.

78. Mr. Jeanty was simply expressing his personal views of Defendant Sanders to Defendant Sanders via text in response to defendant Sanders' text messages to Mr. Jeanty.

79. Nothing Mr. Jeanty texted Defendant Sanders or did constituted physical menace or placed Defendant Sanders in fear of death, imminent serious physical injury or physical injury.

80. Mr. Jeanty did not violate the limited order of protection.

81. Defendant Aquino and Chen were aware that Mr. Jeanty and defendant Sanders were in a Family Court dispute.

Defendant Aquino and Chen were aware that there were approximately 20 plus Domestic Incident Reports filed by Mr. Jeanty and Defendant Sanders against each other.

82. Defendants Aquino and Chen arrested Mr. Jeanty without His consent.

83. Defendant Aquino and Chen did not have reasonable suspicion that a crime occurred.

84. Defendant Aquino and Chen arrested Mr. Jeanty without probable cause.

85. Defendant Aquino charged Mr. Jeanty with:

> PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE
> PL 240.26(3) HARASSMENT IN THE SECOND DEGREE
> PL 120.14(3) MENACING IN THE SECOND DEGREE
> PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE
> PL 240.26(2) HARASSMENT IN THE SECOND DEGREE

86. Defendant Aquino intentionally made up and exaggerated these charges to arrest Mr. Jeanty and prosecute him.

87. Defendant Aquino arrested and charged Mr. Jeanty in an attempt to stop Mr. Jeanty from expressing His views and opinions of Defendant Sanders.

### v.    Events and Facts of the 6/11/2021 Arrest as to Defendants Sanders and Cheng

On or about 6/11/2021 Defendant Sanders reported to Defendant Cheng that Mr. Jeanty violated a full stay away and do not communicate Order of Protection dated 1/9/2021 signed by Judge Lanzetta by texting her:

> "Why didn't you get an abortion??? I prayed that you would...I'm really serious. God cursed me. Why couldn't anyone else be [NAJ's] mother. Why you of all people. I wish anyone else would've gotten pregnant. I love [NAJ]. I still got that pic of Deja outside in a pamper at [East Meadow] in the cold and that speed knot on Isaiah's head when you punched him. Yeah, you're a great mom. Brooklyn hoodrat...y'all the best make babies be on welfare."

88. The 1/9/2021 order of protection was a temporary limited order of protection which required Mr. Jeanty to refrain from assaulting, harassing, menacing, intimidating or threatening Defendant Sanders.

89. The 1/9/2021 Temporary Order of Protection was issued via a virtual appearance. It specifically noted "via video," "defendant unable to sign," and "NYPD to serve". The box for "refrain from communicating" was clearly not checked.

90. Defendant Cheng read the text conversation between Mr. Jeanty and Defendant Sanders.

91. Mr. Jeanty was simply engaging in a back-and-forth conversation with Defendant Sanders.

92. Mr. Jeanty did not assault, harass, menace, intimidate or threaten Defendant Sanders.

93. Mr. Jeanty was simply expressing his views and feelings to Defendant Sanders via text messages in response the Defendant Sanders' messages.

94. Defendant Cheng arrested Mr. Jeanty because Mr. Jeanty used colorful language which Defendant Sanders and Defendant Cheng did not like or appreciate.

95. Defendant Cheng charged Mr. Jeanty with:

    PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE
    PL 240.30(2) AGGRAVATED HARASSMENT IN THE SECOND DEGREE

96. Defendant Sanders falsely reported to Defendant Cheng that the 1/9/2021 TOP did not allow Mr. Jeanty to communicate with Defendant Sanders.

97. Defendant Cheng was in possession of and read the TOP which clearly did not prohibit Mr. Jeanty from communicating with Defendant Sanders.

98. Defendant Cheng falsely stated in charging Mr. Jeanty that Mr. Jeanty was not allowed to communicate with Mr. Jeanty.

99. Mr. Jeanty repeatedly told Defendant Cheng when arrested that the TOP did not require Mr. Jeanty to refrain from communicating with Defendant Sanders.

100. Defendant Cheng was aware that Mr. Jeanty and defendant Sanders were in a Family Court dispute.

101. Defendant Cheng was aware that there were approximately 25 plus Domestic Incident Reports which existed between Mr. Jeanty and Defendant Sanders.

102. Defendant Chen arrested and charged Mr. Jeanty in an attempt to stop Mr. Jeanty from expressing His views and opinions of Defendant Sanders.

103. Mr. Jeanty did not consent to being arrested.

104. Defendant Cheng did not have reasonable suspicion that a crime occurred.

105. Defendant Cheng arrested Mr. Jeanty without probable cause.

**vi.      Events and fact of 2/1/2022 arrest as to Defendants Sanders, Contratto and Arty**

106. On or about 11/30/2021 Defendant Arty called Mr. Jeanty regarding a walk-in complaint reported by Defendant Sanders which He was investigating.

107. Defendant Sanders reported that Mr. Jeanty allegedly violated an order of protection.

108. Defendant Arty inquired as to the multiple text messages Mr. Jeanty sent Defendant Sanders during multiple conversations, they were having on 11/3/2021 and 1/24/2022.

109. Defendant Arty issued and I-Card for Mr. Jeanty's arrest. Mr. Jeanty informed Defendant Arty that he would turn himself in.

110. Mr. Jeanty attempted to turn Himself in twice at the 73rd precinct between 12/1/2021 and 2/1/2022 and was turned away because Defendant Arty was not working on those days.

111. Mr. Jeanty was finally able to turn himself in on 2/1/2022 and was arrested by defendant Arty.

112. Defendant was aware of Mr. Jeanty and Defendant Sanders on-going Family Court case regarding NAJ.

113. Defendant Arty informed Mr. Jeanty that Defendant Sanders originally wanted to make a complaint against Mr. Jeanty alleging that Mr. Jeanty sexually abused NAJ. Defendant Arty sated that He did not take the complaint because He knew she was lying.

114. Defendant Arty informed Mr. Jeanty that He told Defendant Sanders that He would not take such a complaint without medical proof.

115. Defendant Arty accepted Her complaint about these text messages because Defendant Sanders kept calling and coming into the 73rd Precinct insisting that Mr. Jeanty be arrested and charged.

116. Defendant Arty arrested Mr. Jeanty for violation of a limited temporary order of protection dated 6/8/2021 which required Mr. Jeanty to refrain from assaulting, harassing, menacing, intimidating or threatening Defendant Sanders.

117. Defendant Arty arrested Mr. Jeanty for text messages He sent in exchange in multiple back-and-forth conversations between Mr. Jeanty and Defendant Sanders.

118. Defendant Arty read the conversations.

119. Defendant Arty arrested Mr. Jeanty because Mr. Jeanty used colorful language better known as curse words which Defendant Sanders and Defendant Arty did not like or appreciate.

120. Defendant Arty issued an I-Card despite having no reasonable basis for doing so. The temporary order of protection did not prohibit Mr. Jeanty from communicating with Defendant Sanders.

121. Mr. Jeanty did not assault, harass, menace, intimidate or threaten Defendant Sanders.

122. Defendant Arty reported His arrest to Defendant Contratto. Defendant Contratto is a Legal Assistant in the Kings County District Attorney's Office who worked as a screener on 2/1/2022. Defendant Contratto executed a sworn criminal court complaint charging Mr. Jeanty with:

> PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE
> PL 240.26(1) HARASSMENT IN THE SECOND DEGREE

PL 240.26(3) HARASSMENT IN THE SECOND DEGREE
PL 240.26(1) HARASSMENT IN THE SECOND DEGREE
PL 240.26(3) HARASSMENT IN THE SECOND DEGREE

123. Defendant Contratto charged Mr. Jeanty because Defendant Arty refused to charge Mr. Jeanty. Defendant Arty simply wanted to teach Mr. Jeanty a lesson.

124. Defendant Arty arrested and charged Mr. Jeanty in an attempt to stop Mr. Jeanty from expressing His views and opinions of Defendant Sanders.

125. Defendant Contratto charged Mr. Jeanty in an attempt to stop Mr. Jeanty from expressing His views and opinions of Defendant Sanders.

126. Defendant Contratto never spoke to Defendant Sanders prior to executing the criminal court complaint.

127. Defendant Arty was aware that there were approximately 30 plus Domestic Incident Reports filed between Mr. Jeanty and Defendant Sanders.

128. Mr. Jeanty did not consent to arrest.

129. Defendant Arty did not have reasonable suspicion that a crime occurred.

130. Defendant Arty arrested Mr. Jeanty without probable cause.

**vii.      Events and Facts of the 6/9/2022 Arrest as to Defendants Sanders and Mays.**

131. On  6/9/2022 Defendant Sanders reported to Defendant Mays that Mr. Jeanty violated Full Order of Protection requiring Mr. Jeanty stay away and no to communicate with Defendant Sanders; 'subject to Family Court orders Re: Custody and Visitation'.

132. In May of 2022 there existed a 2/4/2022 Family Court Visitation Order titled: 'In the Matter of an Article 6 Custody/Visitation Proceeding.' This order stated:

ORDERED that Mr. Vladimir Jeanty may have incidental contact and communication with Ms. Una Sanders to facilitate contact and visitation between Mr. Jeanty and the subject child, Nyasia Jeanty, DOB 6/8/2016.

133. In accordance with this order and in compliance with the 2/2/2022 Order of Protection Mr. Jeanty texted Defendant Sanders "[NAJ] pic day tomorrow. please have her wear a nice shirt and do her hair, thanks." This text was not a prohibited communication nor was it harassing, threatening, or intimidating.

134. On 6/9/2022 Defendant Mays falsely arrested Mr. Jeanty for allegedly violating an Order of Protection and harassing Defendant Sanders by texting her on multiple days in May 2022.

135. Defendant Mays charged Mr. Jeanty with:

> PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE
> PL 240.26(1) HARASSMENT IN THE SECOND DEGREE
> PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE
> PL 240.26(1) HARASSMENT IN THE SECOND DEGREE

136. Upon information and belief, the source of which is Mr. Jeanty personal knowledge and reviewing all text messages sent in the month of May 2022; Mr. Jeanty did not text Defendant Sanders "a photo of [Mr. Jeanty] sticking up [Mr. Jeanty's] middle finger at [Defendant Sanders]" on the day and time alleged by Defendant Sanders and Mays. Defendant Sanders falsely reported this alleged event.

137. Defendant Mays was aware of the Family Court order.

138. Defendant Mays did not see a text message of Mr. Jeanty sticking up a middle finger at Defendant Sanders. Nonetheless He falsely reported it to justify falsely arresting Mr. Jeanty.

139. Defendant May arrested and charged Mr. Jeanty in an attempt to stop Mr. Jeanty from expressing His views and opinions of Defendant Sander

140. Mr. Jeanty did not consent to be arrested.

141. Defendant Mays did not have reasonable suspicion that a crime occurred.

142. Defendant Mays arrested Mr. Jeanty without probable cause.

**viii.** **Events and facts of 9/26/2022 arrest as to Defendants Sanders, Serrano, Phillips, Willacy, Souffrant, Lai, (SSA) M. White, McCain, Roman, Aponte, Mercado, Noel.**

On 9/24/2022 Mr. Jeanty texted Defendant Sanders and asked if she would allow NAJ to have an extended visit with Mr. Jeanty due to the 4-day holiday from 9/24/22 to 9/27/22.

143. Defendant Sanders refused to agree.

144. Mr. Jeanty informed Defendant Sanders that if she was not spending this time with NAJ, and if she sent NAJ to school Mr. Jeanty would go to the NAJ's school and pick her up.

145. Defendant Sanders sent NAJ to school to participate in Jewish Holiday event.

146. At approximately 10am Mr. Jeanty went to NAJ's school, PS3 50 Jefferson St, Brooklyn NY to pick her up.

147. Prior to picking up NAJ Mr. Jeanty called the school and spoke to Defendant Noel and asked if NAJ was there.

148. Defendant Noel said 'yes'. Mr. Jeanty informed Defendant Noel that he would be picking NAJ up.

149. Defendant Noel called Defendant Sanders and informed her that Mr. Jeanty was on His way to pick up NAJ.

150. Once at PS3 Mr. Jeanty informed the school safety agent Yvonne Popo and Defendant Noel that he was there to pick up NAJ.

151. Defendant Noel came out with a copy of Mr. Jeanty's 3/2/2022 temporary order of visitation and informed Mr. Jeanty that he could not pick NAJ because the visitation order did not allow Mr. Jeanty to pick up NAJ.

152. Mr. Jeanty informed Defendant Noel that she was aware that Mr. Jeanty was NAJ's father and that Mr. Jeanty's name was on NAJ's DOE blue card as the only other person allowed to pick up NAJ other than Defendant Sanders.

Mr. Jeanty informed Defendant Noel that She misunderstood the visitation order and that She should not involve herself in Mr. Jeanty and Defendant Sanders' personal business.

Mr. Jeanty informed Defendant Noel that Defendant Sanders did not have any Court order granting her legal custody of NAJ and she therefore could not tell anyone not to allow Mr. Jeanty to pick up their daughter NAJ.

153. Defendant Noel continued to refuse to bring NAJ to Mr. Jeanty.

154. Mr. Jeanty asked if He could see NAJ to make sure she was alright.

155. Defendant Noel agreed to let Mr. Jeanty see NAJ.

156. When Defendant Noel brought NAJ out, Mr. Jeanty picked her up and informed Defendant Noel that they were leaving and where should he sign NAJ out.

157. Defendant Noel yelled to the school safety agents Defendants (SSA) M. White, McCain, Roman, Aponte, Mercado to lock the doors and not allow Mr. Jeanty to leave.

158. Defendant Noel directed Defendants (SSA) M. White, McCain, Roman, Aponte, Mercado to detain Mr. Jeanty and to arrest Mr. Jeanty if He left the building. Defendant Noel attempted to grab NAJ by the arm out of Mr. Jeanty's hands.

159. Defendant McCain a black male School Safety Agent grabbed Mr. Jeanty and informed Mr. Jeanty if He left the school he would be arrested.

160. (SSA) M. White, Aponte and Roman stood in front of the building 3 doors to block Mr. Jeanty from leaving.

161. Mr. Jeanty sat down and called 911 for assistance.

162. School Safety Agent Yvonne Popo called 911 and falsely reported Mr. Jeanty was unlawfully trying to pick up NAJ from school and leave.

163. The 911 radio and sprint report indicated in part:

> "MOTHER AND FATHER CUSTODIAL TO THE LOC D1791" and "AUTH OF BROOKLYN NORTH PLATOON COMMANDER ---STS FATHER IS CHILD TO LEAVE WITH THE CHILD--PARENT ONLY HAS VISITIATION NO CUSTODIAL---NO WPNS---NO INJ--MB RED SHIRT BLK PANTS---THIN BUIILT---130 LBS 6 FT-----REQ ETA PLEASE D1791"

164. Defendant Noel called Defendant Sanders again and told her to hurry up to PS3 because Mr. Jeanty was trying to take NAJ.

165. Defendant Sanders had an active stay away order of protection which required Defendant Sanders to stay away from any location Mr. Jeanty was present.

166. Defendants Serrano, Phillips, Willacy, Souffrant, Lai, (SSA) M. White, McCain, Roman, Aponte, Mercado and Noel were aware of a valid temporary stay away order of protection in favor of Mr. Jeanty. Defendant Noel knowingly summoned Defendant Sanders to Mr. Jeanty's location. The Police Officer defendants allowed defendant Sanders to remain where Mr. Jeanty was despite there being no emergency regarding NAJ and a stay away order of protection in place against Defendant Sanders.

167. Defendant Sanders came to PS3 despite knowing Mr. Jeanty was there and she was required to stay away. She stood outside the doors.

168. Mr. Jeanty sat in a seat with NAJ on his lap.

169. Defendant Noel called Defendant Sanders multiple times to ensure Defendant Sanders that Mr. Jeanty would not be allowed to leave with NAJ.

170. Approximately 45 minutes later Defendants Serrano, Phillips, Souffrant, Willacy, Lai and other NYPD officers arrived at PS3.

171. Defendant Serrano immediately and in an aggressive manner approached Mr. Jeanty and told Mr. Jeanty let go of NAJ and that He could not leave with her.

Defendant Sanders knowingly and falsely told Defendants Serrano, Phillips, Souffrant, Willacy and Lai she had legal custody of NAJ and that Mr. Jeanty was not allowed to pick her up from PS3.

172. Defendant Sanders knowingly and falsely told Defendants Serrano, Phillips, Souffrant, Willacy and Lai that Mr. Jeanty was not allowed to pick up NAJ because of a visitation order and because NAJ lived with her.

173. Mr. Jeanty explained to Defendants Serrano, Phillips, Souffrant, Willacy and Lai that He was NAJ's dad, and he was there to pick her up, He informed Defendant Sanders, His name was on the DOE blue Card and that He and Defendant Sanders had the same right to NAJ because there was no custody order in place just a visitation order in Mr. Jeanty's favor.

174. Defendant Noel knowingly and falsely informed Defendant Serrano that Mr. Jeanty was not allowed to pick up NAJ from PS3.

175. Defendant Noel knowingly and falsely informed Defendant Serrano that Defendant Sanders had custody of NAJ.

176. Defendants Serrano, Phillips, Souffrant, Willacy and Lai read the temporary order of visitation and insisted that the visitation order did not allow Mr. Jeanty to pick up NAJ and that because NAJ lived with Defendant Sanders, Defendant Sanders had custody of NAJ.

177. Mr. Jeanty repeatedly asked if he could leave with NAJ, Defendants Serrano, Phillips, Souffrant, Willacy and Lai told Mr. Jeanty 'NO'.

Mr. Jeanty stood up in an attempt to leave and Defendants Serrano, Phillips, Souffrant Willacy, Lai and other NYPD officers quickly surrounded Mr. Jeanty and NAJ and forced Mr. Jeanty to sit down.

178. Mr. Jeanty repeatedly asked if he was under arrest and was told 'NO'.

179. Defendants Serrano, Phillips, Souffrant, Willacy and Lai demanded that Mr. Jeanty release NAJ to the custody of Defendant Noel.

180. Mr. Jeanty refused to release NAJ to Defendant Noel.

181. Defendants Serrano, Phillips, Souffrant, Willacy and Lai demanded Mr. Jeanty release NAJ to Defendant Phillips.

182. Mr. Jeanty refused to release NAJ to Defendant Phillips.

183. Defendants Serrano, Phillips, Souffrant, Willacy and Lai knew and saw that the entire time NAJ was in Mr. Jeanty custody and control she was not harmed, hurt, in danger or in need of medical assistance. NAJ was fine. There was no emergency.

184. Defendants Serrano, Phillips, Souffrant, Willacy and Lai told Mr. Jeanty if He wanted to leave Mr. Jeanty simply needed to release NAJ to them or Defendant Noel.

Mr. Jeanty informed Defendants Serrano, Phillips, Souffrant, Willacy and Lai that if they or Defendant Sanders produced an order of custody in Defendant Sanders' behalf Mr. Jeanty would gladly turn NAJ to Defendant Sanders.

185. No custody order was produced because none exist.

186. At various times NAJ cried because she was scared of all the commotion caused by the police around Her and Mr. Jeanty. Mr. Jeanty was able to console her and explain to her what was going on and let her know everything would be alright.

187. Defendants Serrano, Phillips, Souffrant, Willacy and Lai had no reason to detain Mr. Jeanty and NAJ.

188. Defendants Serrano, Phillips, Souffrant, Willacy and Lai had no reason to arrest Mr. Jeanty.

   Defendants Serrano, Phillips, Souffrant, Willacy and Lai arrested Mr. Jeanty so that NAJ could be turned over to Defendant Sanders and Defendant Noel.

189. At some point NAJ wanted to use the bathroom.

190. Defendants Serrano, Phillips, Souffrant, Willacy and Lai demanded that Mr. Jeanty turn NAJ over to Defendant Phillip so she could take NAJ to the bathroom.

191. Mr. Jeanty refused and asked if He could take NAJ to the bathroom...Defendant Serrano said 'NO' and refused to allow Mr. Jeanty to take NAJ to the bathroom.

192. Defendant Serrano changed His mind later and told Mr. Jeanty he could take NAJ to the bathroom. Mr. Jeanty took NAJ to the bathroom.

193. Upon returning to his seat, Defendant Serrano informed Mr. Jeanty he would be put under arrest.

194. Defendants Serrano, Souffrant, Willacy and Lai forcibly held Mr. Jeanty' legs and pried Mr. Jeanty's arms open, and Defendant Phillips forcibly removed NAJ from Mr. Jeanty's custody and control without his permission.

195. Defendant Phillips took NAJ away from Mr. Jeanty.

196. Defendant Phillips told NAJ that what Mr. Jeanty did was wrong.

197. Defendant Willacy told Mr. Jeanty and NAJ that Mr. Jeanty was a bad parent and did not deserve to have custody of NAJ.

198. Defendants Serrano, Phillips, Souffrant, Willacy and Lai arrested Mr. Jeanty for allegedly violating:

PL 195.05 Obstructing Governmental Administration
PL 215.50(3) Criminal Contempt
PL 260.10(1) Endangering the Welfare of a Child.

199. Mr. Jeanty did not endanger NAJ.

The only danger to NAJ were Defendants Serrano, Phillips, Souffrant, Willacy, Lai, Noel and other police officers. Mr. Jeanty did not and could not violate the KCFC visitation order which was issued in Mr. Jeanty's favor and Defendant Sanders did not have legal custody or legal physical custody of NAJ.

200. Mr. Jeanty did not obstruct any governmental administration as Defendants Serrano, Phillips, Souffrant, Willacy and Lai unlawfully detained and arrested Mr. Jeanty for no legal reason.

201. Despite asking multiple time if He could leave with NAJ, Mr. Jeanty and NAJ were unlawfully detained for approximately 4 hours and not allowed to leave the building.

202. Defendants Serrano, Phillips, Souffrant, Willacy and Lai arrested Mr. Jeanty for allegedly violating PL 195.05 Obstructing Governmental Administration in 2nd Degree by falsely alleging that Mr. Jeanty interfered with an official function.

203. Defendants Serrano, Phillips, Souffrant, Willacy and Lai were not performing any official function because they responded to Mr. Jeanty's 911 call with the intent of taking NAJ from Mr. Jeanty and turning her over to Defendants Sanders and Noel for no legal reason.

204. Defendants Serrano, Phillips, Souffrant, Willacy and Lai arrested Mr. Jeanty for allegedly violating PL 260.10(1) Endangering the Welfare of a Child by falsely claiming that Mr. Jeanty would not allow NAJ to use the bathroom.

205. Defendants Serrano, Phillips, Souffrant, Willacy and Lai knew Defendant Serrano refused to allow Mr. Jeanty to take NAJ to the bathroom. Defendant Serrano specifically only wanted Defendant Phillips to take NAJ to the bathroom, which Mr. Jeanty refused.

206. Defendants Serrano, Phillips, Souffrant, Willacy and Lai arrested Mr. Jeanty for allegedly violating PL 215.50(3) Criminal Contempt in the 2nd Degree by falsely alleging that Mr. Jeanty violated His own Family Court visitation order.
Defendants Serrano, Phillips, Souffrant, Willacy and Lai knew that Defendant Sanders did not have any court issued order of custody for NAJ.

207. Defendants Serrano, Phillips, Souffrant, Willacy and Lai knew that at all times during this event Mr. Jeanty was not in the presence of Defendant Sanders. Mr. Jeanty was inside and Defendant Sanders was outside.

208. Defendant Willacy filed a false report alleging that Mr. Jeanty made threats against Defendant Sanders. Defendant Sanders was not in the same location as Mr. Jeanty.

209. Defendant Willacy falsely marked on a police report that there was an active stay away Order of protection for Mr. Jeanty. There was one for Defendant Sanders.

210. Defendant Willacy executed a false Suspected Child Abuse or Maltreatment Report (SCAM Report) falsely claiming that He attempted to lawfully arrest Mr. Jeanty and that Mr. Jeanty put NAJ at risk of Personal injury. He submitted same to NYS OCFS.

211. Defendant Willacy took a report from Defendant Sanders that He knew was false because Ms. Sanders was not present in the location where Mr. Jeanty and NAJ were.

212. Ms. Sanders knowingly executed and swore to a false DIR in support of Mr. Jeanty being falsely arrested. She was not present in the location where Mr. Jeanty and NAJ were.

213. Defendant Phillip falsely reported that Mr. Jeanty threatened Defendant Sanders. Defendant Sanders was not in the same location as Mr. Jeanty and NAJ.

214. Mr. Jeanty never consented to NAJ being taken from Him and turned over to Defendants Sanders or Noel.

215. Defendants Serrano, Phillips, Souffrant, Willacy and Lai did not have reasonable suspicion to detain or arrest Mr. Jeanty.

216. Defendants Serrano, Phillips, Souffrant, Willacy and Lai did not have probable cause to arrest Mr. Jeanty.

### ix. Events and facts of 12/10/2022 arrest as to Defendants Sanders, Ngai, Rodriguez, Enorme, Cherenfant and Maher

217. On 12/10/2022 Mr. Jeanty went to pick up NAJ for her Court ordered scheduled visit.

218. Defendant Sanders called 911 complaining Mr. Jeanty was violating a Full Order of Protection dated 9/27/2022 requiring Mr. Jeanty to stay away from and to not communicate with, harass, menace, intimidate or threaten Defendant Sanders and NAJ.

219. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher arrived at Aprils Dance-n-Feet located at 9411 Ave L Brooklyn NY.

220. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher encountered Mr. Jeanty outside and Defendant Sanders waiting inside the lobby.

221. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher each spoke to Mr. Jeanty and Defendant Sanders about the 911 call.

222. Defendant Sanders told Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher that Mr. Jeanty texted her; stating in a domestic incident report (DIR):

"Vladimir keep texting me about stuff that have nothing to do with emergency or medical. He text me about a coat, Xmas, call, and what he sent to lawyers. He do not suppose to text about non-emergency and non medical."

223.  Defendant Rodriguez wrote in the DIR:

"At TPO, C/V state Def't was at scene for prearranged pick up of daughter. C/V states court order only allows def't to contact regarding emergencies. Def't contacted about request of making sure daughter has a jacket."

224.  Defendant Sanders confused a Full Order of Protection against Herself as if it were against Mr. Jeanty in ¶222.

225.  Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher were shown the 9/27/2022 Full Order of Protection issued by Kings County Criminal Court Judge Haniff against Mr. Jeanty.

226.  The 9/27/2022 FOP stated in part:

[99] Observe such other conditions as are necessary to further the purposes of protection: "SUBJECT TO ANY SUBSEQUENT AND EXISTING SUPREME COURT ORDERS AND/OR FAMILY COURT ORDERS RE: CUSTODY & VISITATION."

227.  Plaintiff provided Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher a copy of an existing 2/4/2022 Kings County Family Court CUSTODY & VISITATION ORDER signed by Judge Caroline Cohen which stated:

"ORDERED that Mr Vladimir Jeanty may have incidental contact and communication with Ms. Una Sanders to facilitate contact and visitation between Mr Jeanty and the subject child, Nyasia Jeanty, DOB 6/8/2016."

228.  Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher read both orders and all the text Mr. Jeanty sent Defendant Sanders and decided that Mr. Jeanty did not violate the 9/27/2022 FOP.

229. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher went to Defendant Sanders that Mr. Jeanty would not be arrested.

Defendant Sanders became angry and convinced Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher that they should arrest Mr. Jeanty because the 2/4/2022 Family Court order was not valid and expired.

230. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher believed Defendant Sanders and decided to arrest Mr. Jeanty despite being clearly able to verify that the 2/4/2022 Family Court Order was valid and unexpired.

Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher told Mr. Jeanty was in violation of the 9/27/2022 FOP because He was not allowed to be around NAJ and that the 2/4/2022 Family Court order was not valid and expired.

231. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher knew Mr. Jeanty was allowed to pick up NAJ and to communicate with Defendant Sanders.

232. Defendant Sanders did not provide Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher any additional knew information to justify Mr. Jeanty's arrest.

233. Defendant Ngai, Rodriguez, Enorme, Cherenfant and Maher arrested and charged Mr. Jeanty in an attempt to stop Mr. Jeanty from expressing His views and opinions of Defendant Sanders.

234. Mr. Jeanty did not consent to be arrested.

235. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher did not have reasonable suspicion to detain or arrest Mr. Jeanty.

236. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher did not have probable cause to arrest Mr. Jeanty.

237. Defendant Rodriguez charged Mr. Jeanty knowing Mr. Jeanty committed no crimes.

238. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher failed to inform the Kings County District Attorney Intake that Mr. Jeanty had a Kings County Family Court order that permitted Mr. Jeanty to pick up NAJ and communicate with Defendant Sanders.

239. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher omitted from their reports that Mr. Jeanty provided and there existed a family Court order which allowed Mr. Jeanty to have contact with and communicate with Defendant Sanders and NAJ.

   **x.     Events and facts as to Defendants M. White, Okun, Noel and Beecher**

240. Defendant M. White is a white male who at all relevant times believed Mr. Jeanty was/is a terrorist. Mr. M. White so stated in open Court on 1/26/2023.

241. Defendant M. White, and Okun had one goal in the on-going family court proceeding between Mr. Jeanty and Defendant Sanders...to keep Mr. Jeanty out of NAJ's life. NAJ is a black girl. And these defendants' goal is to have NAJ grow up in a single parent home, raised by Her mother Defendant Sanders; knowing this increases her chances of failing in life as an adult.

242. The State of New York has recognized systemic racism in the Family Court system. The State of New York has established The Franklin H. Williams Judicial Commission, an independent, permanent commission of the New York State Courts created to promote equal access and full participation in the court system by persons and communities of color.[2]

---

[2] https://www.nycourts.gov/LegacyPDFS/IP/ethnic-fairness/pdfs/FHW%20-%20Report%20on%20the%20NYC%20Family%20Courts%20-%20Final%20Report.pdf

243. The Williams Commission seeks to eradicate systemic racism in the court system and legal profession through multiple strategic initiatives.[3]

244. According to the US Dept of justice Office of Juvenile Justice and Delinquency and Prevention; between 1970 and 2022, the proportion of children living with their mothers in single-parent households increased from 7.8% to 16.7% for white youth and from 29.5% to 45.6% for Black youth.[4]

245. Defendant M. White began representing Defendant Sanders on or about 3/1/2019 to the present.

246. Defendant Okun is a court appointed law guardian assigned to represent NAJ in Kings County Family Court from October 2020 to 1/26/2023.

247. Defendant Sanders cannot afford to pay Defendant M. White His customary legal fees. Defendant M. White and Okun entered into an agreement where Defendant Okun would advance Defendant Sanders' needs in family Court.

248. Defendant Okun filed motions on behalf of Defendant Sanders to hold Mr. Jeanty in contempt of court.

249. Defendant Okun filed a motion requesting KCFC Judge Cohen to grant Defendant Sanders temporary custody of NAJ based on the 9/26/2022 arrest which was an event created by Defendants Sanders, Noel and various other named Defendants.

250. Defendant Okun made multiple arguments on behalf of Defendant Sanders to keep NAJ away from Mr. Jeanty.

---

[3] id
[4] https://www.ojjdp.gov/ojstatbb/population/qa01202.asp?qaDate=2022#:~:text=Between%201970%20and%202022%2C%20the,to%2045.6%25%20for%20Black%20youth.

251. Defendant Okun represented Defendant Sanders in KCFC by advancing arguments and making motions on Defendants Sanders' behalf.

252. There was never a basis in fact or law to make the argument Defendant Okun made.

253. Defendants Okun gave Defendant Sanders legal advice regarding the meaning and interpretations of Court orders and what Mr. Jeanty's rights were regarding NAJ. Specifically, Defendants Okun informed Defendant Sanders that Mr. Jeanty was not allowed to pick up NAJ or see NAJ except on days specifically outlined in the KCFC order. She knowingly and falsely advised her that she had legal custody of NAJ.

254. Defendant Okun provided Defendant Sanders with legal advice regarding Mr. Jeanty's family court visitation order. Based on her incorrect and false legal advice Defendant Sanders had Mr. Jeanty unlawfully arrested or detained at least 4/5 time between June 2022 and December 2022.

255. Defendants M. White and Okun gave Defendant Beecher and Noel legal advice regarding the meaning and interpretation of Court orders and what Mr. Jeanty's rights were regarding NAJ. Specifically, Defendants M. White and Okun informed Defendant Beecher and Noel that Mr. Jeanty was not allowed to pick up NAJ except on days specifically outlined in the KCFC order. They advised Defendants Beecher and Noel that Defendant Sanders had legal custody of NAJ.

256. Defendant Legal Aid Society was grossly negligent in supervising and training Defendant Okun. LAS failed to properly train Defendant Okun on the difference between a family court custody order and a family court visitation order.

257. Defendant Legal Aid Society was grossly negligent in supervising and training Defendant Okun. LAS failed to properly train Defendant Okun on not to give legal advice to the parent of the child she was representing.

258. Defendant Okun repeatedly provided false information to the family court judge. Defendant Okun repeatedly falsely informed the judge that NAJ did not want to visit Mr. Jeanty.

259. Due to Defendant Okuns false statements, Mr. Jeanty was denied time with NAJ.

260. On four dates in 2023 Defendant Beecher refused to allow Mr. Jeanty to pick up NAJ from school. Defendant Beecher and various school safety agents informed Mr. Jeanty that He would be arrested if He picked up NAJ from school.

261. On 10/3/2022 Mr. Jeanty went to pick up NAJ from school for a doctor's appointment and to spend time with her. Defendant Beecher told Mr. Jeanty she would get NAJ for Mr. Jeanty. Instead, Defendant Beecher informed Defendant M. White by email that Mr. Jeanty was at PS3 to pick up NAJ. Defendant M. White directed Defendant Beecher not to allow Mr. Jeanty to pick up NAJ. Defendant Beecher complied and refused to get NAJ for Mr. Jeanty. Having been told He would be arrested if He got NAJ without Defendant Beecher approval, Mr. Jeanty left PS3 without NAJ.

262. Defendant Beecher informed Mr. Jeanty that Defendant M. White informed her that Mr. Jeanty was not allowed to pick up NAJ.

263. Mr. Jeanty was unable to pick up NAJ.

264. Defendant Beecher was aware that Mr. Jeanty is NAJ's dad and Mr. Jeanty's name is on DOE blue card as a person allowed to pick up NAJ.

    **xi.**     **Defendants City of New York and CAMBA Failure to Train its's Employees Enabled Mr. Jeanty to be Repeatedly Falsely Arrested and Denied His**

**Parental Rights the City and CAMBA Fails to Train NYPD Officers and its Employees on Child-Sensitive Arrest Policies and Domestic Issues**

265. Defendants City and CAMBA were aware that their employees were not properly trained regarding the difference between custody and visitation orders and a parents right under each order.

266. Mr. Jeanty filed a complaint with Defendant CAMBA regarding Defendant Noel's conduct on 9/26/2022. Defendant CAMBA did nothing regarding the complaint. The conduct persisted.

267. Mr. Jeanty filed a complaint with DOE regarding Defendant Beechers conduct in refusing to allow Mr. Jeanty from picking up His daughter NAJ on multiple occasions. DOE did nothing. The conduct persisted.

268. Based on the above outlined conduct of all named Defendants, Mr. Jeanty has been subjected to multiple arrests without reasonable suspicion.

269. Based on the above outlined conduct of all named Defendants, Mr. Jeanty has been subjected to multiple arrests without probable cause.

270. Mr. Jeanty was taken away from His children for periods over 24 hours per arrest.

271. Mr. Jeanty was deprived of parenting time with NAJ which caused Mr. Jeanty's relationship with NAJ to become fractured and damaged.

272. It is bad enough that the City tolerates NYPD's practice of unlawfully arresting black males. In this case, that failure was compounded by the City's failure to train NYPD officers; and CAMBA' failure to train its employees in child-sensitive arrest practices and domestic issues which they encounter regularly.

273. Due to that lack of training, the NYPD frequently arrests parents and caregivers in ways that harm and traumatize them and their children. Parents and Children who are forcibly separated from each other experience severe and often lifetime trauma.

274. Despite having recently addressed[5] the issue of police and other public officials separating children from parent in the matter of Jazmine Headley, the City of New York and the NYPD have changed nothing.

275. It's entirely foreseeable to the City and CAMBA that its officers and employees will encounter children in situations where a parent or caregiver is being arrested. At least 65% of women and 55% of men in prison have minor children[6]. As of 2017, more than 13% of arraigned defendants in New York City were full-time caregivers of at least one child.[7] And the percentage of women arrested has increased nationally. All told, at least 35,581 children in the city lived with a parent who was arrested in 2017[8].

276. In this case there was no need and no reason to arrest Mr. Jeanty. There was no need and no reason to rip Mr. Jeanty's child NAJ from His arms.

277. Contrary to popular belief black males such as Mr. Jeanty are able and willing to be full time parents to their children.

278. Nevertheless, the City has failed to train NYPD officers on child-sensitive arrest policies, including: alerting NYPD officers ahead of time that children will be present at the scene of the arrest; minimizing the use of force and handcuffing; limiting what children are

[5] https://www.pubadvocate.nyc.gov/press/williams-justice-jazmine-hra-reform-legislation-passes-city-council/
[6] Tanya Krupat, The Osborne Association, NY Initiative for Children of Incarcerated Parents, The Right to Be Kept Safe and Informed": Safeguarding Children When a Parent Is Arrested at 3 (February 2008).
[7] Aubrey Fox, New York Criminal Justice Agency, Defendants' Full-Time Care and Financial Support of Children, 2017, at 3 (September 18, 2018).
[8] New York City Council General Welfare Committee Oversight Hearing: The Client Experience at HRA Centers, (February 4, 2018) (testimony of Bronx Clergy Criminal Justice Roundtable et al.).

able to see; and affording parents or caregivers the opportunity to explain the arrest to their child, make additional phone calls as necessary, and stay with the child until another person arrives to care for them.

The City and CAMBA have failed to train their employees regarding New York State law on custodial rights of mothers and fathers relative to the scope of their responsibilities as employees.[9]

279. NYPD officers do not maintain data about or document arrests made in front of children, a failure which has concealed this issue from the public eye, obscured the profound harm it inflicts, and rebuffed all efforts at accountability.

280. NYPD officers and CAMBA employees receive no training as to *any* of these protocols—many recommended by the Department of Justice and the International Association of Chiefs of Police after formal investigation and analysis[10]. As a consequence, arresting officers do not understand the issues at stake.

281. Instead, NYPD officers continue to arrest parents and caregivers in an ad hoc manner that harms children and fosters mistrust between communities and law enforcement. "Instead of associating safety and comfort with a uniformed authority," said Tanya Krupat, Director of the Osborne Center for Justice Across Generations, children who witness a parent's arrest "associate fear, anger, and an abuse of power with those in uniform." This is even more true for parents being unlawfully arrested.

282. The NYPD—and its counterpart, the New York State Police—reportedly lag far behind all other law enforcement officers in New York when it comes to child-sensitive arrests.[11]

[9] https://www.nycourts.gov/courthelp/family/custody.shtml
[10] See generally International Association of Chiefs of Police and the Department of Justice's Bureau of Justice Assistance, Safeguarding Children of Arrested Parents (August 2014).
[11] New York City Council General Welfare Committee Oversight Hearing: The Client Experience at HRA Centers,

While all other officers are trained to safeguard children during a parent's arrest as part of the New York State Office of Public Safety's Basic Training, NYPD and New York State Police officers are not.[12]

283. The New York City Council has recognized the need for change in this area, and legislation is now under consideration that would implement certain NYPD training protocols about child-sensitive arrest practices.

284. The City's failure to train NYPD officers and CAMBA's failure to train its employees directly damaged NAJ and Mr. Jeanty and harms other New Yorkers they deal with every day.

### xii. Damages Suffered

Mr. Jeanty suffered and continues to suffer extreme emotional distress, pain and suffering due to but not limited to; the repeated interference with parental rights, unlawful seizures, arrests, battery, incarcerations, malicious prosecutions of Mr. Jeanty by all named Defendants.

285. Plaintiff and His children suffered emotional distress, pain and suffering due to their separation caused by defendant's conduct.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – 4th and 14th Amendment, False Arrest**
**(Defendants City of New York, CAMBA, Aquino, Chen, Cheng, Serrano, Willacy, Phillips, Souffrant, Lai, Arty, Mays, (MMA) M. White, Mercado, Aponte, McCain, Roman, Rodriguez, Ngai, Sanders and Noel)**

286. Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

---

(February 4, 2018) (testimony of Bronx Clergy Criminal Justice Roundtable et al.).
[12] Id.

287. By the actions described above, the individually named defendants herein falsely or caused to be falsely arrested, unreasonably seized, falsely imprisoned, and unlawfully detained Mr. Jeanty. The wrongful, unjustifiable, and unlawful apprehension, arrest, seizure, and detention of Mr. Jeanty was carried without any basis, without Plaintiff's consent, and without reasonable suspicion or probable cause.

288. The individually named defendants herein knew they lacked probable cause to arrest and unreasonably seize Mr. Jeanty, because they knew that Mr. Jeanty had not engaged in any unlawful conduct.

289. No reasonable officer would have believed there was probable cause to arrest or unreasonably seize Mr. Jeanty under the circumstances outlined in the preceding paragraphs.

290. At all relevant times the individually named defendants in the captioned First Cause of Action acted forcibly in apprehending and arresting/unreasonably seizing Mr. Jeanty.

291. Throughout this period, Mr. Jeanty was unlawfully, wrongfully, and unjustifiably held under arrest, unreasonably seized, deprived of liberty, and falsely charged.

292. The individually named defendants herein deliberately undertook these actions and their misconduct occurred without any fault or provocation on the part of Mr. Jeanty.

293. The individually named defendants herein acted under pretense and color of state law. The individually named defendants herein acted in abuse of their powers and beyond the scope of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Mr. Jeanty of His constitutional rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

294. The individually named defendants' conduct was willful, wanton, and reckless.

295. Defendants Sanders and Noel actively participated in the decision-making process employed by the arresting officers. They repeatedly insisted, encouraged and directed the arresting officers to make an arrest despite the arresting officers originally decided no arrests were warranted.

296. As a direct and proximate result of the individually named defendants misconduct and abuse of authority detailed above, Mr. Jeanty sustained the damages hereinbefore alleged.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 – 4th and 14th Amendment, Malicious Prosecution**
**(Defendants City of New York, Aquino, Phillips, Arty, Mays, Cheng, Rodriguez, Contratto)**

297. Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

298. The individually named defendants herein maliciously and without justification commenced criminal proceedings against Mr. Jeanty.

299. The individually named defendants herein charged Mr. Jeanty with crimes falsely, maliciously, in bad faith, and without probable cause.

300. The individually named defendants herein knew they lacked probable cause to prosecute Mr. Jeanty because they knew he had done nothing wrong and should not have been arrested, and that no reliable information suggested he had committed any offense or violation of law.

301. No reasonable officer would have believed there was probable cause to prosecute Plaintiff under each of the circumstances presented.

302. After each unlawful arrest and false charges being filed, Mr. Jeanty spent at least 24 plus hours in Central Bookings, under deplorable circumstances during a raging COVID-19 Pandemic apart from His three minor sons.

303. Mr. Jeanty was subjected to multiple Temporary Orders of Protection which themselves prohibited Mr. Jeanty to have access to or contact with NAJ.

304. Mr. Jeanty was further deprived of His liberty when He was ordered to appear in Court multiple times as follows:

as to the 1/8/2021 Arrest---4 appearances

as to the 6/11/2021 arrest---3 appearances

as to the 2/1/2022 arrest---6 appearances

as to the 6/9/2022 arrest--- 3 appearances

as to the 9/26/2022 arrest---5 appearance

as to the 12/10/2022 arrest---3 appearances

305. For each and every unlawful arrest and malicious prosecution in ¶304, the charges were all dismissed. No pleas were obtained. No convictions were obtained and the Orders of Protection against Him were vacated.

306. The individually named defendants herein acted under the pretense and color of state law. Defendants Aquino, Phillips, Arty, Mays, Cheng and Rodriguez acted in abuse of their powers and beyond the scope and in excess of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Plaintiff of His constitutional rights secured by the and Fourteenth Amendments to the United States Constitution.

307. Defendant Contratto had no legal authority to charge Mr. Jeanty as she was a legal assistant in the Kings County District attorney's office.

308. Defendant Sanders encouraged, directed and influenced Defendants Aquino, Phillips, Arty, Mays, Cheng, Rodriguez and Contratto to maliciously prosecute Mr. Jeanty.

309. The individually named defendants conduct herein was intentional, willful, wanton, and reckless.

310. As a direct and proximate result of NYPD Defendants' misconduct and abuse of authority detailed above, Mr. Jeanty sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983 – 4th and 14th Amendment, Excessive Force/Battery**
**(Defendants Serrano, Willacy, Souffrant and Lai, Aquino, Chen, Cheng, Mays, Ngai, Rodriguez, Enorme and Arty)**

311. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

312. The individually named defendants herein did not have probable cause nor reasonable suspicion to arrest and/or detain Mr. Jeanty.

313. Defendants Serrano, Willacy, Souffrant and Lai by grabbing, yanking, and pinning Plaintiff to a chair and wall, by forcibly grabbing Mr. Jeanty's limbs and body and forcibly pulling him away from NAJ, and by possessing their guns and tasers in close proximity to Mr. Jeanty used unreasonable and excessive force and committed battery against Mr. Jeanty.

314. Defendants Aquino, Cheng, Chen, Mays, Ngai, Rodriguez, Enorme and Arty put handcuffs on Mr. Jeanty against His will who was all times innocent.

315. The individually named defendants herein touched Mr. Jeanty without His consent and for no legal reason.

316. The individually named defendants herein deprived Mr. Jeanty of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by rights guaranteed under the Fourth and Fourteenth Amendments of the United States Constitution.

317. The individually named defendants herein acted under pretense and color of state law.

318. The individually named defendants herein acted in abuse of their powers and beyond the scope of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Mr. Jeanty of constitutional rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

319. As a direct and proximate result of the individually named defendants in the captioned Third Cause of Action misconduct and abuse of authority detailed above, Mr. Jeanty sustained the damages hereinbefore alleged.

**FOURTH CAUSE OF ACTION**
**42 U.S.C. § 1983 – 4th and 14th Amendment, Failure to Intervene**
**(Defendants Serrano, Chen, Enorme, Arty, Phillips, Willacy, Souffrant, Lai, Rodriguez, Enorme)**

320. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

321. At no subsequent point did any of the individually named defendants herein attempt to intervene and prevent the unlawful arrest, use of excessive force, battery and malicious prosecution of Mr. Jeanty or against Mr. Jeanty.

322. Uniformed NYPD officers and School Safety Agents have an affirmative duty to ensure the lawfulness of interactions between their fellow members of service and civilians and to intervene where they observe another uniformed employee falsely arresting a civilian or using excessive force against a civilian.

323. The individually named defendants herein were present and witnessed other defendants falsely arrest/unreasonably seize and detain, maliciously prosecute, use excessive force and battery against Mr. Jeanty.

324. The individually named defendants herein had a reasonable opportunity to intervene to prevent the false arrest and unlawful detention, malicious prosecution, excessive force, and battery against Mr. Jeanty

325. The individually named defendants herein failed to take any action or make any effort to intervene, halt the unlawful actions of their fellow police officers, or protect Mr. Jeanty

326. The individually named defendants herein failure to intervene proximately caused the violation of Mr. Jeanty constitutional rights. As a direct and proximate result Mr. Jeanty sustained the damages hereinbefore alleged.

### FIFTH CAUSE OF ACTION
### U.S.C. § 1983 – 14th Amendment Familial Rights, Interference with Intimate Association, Intentional Interference with Custodial Rights
### (Serrano, Phillips, Souffrant, Willacy, Lai, Beecher, Noel, Okun, M. White)

327. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

328. Plaintiff has a fundamental, constitutionally protected liberty interest in the companionship, care, custody, and management of His daughter NAJ. Pursuant to the Fourteenth Amendment, Plaintiff is entitled to the preservation of His intimate and private familial relationship with NAJ, free from unjustified government intrusion.

329. The individually named defendants herein deprived Mr. Jeanty of His parental rights and constitutional rights to familial and intimate association as to NAJ.

330. The individually named defendants herein intentionally interfered with Plaintiff 's relationship with NAJ. Defendants, some who are "peace officers" purposefully targeted Mr. Jeanty's bond with NAJ literally ripping NAJ away from Mr. Jeanty for no lawful reason and without justification and then forcing them to be separated from one another. This already egregious conduct was made worse by the Supreme Court's temporary order of protection.

331. Defendant Beecher and M. White kept NAJ away from Mr. Jeanty on numerous occasions depriving Mr. Jeanty of His right to parent and be with NAJ.

332. Defendant Beecher kept NAJ in unknown classrooms in PS3 and refused to produce Her when Mr. Jeanty asked. Defendant Beecher instructed PS3 School Safety Agents not to call for NAJ when Mr. Jeanty came to PS3 to pick NAJ up. Mr. Jeanty was informed by Defendant Beecher and multiple SSA that He would be arrested if He took NAJ from PS3.

333. Defendant Sanders was allowed to pick up NAJ at any time without interference from anyone. She was allowed to enter the building through any door and walk throughout the building. She was given keys to open and close doors. She was allowed to remain at PS3 despite the fact that it was known that Defendant Sanders had an Order of Protection and was not allowed at the school when Mr. Jeanty was present.

Defendant Noel caused Mr. Jeanty and NAJ to be unlawfully detained. She caused Mr. Jeanty to be unlawfully arrested. She caused Mr. Jeanty to be separated from and to be kept away from NAJ by the police.

334. Defendants Serrano, Phillips, Souffrant, Willacy, Lai, Beecher and Noel's actions violated clearly established constitutional law. No reasonable government official in 2022 would have believed that the NAJ forced removal from Mr. Jeanty and repeatedly refusing to allow Mr. Jeanty to pick up NAJ was lawful.

335. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Jeanty sustained the damages hereinbefore alleged.

### SIXTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – 14th Amendment, Substantive Due Process
### (Serrano, Phillips, Souffrant, Willacy, Lai, Beecher and Noel)

336. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

337. At all relevant times, Defendants Serrano, Phillips, Souffrant, Willacy, Lai, Beecher and Noel, were acting under color of state law in their individual and official capacities within the scope of their respective employments as peace officers and school officials for the DOE and officers for the NYPD.

338. By committing battery against Mr. Jeanty and exerting unnecessary and excessive force on Him and NAJ, and forcibly separating NAJ from Mr. Jeanty, filing false child abuse charges with OCFS triggering an investigation into his parenting, saddling him with baseless charges, and detaining him in Central Bookings, all for the purpose of aiding Defendant Sanders; Defendants Serrano, Phillips, Souffrant, Willacy, Lai and Noel, engaged in outrageous and conscience-shocking conduct.

339. Likewise, by refusing to allow Mr. Jeanty to pick His daughter NAJ from PS3, using the threats of arrest, taking legal advice from Defendant M. White all for the purpose of aiding Defendant Sanders; Defendant Beecher engaged in outrageous and conscience-shocking conduct.

Defendants Serrano, Phillips, Souffrant, Willacy, Lai, Beecher and Noel acted beyond the scope of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Mr. Jeanty of constitutional rights secured by the Fourth and Fourteenth Amendments.

340. As a direct and proximate result of Defendants Serrano, Phillips, Souffrant, Willacy, Lai, Beecher and Noel's misconduct detailed above, Mr. Jeanty suffered the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
### State/Common Law False Arrest / False Imprisonment

**(Defendants City of New York, CAMBA, Aquino, Chen, Cheng, Serrano, Willacy, Phillips, Souffrant, Lai, Arty, Mays, (SSA) M. White, Mercado, Aponte, McCain, Roman, Rodriguez, Sanders and Noel)**

341. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

342. By reason of the foregoing, and by wrongfully and illegally arresting, detaining, and imprisoning Mr. Jeanty, the individually named defendants herein, under pretense and color of state law and acting within the scope of their employment as NYPD officers, school safety agents falsely arrested, unreasonably seized, and falsely imprisoned Mr. Jeanty.

343. Defendants' wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Mr. Jeanty were intentional and carried out with Mr. Jeanty's knowledge but without His consent.

344. The individually named defendants herein lacked probable cause or any other basis in law to arrest, unreasonably seize, or imprison Mr. Jeanty. At all relevant times, Defendants acted forcibly in detaining and arresting Mr. Jeanty.

345. The individually named defendants herein acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Mr. Jeanty's rights, privileges, welfare, and well-being, and are guilty of egregious and gross misconduct toward Mr. Jeanty.

346. The City of New York and Camba as employers of Defendants Serrano, Willacy, Phillips, Souffrant, Lai, Arty, Mays, (SSA) M. White, Mercado, Aponte, McCain, Roman, Beecher and Noel, are responsible for their wrongdoing under the doctrine of Respondeat Superior.

347. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Jeanty sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
### State/Common Law Malicious Prosecution
### (Defendants City of New York, Aquino, Phillips, Arty, Mays, Cheng, Rodriguez, Contratto)

348. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

349. The individually named defendants herein acting in their capacity as NYPD officers and within the scope of their employment as such, maliciously commenced criminal proceedings against Plaintiff.

350. The individually named defendants herein charged Plaintiff falsely, in bad faith, and without probable cause.

351. The individually named defendants herein knew the charges they accused Mr. Jeanty were not supported by any information they had and yet continued to charge Mr. Jeanty.

352. After Plaintiff spent multiple nights in Kings County Central Bookings away from His children and appeared to defend himself in each criminal court proceedings, all charges against Plaintiff were terminated in Mr. Jeanty's favor, and the Orders of Protection against Him were vacated.

353. The City of New York, as employer of the named Defendants, is responsible for their wrongdoing under the doctrine of Respondeat Superior.

354. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
### State/Common Law Battery
### (Defendants City of New York, Serrano, Willacy,  Souffrant, Lai, McCain)

355. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

356. By reason of the foregoing, the individually named Defendants herein, acting in their capacity as NYPD police officers and peace officer and within the scope of their employment as such, by pushing, grabbing, yanking, pinning, and restraining Mr. Jeanty and intentionally placing Mr. Jeanty in handcuffs without His consent; having no justification, reasonable suspicion or probable cause to arrest, committed a willful, unlawful, unwarranted, and intentional battery upon Mr. Jeanty.

357. The battery committed by the individually named Defendants herein, was unnecessary and unwarranted in the performance of their duties as NYPD officers and peace officers and constituted an unreasonable and excessive use of force.

358. Defendant City of New York as employer of the individually named Defendants herein, is liable for their wrongdoing under the doctrine of Respondeat Superior.

359. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Jeanty sustained the damages hereinbefore alleged.

**TENTH CAUSE OF ACTION**
**Negligent Hiring, Retention, Training and Supervision**
**(Defendant City of New York, Legal Aid Society and CAMBA)**

360. Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

361. The City and its employees, servants and/or agents, acting within the scope of their employment, did negligently hire, retain, train, and/or supervise Aquino, Chen, Cheng, Serrano, Willacy, Phillips, Souffrant, Lai, Arty, Mays, (SSA) M. White, Mercado, Aponte, McCain, Roman, Ngai, and Rodriguez, who were unfit, and whom they knew to be unfit, for the performance of police duties on the dates of Mr. Jeanty's arrest.

362. The Legal Aid Society, CAMBA and its employees, servants and/or agents, acting within the scope of their employment, did negligently hire, retain, train, and/or supervise Defendant Noel who was unfit, and whom they knew to be unfit, for the supervision of children.

363. Defendant City of New York, the Legal Aid Society and CAMBA had an obligation to ensure that NYPD officers and CAMBA employees be trained in when and how to arrest parents while children are present, and how to handle domestic disputes at schools. On information and belief, Defendants Aquino, Chen, Cheng, Serrano, Willacy, Phillips, Souffrant, Lai, Arty, Mays, (SSA) M. White, Mercado, Aponte, McCain, Roman, Ngai, Rodriguez and Noel did not receive such training.

364. On information and belief, Defendants Aquino, Chen, Cheng, Serrano, Willacy, Phillips, Souffrant, Lai, Arty, Mays, (SSA) M. White, Mercado, Aponte, McCain, Roman, Ngai, Rodriguez, Okun and Noel would not have acted as they did if Defendant City of New York, the Legal Aid Society and CAMBA had provided adequate training and disciplined to their employees.

365. As a direct and proximate result of the City's negligence and the Legal Aid Society's negligence, Mr. Jeanty sustained the damages hereinbefore alleged.

**ELEVENTH CAUSE OF ACTION**
**1ˢᵗ Amendment—Free Speech**
**(Defendants City of New York Aquino, Cheng, Arty, Mays, Contratto, Ngai, Rodriguez, M. White, Sanders)**

366. Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

367. Defendants City of New York Aquino, Cheng, Arty, Mays, Contratto, Ngai, Rodriguez, M. White, Sanders deprived, and are continuing to deprive, Mr. Jeanty of the rights secured to Him by the United States Constitution.

368. Defendants Aquino, Cheng, Arty, Mays, Ngai and Rodriguez arrested Mr. Jeanty on the dates outlined above strictly for his speech which they claimed to be harassing.

369. Defendants Aquino, Cheng, Arty, Mays, Ngai and Rodriguez arrested Mr. Jeanty strictly for his speech which they found to be offensive.

370. Mr. Jeanty's speech in the form of text messages was not harassing. Mr. Jeanty's speech was expressive, opinionated speech. It was not threatening.

371. Mr. Jeanty's texting did not constitute a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.

372. Defendants Aquino, Cheng, Arty, Mays, Ngai and Rodriguez criminalized Mr. Jeanty's speech in an attempt to deprive Him of His right to express Himself in a manner they and Defendant Sanders did not approve.

373. Due to Defendants Aquino, Cheng, Arty, Mays, Ngai and Rodriguez's unlawful repeated arrest of Mr. Jeanty, as of 12/10/2022, Mr. Jeanty no longer expresses Himself in a manner of His choosing when communicating with Defendant Sanders due to fear of being arrested again.

374. As a direct and proximate result of the City's negligence, Mr. Jeanty sustained the damages hereinbefore alleged.

**TWELFTH CAUSE OF ACTION**
**Violation of NYC Administrative Code Chap. 8 Sec 8-803**
**(Defendants Aquino, Chen, Cheng, Serrano, Willacy, Phillips, Souffrant, Lai, Arty, Mays, (SSA) M. White, Mercado, Aponte, McCain, Mercado, Roman, Ngai, Enorme, Cherenfant, Maher, Rodriguez)**

375. Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

376. The individually named defendants herein are police officer or school safety agent within the NYPD.

377. The individually named defendants herein arrested Mr. Jeanty without reasonable suspicion and without probable cause.

378. The individually named defendants herein committed battery against Mr. Jeanty.

379. The individually named defendants herein failed to intervene when they had the opportunity to do so.

380. As a direct and proximate result of the City's negligence, Mr. Jeanty sustained the damages hereinbefore alleged.

381. Each and every named Defendant in this action herein are jointly and severally liable for all damages.

### THIRTEENTH CAUSE OF ACTION
#### Respondeat Superior

382. Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

383. Defendant Okun employer LAS is vicariously liable for it's employee Defendant Okun's grossly negligent and/or intentional acts without cause or justification while in the course of Defendant Okun's employment as those acts were committed within the scope of Defendant Okun's employment with Defendant LAS.

384. Defendant Okun employer LAS is vicariously liable for it's employee Defendant Okun's grossly negligent and/or intentional acts without cause or justification while in the

course of Defendant Okun's employment as those acts were generally foreseeable and a natural consequence of the employment with Defendant LAS.

385.    Defendant Okun employer LAS is vicariously liable for it's employee Defendant Okun's grossly negligent and/or intentional acts without cause or justification while in the course of Defendant Okun's employment as those acts could have been reasonably anticipated by defendant LAS.

386.    That as a result of the foregoing Plaintiff was injured.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a. Compensatory damages in an amount of $5,000,000 or an amount to be determined at trial;

b. Punitive damages against the individually named defendants in an amount to be determined at trial;

c. Reasonable fees and costs under 42 U.S.C. § 1988; and

d. Such other and further relief as this Court may deem just, proper and equitable.

Dated:

Queens, New York
March 6, 2024

_____
Vladimir Jeanty, Plaintiff, Pro se
PO Box 921173
Arverne, NY 11692
(516) 667-9231