UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
VLADIMIR JEANTY,

                        Plaintiff,

          v.

THE CITY OF NEW YORK, *et al*.

                  Defendants.
--------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

23-CV-9472
(Merchant, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

     *Pro se* plaintiff Vladimir Jeanty commenced this civil rights action against the City of New York; CAMBA, Inc.; the Legal Aid Society; various NYPD officers, New York City employees, and other private individuals, alleging violations of his federal constitutional rights under 42 U.S.C. § 1983. *See* Dkt. Nos. 1, 27. Plaintiff claims that these violations stem from an ongoing custody dispute between himself and Defendant Una B. Sanders over their minor daughter, NAJ. *See id.* The amended complaint describes six incidents in which Plaintiff was arrested by NYPD officers based on, what Plaintiff claims, were false reports from Defendant Sanders, who accused him of violating various orders of protection and visitation orders. *See id.* Plaintiff alleges that his arrests, and subsequent prosecutions, were unlawful and motivated by malice, racial bias, and systemic failures in training and oversight by the City of New York. *See id.*

     Currently before the Court are the following motions: (1) a motion to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6) by Defendant Menachem White, Esq. (Dkt. No. 47); (2) a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) by Defendants the City of New York, Carlos Serrano, Ali Willacy, Ashley Phillips, Jean Souffrant, Sunjie Lai, Edmund Mays, Jonathan Aquino, Brian Cheng, Gregory Rodriguez, Yuri Enorme, Alex Arty, Benjamin Chen, Ian McCain,

Elizabeth Aponte, Maribel Roman, Landrey Cherenfant, Brian Maher, Vanessa Contratto, and Kristina Beecher (collectively, "City Defendants") (Dkt. No. 53); (3) Plaintiff's motion for leave to file a second amended complaint under Fed. R. Civ. P 15(a)(2) (Dkt. No. 56); (4) a motion to dismiss under Fed. R. Civ. P. 12(b)(6) by Defendants CAMBA and Charmaine Noel (Dkt. No. 64); (5) Plaintiff's motion for partial summary judgment under Fed. R. Civ. P. 56 (Dkt. No. 68); and (6) Plaintiff's motion for leave to file a third amended complaint under Fed. R. Civ. P. 15(a)(2) (Dkt. No. 69).[1] These motions were referred to the undersigned for a Report and Recommendation. *See* July 30, 2024 Dkt. Order; Aug. 1, 2024 Dkt. Order; Aug. 20, 2024 Dkt. Order; and Oct. 8, 2024 Dkt. Order.

As the motions raise overlapping issues, this Report and Recommendation addresses all outstanding motions.  For the reasons detailed below, the undersigned respectfully recommends the following: (1) Defendant White's motion to dismiss be **DENIED as moot** due to the Court's July 15, 2024 order dismissing Defendant White from the case pursuant to a stipulation of dismissal, *see* July 15, 2024 Dkt. Order; (2) City Defendants' motion for judgment on the pleadings be **GRANTED in part and DENIED in part**; (3) the motion to dismiss by Defendant CAMBA and Noel be **GRANTED**; (4) Plaintiff's motion for partial summary judgment be **DENIED**; and (5) Plaintiff's motions for leave to file second and third amended complaints be **GRANTED in part and DENIED in part**.  It is further respectfully recommended that the Clerk of the Court be directed to terminate Defendants White, CAMBA, and Noel from the case.

I.    **Background**

    A.    **Factual Background**

---

[1] Defendant Una P. Sanders has not yet appeared in this action.

The following facts have been taken from Plaintiff's 53-page amended complaint. *See* Dkt. No. 27. All facts alleged by Plaintiff are assumed to be true for purposes of deciding the motion to dismiss and are construed in a light most favorable to Plaintiff as the non-moving party. *See, e.g., LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012).

According to the amended complaint, Plaintiff, a Black male, was a resident of New York State at all relevant times in this action, including at the time of his arrests alleged in the amended complaint. *See* Dkt. No. 27 ¶ 7. Plaintiff alleges that he is the father of NAJ, who was born in 2016. *See id.* ¶¶ 7, 48. Defendant Sanders is NAJ's mother, and Plaintiff alleges that neither parent has sole legal or physical custody of NAJ. *Id.* ¶¶ 7, 64. Plaintiff alleges that in April 2018, he filed a visitation petition in Kings County Family Court, which resulted in a family court order delineating the terms of Plaintiff's visitation with NAJ. *Id.* ¶ 61.

The amended complaint details six arrests of Plaintiff by NYPD officers, occurring between January 2021 to October 2022. *See generally* Dkt. No. 27. Plaintiff claims that these arrests stem from false reports and retaliatory actions by Defendant Sanders, who allegedly accused him of violating various orders of protection.

### 1.    January 8, 2021 Arrest

Plaintiff's January 8, 2021 arrest arose from an alleged violation of a temporary order of protection issued on December 14, 2020, by a state family court referee. *Id.* ¶ 69. Plaintiff claims that "on or about an unknown date and time," Defendant Sanders filed a "complaint" with the NYPD, specifically Defendants Aquino and Chen. *Id.* ¶ 68. According to Plaintiff, "Defendant Sanders alleged that [Plaintiff] violated a temporary limited order of protection dated [December 14, 2020] issued by a Family Court Referee." *Id.* ¶ 69. According to Plaintiff, "Defendant Sanders

alleged that on [December 28, 2020], Mr. Jeanty followed, scared, alarmed and annoyed her after exchanging NAJ after a visit." *Id.* ¶ 70. Defendant Sanders reported, "[a]fter [Plaintiff] transferred physical custody of [NAJ] to [Defendant Sanders], [Plaintiff] did follow [Defendant Sanders] for a block and impede[d] [Defendant Sanders'] path causing [Defendant Sanders] to step and walk around [Plaintiff.] [*sic*]" *Id.* ¶ 71. Plaintiff denies the allegations, asserting that he "could not possibly or physically [*sic*] follow Defendant Sanders and at the same time impede her path"; Plaintiff claims that Defendant Sanders was, in fact, following him. *Id.* ¶ 73.

Plaintiff alleges that Defendant Sanders also told Defendants Aquino and Chen that Plaintiff sent her harassing text messages on January 6, 2021, which caused her further annoyance and alarm. *Id.* ¶ 74. Plaintiff claims that Defendant Sanders did not provide these text messages to Defendants Aquino and Chen. *Id.* ¶¶ 75-76. Plaintiff contends that the text messages were part of a mutual conversation and did not amount to harassment—something he contends Defendants Aquino and Chen would have discovered if they had investigated the text messages. *Id.* ¶¶ 75-78.

Plaintiff further alleges that Defendants Aquino and Chen were "aware" that Plaintiff and Defendant Sanders were in a "Family Court dispute" and "that there were approximately 20 plus Domestic Incident Reports filed by [Plaintiff] and Defendant Sanders against each other"). *Id.* ¶ 81. Plaintiff claims that Defendants Aquino and Chen then arrested Plaintiff without reasonable suspicion or probable cause. *Id.* ¶ 81.

According to the amended complaint, Defendants Aquino and Chen charged Plaintiff with criminal contempt in the second degree (Penal Law § 215.50(3)), harassment in the second degree (Penal Law § 240.26(2),(3)), and menacing in the second degree (Penal Law § 120.14(3)). *Id.* ¶ 85. Plaintiff contends that Defendant Aquino "intentionally made up and exaggerated these charges to arrest . . . and prosecute him" in "an attempt to stop [him] from expressing [h]is views

and opinions of Defendant Sanders." *Id.* ¶¶ 86-87.  Plaintiff claims that the charges were later dismissed, "[n]o pleas were obtained[,] [n]o convictions were obtained[,] and the Orders of Protection against [h]im were vacated." *Id.* ¶¶ 304-05.

### 2.    June 11, 2021 Arrest

Plaintiff alleges that on June 11, 2021, Defendant Sanders falsely accused him of violating a "temporary limited order of protection" dated January 9, 2021, by sending her the following text message:

> Why didn't you get an abortion???  I prayed that you would . . . I'm really serious.  God cursed me.  Why couldn't anyone else be [NAJ's] mother.  Why you of all people. I wish anyone else would've gotten pregnant. I love [NAJ]. I still got that pic of Deja outside in a pamper at [East Meadow] in the cold and that speed knot on Isaiah's head when you punched him.  Yeah, you're a great mom. Brooklyn hoodrat . . . y'all the best make babies be on welfare."

*Id.* ¶ 87.

Plaintiff claims that the temporary order of protection required him to "refrain from assaulting, harassing, menacing, intimidating or threatening Defendant Sanders," but it did not prohibit Plaintiff from communicating with her.  *Id.* ¶¶ 88, 89.  Plaintiff claims that Defendant Cheng, who read the order and text messages, knowingly ignored this fact when he arrested Plaintiff.  *Id.* ¶¶ 90, 96-97.  Plaintiff claims that he tried to tell Defendant Cheng that the temporary order of protection did not prohibit all communications with Defendant Sanders, but Defendant Cheng purportedly ignored him.  *Id.* ¶ 99.  According to the amended complaint, Plaintiff was arrested and charged with criminal contempt in the second degree (Penal Law § 215.50(3)) and aggravated harassment in the second degree (Penal Law § 240.30(2)).  *Id.* ¶ 25.

Plaintiff contends that prior to his arrest, Defendant Cheng was aware of the ongoing family court dispute over NAJ and the "approximately 25 plus Domestic Incident Reports" filed by

Plaintiff and Defendant Sanders.  *Id.* ¶¶ 100-01.  Plaintiff claims that Defendant Cheng lacked probable cause to arrest him, and that the arrest was intended to stop Plaintiff "from expressing [h]is views and opinions of Defendant Sanders."  *Id.* ¶ 102.  Plaintiff claims that the charges were later dismissed, "[n]o pleas were obtained[,] [n]o convictions were obtained[,] and the Orders of Protection against [h]im were vacated."  *Id.* ¶¶ 304-05.

### 3.    February 1, 2022 Arrest

Plaintiff alleges that "[o]n or about [November 30, 2021]," he received a call from Defendant Arty, who informed him that he was investigating a "walk-in complaint reported by Defendant Sanders."  *Id.* ¶ 106.  According to the amended complaint, Defendant Arty told Plaintiff that Defendant Sanders had accused him of sending her text messages on November 3, 2021 and January 24, 2022 in violation of a "limited temporary order of protection" that required Plaintiff to refrain from assaulting, harassing, menacing, intimidating, or threatening Defendant Sanders.[2] *Id.* ¶¶ 107-08, 111, 116, 120.

Plaintiff claims that Defendant Arty read the text messages and simply "accepted [Defendant Sanders's] complaint . . . because Defendant Sanders kept calling and coming into the 73rd Precinct insisting that [he] be arrested and charged."  *Id.* ¶ 115.  Plaintiff alleges that Defendant Arty was aware of the ongoing custody dispute and "approximately 30 plus Domestic Incident Reports" filed by Plaintiff and Defendant Sanders.  *Id.* ¶¶ 112, 127.

Plaintiff alleges that he was arrested for "us[ing] colorful language better known as curse words which Defendant Sanders and Defendant Arty did not like or appreciate" "in an attempt to

---

[2] Plaintiff also alleges that Defendant Arty told him that "Defendant Sanders originally wanted to make a complaint against [him] alleging that [he] sexually abused NAJ," but Defendant Arty "did not take the complaint because [he] knew she was lying."  *Id.* ¶ 113.  According to the amended complaint, Defendant Arty told Plaintiff that "[h]e told Defendant Sanders that [h]e would not take such a complaint without medical proof."  *Id.* ¶ 114.

stop [him] from expressing [h]is views and opinions of Defendant Sanders." *Id.* ¶¶ 119, 124. Plaintiff claims that "Defendant Arty issued an I-Card [*sic*] despite having no reasonable basis for doing so" because "[t]he temporary order of protection did not prohibit [Plaintiff] from communicating with Defendant Sanders." *Id.* ¶¶ 120. Plaintiff claims that there was no probable cause for his arrest and that he "did not assault, harass, menace, intimidate[,] or threaten Defendant Sanders." *Id.* ¶¶ 121, 130.

Plaintiff alleges that Defendant Arty reported Plaintiff's arrest to Defendant Vanessa Contratto, who is a legal assistant in the Kings County District Attorney's Office and was "work[ing] as a screener on [February 1, 2022]." *Id.* ¶ 122. Plaintiff alleges that Defendant Contratto executed a sworn criminal court complaint charging him with criminal contempt in the second degree (Penal Law § 215.50(3)) and harassment in the second degree (Penal Law § 240.26(1),(3)). *Id.* Plaintiff claims that Defendant Contratto never spoke to Defendant Sanders prior to executing the criminal court complaint and only charged Plaintiff "in an attempt to stop [him] from expressing [h]is views and opinions of Defendant Sanders." *Id.* ¶¶ 125-26. Plaintiff claims that the charges were later dismissed, "[n]o pleas were obtained[,] [n]o convictions were obtained[,] and the Orders of Protection against [h]im were vacated." *Id.* ¶¶ 304-05.

### 4. June 9, 2022 Arrest

Plaintiff's June 9, 2022 arrest stems from his purported violation of a "Full Order of Protection," dated February 2, 2022, which required Plaintiff to "stay away and no[t] to communicate with Defendant Sanders[] 'subject to Family Court orders Re: Custody and Visitation.'" *Id.* ¶¶ 131, 133. According to Plaintiff, one such order was a visitation order, dated February 4, 2022, titled "In the Matter of an Article 6 Custody/Visitation Proceeding," which stated:

> ORDERED that Mr. Vladimir Jeanty may have incidental contact
> and communication with Ms. Una Sanders to facilitated contact and
> visitation between Mr. Jeanty and the subject child, [NAJ] . . .

*Id.* ¶ 132.

Plaintiff contends that on an unspecified date in May 2022, he texted Defendant Sanders "[NAJ] pic day tomorrow.  [P]lease have her wear a nice shirt and do her hair, thanks." *Id.* ¶ 133. Plaintiff contends that "[t]his text was not a prohibited communication nor was it harassing, threatening, or intimidating." *Id.*  Plaintiff contends that Defendant Sanders falsely reported to Defendant Mays that Plaintiff had sent her a text message of him "sticking up a middle finger at Defendant Sanders." *Id.* ¶¶ 136.

Plaintiff alleges that on June 9, 2022, "Defendant Mays falsely arrested [him] for allegedly violating [the] Order of Protection and harassing Defendant Sanders by texting her on multiple days in May 2022." *Id.* ¶ 134.  Plaintiff asserts that Defendant Mays was aware of the February 4, 2022 family court order permitting Plaintiff to have incidental contact with Defendant Sanders for purposes of facilitating visits with NAJ.  *Id.* ¶ 137.

According to the amended complaint, Plaintiff was charged with criminal contempt in the second degree (Penal Law § 215.50(3)) and harassment in the second degree (Penal Law § 215.26(1)).  *Id.* ¶ 135.  Plaintiff contends that Defendant Mays did not have reasonable suspicion that a crime occurred or probable cause to arrest him.  *Id.* ¶¶ 141, 142.  Plaintiff claims that the charge were later dismissed, "[n]o pleas were obtained[,] [n]o convictions were obtained[,] and the Orders of Protection against [h]im were vacated." *Id.* ¶¶ 304-05.

### 5.    September 26, 2022 Arrest

Plaintiff's September 26, 2022 arrest stems from his purported violation of a temporary order of visitation, dated March 2, 2022, which stated:

> . . . [Plaintiff] will now have bi-weekly visitation with the subject
> child, and pick up the subject child on Saturday after dance class,
> and will bring her to school on Monday morning.  This is an interim
> visitation order and will remain in effect until further order of this
> court.  All other provisions of [Plaintiff's] visitation orders remain
> in full force and effect.

Dkt. No. 54-2 at 2;[3] Dkt. No. 1 ¶ 151.

Plaintiff alleges that on September 24, 2022, he texted Defendant Sanders to ask if she would allow NAJ to have an extended visit with him due to the upcoming four-day holiday, which Defendant Sanders denied.  *Id.* ¶¶ 142-43.  Plaintiff claims that he told Defendant Sanders that he would "go to [] NAJ's school and pick her up."  *Id.* ¶ 144.

Plaintiff alleges that he traveled to NAJ's school around 10:00 a.m. that day.  *Id.* ¶ 146.  On the way there, Plaintiff alleges that he called NAJ's school, and spoke with Defendant Charmaine Noel, the supervisor of the CAMBA afterschool program, to ask if NAJ was there.  *Id.* ¶¶ 32, 146-147.  Plaintiff alleges that Defendant Noel confirmed that NAJ was there, and he told her that he would be picking NAJ up.  *Id.* ¶ 148.  Plaintiff contends that "Defendant Noel called Defendant Sanders and informed her that [he] was on [h]is way to pick up NAJ."  *Id.* ¶ 149.

Upon arrival at the school, Plaintiff notified School Safety Agent Yvonne Popo and Defendant Noel of his intent to pick up NAJ.  *Id.* ¶¶ 146, 150.  Defendant Noel, referencing the

---

[3] City Defendants attached a copy of the March 2, 2022 temporary order of protection to their Rule 12(c) motion for judgment on the pleadings. *See* Dkt. No. 54-2.  City Defendants assert that the temporary order of protection is incorporated by reference in the amended complaint and ask the Court to take judicial notice of its contents.  *See* Dkt. No. 54 at 17.  The Court agrees that Plaintiff incorporates the March 2, 2022 temporary order of protection by directly quoting from it in the amended complaint. *See Washington Cap. Ventures, LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 365 (S.D.N.Y. 2005) (holding that resolution and agreement were incorporated by reference in a complaint where the allegations quoted extensively from both documents).  The Court therefore properly considers the temporary order of protection in connection with City Defendants' motion for judgment on the pleadings.  *See L-7 Designs, Inc.*, 647 F.3d at 422 (citation omitted); *Washington Cap. Ventures*, 373 F. Supp. 2d at 365.

March 2, 2022 visitation order, denied the request, stating it did not authorize such a pickup. *Id.* ¶ 151.

Plaintiff asserted that his name was on NAJ's "DOE blue card" as an authorized individual for school pickups and that there was no court order granting Defendant Sanders legal custody of NAJ. *Id.* ¶ 152. Defendant Noel, however, refused to release NAJ to Plaintiff. *Id.* ¶ 153.

Plaintiff alleges that he requested to see NAJ to ensure her well-being. *Id.* ¶ 153-54. Defendant Noel agreed and "brought NAJ out." *Id.* ¶ 155-156. Plaintiff then picked up NAJ, indicated that they were leaving, and asked where to sign her out. *Id.* ¶ 156. Plaintiff claims that Defendant Noel instructed the school safety agents Defendants M. White, McCain, Roman, Aponte, and Mercado "to lock the doors and not allow him to leave." *Id.* ¶ 157.

Plaintiff alleges that Defendant Noel attempted to grab NAJ from his hands, while Defendant McCain physically restrained him and told him he would be arrested if he tried to leave. *Id.* ¶¶ 158-59. Plaintiff claims that he "sat down and called 911 for assistance" while Defendants White, Aponte, and Roman stood in front of the building to block Plaintiff from leaving. *Id.* ¶¶ 160-61.

Simultaneously, School Safety Agent Popo contacted 9-1-1, reporting that Plaintiff was unlawfully attempting to pick up NAJ. *Id.* ¶ 162. Plaintiff alleges that the 9-1-1 report noted a custodial dispute, stating:

> "MOTHER AND FATHER CUSTODIAL TO THE LOC D1791" and "AUTH OF BROOKLYN NORTH PLATOON COMMANDER ---STS FATHER [] TO LEAVE WITH THE CHILD--PARENT ONLY HAS VISIT[]ATION NO CUSTODIAL---NO WPNS---NO INJ--MB RED SHIRT BLK PANTS---THIN BUIILT---130 LBS 6 FT-----REQ ETA PLEASE D1791"

*Id.* ¶ 163.

Plaintiff alleges that Defendant Noel also called Defendant Sanders, informing her of Plaintiff's attempt to pick up NAJ. *Id.* ¶ 164. Plaintiff claims that "Defendant Sanders had an active stay away order of protection," which required her "to stay away from any location [Plaintiff] was present." *Id.* ¶ 165. Plaintiff alleges that "Defendants Serrano, Phillips, Willacy, Souffrant, Lai, (SSA) M. White, McCain, Roman, Aponte, Mercado and Noel were aware of a valid temporary stay away order of protection in favor of [Plaintiff]." *Id.* ¶ 166. Plaintiff contends that despite the active order of protection requiring Defendant Sanders to avoid any location where Plaintiff was present, Defendant Sanders arrived at PS3 and remained outside. *Id.* ¶ 165.

Approximately 45 minutes later, Defendants Serrano, Phillips, Willacy, Souffrant, Lai, and other NYPD officers arrived. *Id.* ¶ 170. Plaintiff alleges that Defendant Sanders falsely told the officers that she had legal custody of NAJ and that Plaintiff was not authorized to pick her up from school. *Id.* ¶ ¶ 171-72. Plaintiff claims that Defendant Serrano approached him aggressively, instructing him to release NAJ and stating he could not leave with her. *Id.* ¶ 171. Plaintiff alleges that he tried to explain his status as NAJ's father, his authorization on the DOE blue card, and the absence of any custody order favoring Defendant Sanders. *Id.* ¶ 173. Plaintiff asserts that Defendant Serrano and the other NYPD officers reviewed the March 2, 2022 visitation order, but insisted that it did not permit Plaintiff to pick up NAJ and claimed that Defendant Sanders had custody because NAJ resided with her. *Id.* ¶ 176.

Plaintiff alleges that he repeatedly asked if he could leave with NAJ and if he was under arrest; the officers answered "no" to both requests. *Id.* ¶¶ 177-78. Plaintiff alleges that during this time, NAJ was unharmed and not in distress, though she cried intermittently due to the commotion. *Id.* ¶¶ 183, 186. Plaintiff claims that the officers ordered him to release NAJ to Defendant Noel or

11

Defendant Phillips, but he refused, stating he would comply if presented with a custody order in Defendant Sanders's favor, which was not produced. *Id.* ¶¶ 184, 185.

Plaintiff alleges that at one point, NAJ needed to use the bathroom. *Id.* ¶ 189. Plaintiff asserts that the officers insisted that Defendant Phillips take her, but Plaintiff refused. *Id* ¶¶ 190-91. Eventually, Plaintiff alleges that Defendant Serrano allowed him to accompany NAJ to the bathroom. *Id.* ¶ 192. Upon returning from the bathroom, Defendant Serrano informed Plaintiff that he was under arrest. *Id.* ¶ 193. Plaintiff claims that Defendants Serrano, Souffrant, Willacy, and Lai forcibly restrained him, while Defendant Phillips removed NAJ from his custody without his consent. *Id.* ¶¶ 193-97.

Plaintiff was charged with obstructing governmental administration in the second degree (Penal Law § 195.05), endangering the welfare of a child (Penal Law § 260.10(1)), and criminal contempt in the second degree (Penal Law § 215.50(3)). *Id.* ¶ 198. He asserts that the officers lacked reasonable suspicion to detain him and probable cause to arrest him, arguing that he could not have violated the visitation order, which was in his favor, and that Defendant Sanders did not have legal custody of NAJ. *Id.* ¶ 199, 215-16. Plaintiff alleges he was unlawfully detained for approximately four hours. *Id.* ¶ 201.

Plaintiff further claims that Defendants Willacy and Phillips falsely reported that Plaintiff made threats against Defendant Sanders, even though they were not present at the location where Plaintiff was sitting. *Id.* ¶¶ 207-08, 213. Plaintiff claims that Defendant Willacy also allegedly "falsely marked on a police report that there was an active stay away order of protection for [Plaintiff]" even though there was actually such an order for Defendant Sanders. *Id.* ¶ 209. Plaintiff also accuses Defendant Willacy of executing a false Suspected Child Abuse or Maltreatment Report, claiming Plaintiff put NAJ at risk of personal injury. *Id.* ¶ 210. Plaintiff

claims that Defendant Sanders knowingly executed a false Domestic Incident Report to support Plaintiff's arrest. *Id.* ¶ 212.

Plaintiff claims that the charges against him were later dismissed, "[n]o pleas were obtained[,] [n]o convictions were obtained[,] and the Orders of Protection against [h]im were vacated." *Id.* ¶¶ 304-05.

### 6. December 10, 2022 Arrest

On December 10, 2022, Plaintiff alleges that he arrived at a prearranged location to pick up NAJ for a scheduled visit. *Id.* ¶ 217. Plaintiff alleges that Defendant Sanders called 9-1-1 and reported that Plaintiff violated a September 27, 2022 "Full Order of Protection," which required Plaintiff "to stay away from and to not communicate with, harass, menace, intimidate or threaten Defendant Sanders and NAJ." *Id.* ¶ 226. Plaintiff alleges that the order of protection stated, in part:

> [] Observe such other conditions as are necessary to further the purposes of protection: "SUBJECT TO ANY SUBSEQUENT AND EXISTING SUPREME COURT ORDERS AND/OR FAMILY COURT ORDERS RE: CUSTODY & VISITATION."

*Id.* ¶ 226.

Plaintiff further contends that he had a family court custody and visitation order, dated September 27, 2022, which stated:

> [] ORDERED that [Plaintiff] may have incidental contact and communication with [Defendant] Sanders to facilitate contact and visitation between [Plaintiff] and the subject child, [NAJ] . . .

*Id.* ¶ 227.

Plaintiff claims that Defendants Ngai, Rodriguez, Enorme, Cherenfant, and Maher responded to the scene, reviewed the protection order and visitation order, and, purportedly, initially decided that Plaintiff did not violate the protection order. *Id.* ¶¶ 225-28. Plaintiff alleges

13

that Defendant Sanders insisted that the visitation order had expired; the officers ultimately arrested Plaintiff.  *Id.* ¶¶ 229-30.

According to Plaintiff, Defendant Sanders also claimed that Plaintiff sent her non-emergency texts about matters such as a coat and holiday plans, which she alleged violated the protection order.  *Id.* ¶ 222. Specifically, Plaintiff contends that Defendant Sanders stated in a domestic incident report ("DIR") that:

> "[Plaintiff] keep texting me about stuff that have nothing to do with emergency or medical.  He text me about a coat, Xmas, call, and what he sent to lawyers. He do not suppose to text about non-emergency and non medical."

*Id.* ¶ 222.  Plaintiff further contends that Defendant Rodriguez wrote in the DIR:

> "At TPO, C/V state Def't was at scene for prearranged pick up of daughter. C/V states court order only allows def't to contact regarding emergencies. Def't contacted about request of making sure daughter has a jacket."

*Id.* ¶ 223.

Plaintiff alleges that the officers did not have reasonable suspicion to arrest or detain him and that they lacked probable cause to arrest him.  *Id.* ¶ 236.  Plaintiff maintains that his communications with Defendant Sanders complied with the visitation order and that Defendant Sanders misinterpreted the protection order.  *Id.* ¶ 224.  Plaintiff alleges that the officers did not have reasonable suspicion to arrest or detain him and that they lacked probable cause to arrest him. *Id.* ¶ 236.  Plaintiff alleges that the officers failed to inform the prosecutor that Plaintiff had a family court order that permitted him to pick up NAJ and communicate with Defendant Sanders, and he accuses officers of omitting key facts from their reports.  *Id.* ¶¶ 238-39.  Plaintiff claims that the charges against him were later dismissed, "[n]o pleas were obtained[,] [n]o convictions were obtained[,] and the Orders of Protection against [h]im were vacated."  *Id.* ¶¶ 304-05.

In addition to the above six arrests, the amended complaint details a series of purported systemic failures on the part of the New York City Court system, the City of New York, Legal Aid, and CAMBA.  *See id.* ¶¶ 240-285.

Plaintiff alleges that Defendant Menachem White, Esq., the attorney who represented Defendant Sanders in family court, and Defendant Caroline Okun, Esq., the Court-appointed law guardian assigned to represent NAJ, "had one goal . . . to keep [Plaintiff] out of NAJ's life.  NAJ is a black girl.  And these defendants' goal is to have NAJ grow up in a single parent home, raised by [h]er mother Defendant Sanders; knowing this increases her changes of failing in life as an adult."  *Id.* ¶ 241.  Plaintiff alleges that Defendant Okun "gave Defendant Sanders legal advice regarding the meaning and interpretations of Court orders and what [Plaintiff's] rights were regarding NAJ."  *Id.* ¶ 253.  Plaintiff claims that Defendant Okun incorrectly advised Defendant Sanders that Plaintiff "was not allowed to pick up NAJ or see NAJ except on days specifically outlined in the KCFC Order," and "[s]he knowingly and falsely advised [Defendant Sanders] that she had legal custody of NAJ."  *Id.* ¶ 253.  Plaintiff claims that based on this "incorrect and false legal advice[,] Defendant Sanders had [him] unlawfully arrested or detained at least 4/5 time[s] between June 2022 and December 2023."  *Id.* ¶ 254.

Plaintiff claims that Defendants White and Okun also provided Defendant Kristina Beecher, the principal of NAJ's school, and Defendant Noel the same, incorrect legal advice about the interpretation of the family court orders and Plaintiff's rights regarding NAJ.  *See id.* ¶ 255.  Specifically, Plaintiff alleges that Defendants White and Okun told Defendants Beecher and Noel that he "was not allowed to pick up NAJ except on days specifically outlined in the KCFC order" and incorrectly advised Defendants Beecher and Noel that Defendant Sanders had legal custody of NAJ.  *Id.* ¶ 255.

15

Plaintiff alleges that "[o]n October 3, 2022" and "[o]n four dates in 2023[,]" Defendant Beecher refused to allow Plaintiff to pick up NAJ from school and informed him that "[h]e would be arrested if [h]e picked up NAJ from school." *Id.* ¶¶ 260-61. Plaintiff claims that Defendant Beecher "was aware that [Plaintiff] is NAJ's dad and [Plaintiff's] name is on DOE blue card as a person allowed to pick up NAJ." *Id.* ¶ 264.

Plaintiff claims that Legal Aid "was grossly negligent in supervising and training Defendant Okun" because they "failed to properly train her on the difference between a family court custody order and a family court visitation order." *Id.* ¶ 256. Plaintiff makes similar claims against CAMBA, who he claims knowingly failed to train its employees on the difference between custody and visitation orders. *Id.* ¶ 265.

Plaintiff claims that these injustices were perpetuated by the City, which "tolerates NYPD's practice of unlawfully arresting black males." *Id.* ¶ 272. Plaintiff claims that, "[i]n this case, that failure was compounded by the City's failure to train NYPD officers "on child-sensitive arrest policies, including: alerting NYPD officers ahead of time that children will be present at the scene of the arrest; minimizing the use of force and handcuffing; limiting what children are able to see; and affording parents or caregivers the opportunity to explain the arrest to their child, make additional phone calls as necessary, and stay with the child until another person arrives to care for them." *Id.* ¶ 278.

## B.    Procedural History

Plaintiff filed his initial complaint on December 26, 2023. *See* Dkt. No. 1. On March 6, 2024, Plaintiff filed an amended complaint. *See* Dkt. No. 27. The amended complaint asserts thirteen causes of action against, as follows:

1. A Fourth and Fourteenth Amendment false arrest claim, brought under 42 U.S.C. § 1983, against Defendants City of New York, CAMBA, Aquino, Chen, Cheng, Serrano,

16

Willacy, Phillips, Souffrant, Lai, Arty, Mays, [SSA] M. White, Mercado, Aponte, McCain, Roman, Rodriguez, Ngai, Sanders, and Noel. *Id*. ¶¶ 286-96.

2. A Fourth and Fourteenth Amendment malicious prosecution claim, brought under 42 U.S.C. § 1983, against Defendants City of New York, Aquino, Phillips, Arty, Mays, Cheng, Rodriguez, and Contratto. *Id*. ¶¶ 297-310.

3. A Fourth and Fourteenth Amendment excessive force/battery claim, brought under 42 U.S.C. § 1983, against Defendants Serrano, Willacy, Souffrant, Lai, Aquino, Chen, Cheng, Mays, Ngai, Rodriguez, Enorme and Arty. *Id*. ¶¶ 311-19.

4. A Fourth and Fourteenth Amendment failure to intervene claim, brought under 42 U.S.C. § 1983, against Defendants Serrano, Chen, Arty, Phillips, Willacy, Souffrant, Lai, Rodriguez, and Enorme. *Id*. ¶¶ 320-26.

5. A Fourteenth Amendment familial rights, interference with intimate association, and intentional interference with custodial rights claim, brought under 42 U.S.C. § 1983, against Defendants Serrano, Phillips, Souffrant, Willacy, Lai, Beecher, Noel, Okun, and M. White. *Id*. ¶¶ 327-35.

6. A Fourteenth Amendment substantive due process claim, brought under 42 U.S.C. § 1983, against Defendants Serrano, Phillips, Souffrant, Willacy, Lai, Beecher, and Noel. *Id*. ¶¶ 336-40.

7. A state/common law false arrest and false imprisonment claim against Defendants City of New York, CAMBA, Aquino, Chen, Cheng, Serrano, Willacy, Phillips, Souffrant, Lai, Arty, Mays, (SSA) M. White, Mercado, Aponte, McCain, Roman, Rodriguez, Sanders, and Noel. *Id.* ¶¶ 341-47.

8. A state/common law malicious prosecution claim against Defendants City of New York, Aquino, Phillips, Arty, Mays, Cheng, Rodriguez, and Contratto. *Id.* ¶¶ 348-54.

9. A state/common law battery claim against Defendants City of New York, Serrano, Willacy, Souffrant, Lai, and McCain. *Id.* ¶¶ 355-59.

10. A negligent hiring, retention, training and supervision claim against Defendants City of New York, Legal Aid Society, and CAMBA. *Id.* ¶¶ 360-65.

11. A First Amendment free speech claim against Defendants City of New York, Aquino, Cheng, Arty, Mays, Contratto, Ngai, Rodriguez, M. White, and Sanders. *Id.* ¶¶ 366-374.

12. A New York City Administrative Code Chapter 8 Section 8-803 claim against Defendants Aquino, Chen, Cheng, Serrano, Willacy, Phillips, Souffrant, Lai, Arty, Mays, (SSA) M. White, Mercado, Aponte, McCain, Roman, Ngai, Enorme, Cherenfant, Maher, and Rodriguez. *Id.* ¶¶ 375-381.

13. A *respondent superior* claim against the Legal Aid Society. *Id.* ¶¶ 382-386.

Plaintiff alleges that as a result of the above arrests and related legal proceedings, he has suffered from extreme emotional distress, pain, and suffering, including "the repeated interference with parental rights, unlawful seizures, arrests, battery, incarcerations, [and] malicious prosecutions" by the above Defendants." *Id.* ¶ 184-185. Plaintiff seeks monetary damages of $5,000,000.00, as well as punitive damages against the individually named Defendants in an amount to be determined at trial. *Id.* at 53.

On May 6, 2024, City Defendants filed their answer to the amended complaint. *See* Dkt. No. 43. City Defendants amended their answer on May 16, 2024. *See* Dkt. No. 48.

### 1.    Defendant White's Motion to Dismiss (Dkt. No. 47)

On May 13, 2024, Defendant White filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). *See* Dkt. No. 47. On July 11, 2024, Plaintiff filed a notice of voluntary dismissal in which he dismissed all causes of action in the amended complaint against Defendants White, Okun, and the Legal Aid Society. *See* Dkt. No. 58. On July 15, 2024, the Court entered an order dismissing these Defendants from the case. *See* July 15, 2024 Dkt. Order.

Plaintiff also voluntarily dismissed the claims against Defendant Kristina Beecher; however, since Defendant Beecher had already filed an answer, the Court informed Plaintiff that a notice of voluntary dismissal is not a valid means of dismissing Defendant Beecher from this case. *See* July 15, 2024 Dkt. Order ("If Plaintiff wishes to dismiss Defendant Beecher from this action, Plaintiff is directed to file a stipulation of dismissal signed by all parties who have appeared pursuant to F.R.C.P. Rule 41(a)(1)(A)(ii)").

To date, Plaintiff has not filed a stipulation of dismissal against Defendant Beecher.

**2.     Defendants CAMBA and Noel's Motion to Dismiss and Plaintiff's Cross-Motion for Leave to File a Second Amended Complaint (Dkt. Nos. 56, 64)**

On May 13, 2024, Defendants CAMBA and Noel moved to dismiss the first amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* Dkt. No. 64.

On June 26, 2024, in response to Defendants' motion, Plaintiff served Defendants CAMBA and Noel with his opposition papers and a cross-motion for leave to file a second amended complaint. *See* Dkt. Nos. 56 (motion for leave to file a second amended complaint), 61 (letter from Defendants CAMBA and Noel regarding service of opposition and motion for leave), 64 (Plaintiff's opposition to motion to dismiss). Plaintiff's proposed second amended complaint seeks to (1) add an additional claim for abuse of process; (2) allege additional facts in connection with his September 26, 2022 arrest; and (3) add School Safety Agent Yvonne Popo and a "John Doe Police Officer" as individual defendants. *See* Dkt. No. 56.

On July 23, 2024, Defendants CAMBA and Noel served their opposition to Plaintiff's motion for leave to file a second amended complaint and their reply in further support of their motion to dismiss. *See* Dkt. Nos. 65, 66.[4]

On August 19, 2024, Plaintiff filed his reply in further support of his motion for leave to file a second amended complaint. *See* Dkt. Nos. 71, 72.

**3.     City Defendants' Motion for Judgment on the Pleadings (Dkt. No. 53), Plaintiff's Cross Motions for Partial Summary Judgment and for Leave to File a Third Amended Complaint (Dkt. Nos. 68, 69)**

On June 28, 2024, City Defendants moved for judgment on the pleadings to dismiss all of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(c). *See* Dkt. Nos. 53, 54. City Defendants argue that Plaintiff's amended complaint should be dismissed because probable cause existed for each

---

[4] On July 23, 2024, City Defendants filed an opposition to Plaintiff's motion for leave to file a second amended complaint. *See* Dkt. No. 62.

arrest, certain claims are time-barred or procedurally defective, and qualified and prosecutorial immunity shield individual defendants.  *See* Dkt. No. 54.  City Defendants further argue that Plaintiff fails to state a claim for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  *See id.*

On August 19, 2024, Plaintiff filed an opposition to City Defendants' motion for judgment on the pleadings, and Plaintiff cross-moved for partial summary judgment and for leave to file a third amended complaint.  *See* Dkt. Nos. 68, 69.  Plaintiff's proposed third amended complaint seeks to add additional facts to rebut City Defendants' probable cause defense; to remove Defendants White, Okun, Beecher, Contratto, and Legal Aid Society from this case; and to add a claim for abuse of process against Defendant Willacy and Defendant Noel.  *See* Dkt. Nos. 68-63 at 1-2, 69-1.

In response to Plaintiff's cross-motion for partial summary judgment, the Court entered the following order on August 22, 2024:

> ORDER [].  Defendants shall file a response, if any, to Plaintiff's Second Motion for Leave to File an Amended Complaint by September 9, 2024. Plaintiff shall fly a reply by September 16, 2024. Plaintiff's reply must be limited to addressing any arguments made by Defendants in their response to Plaintiff's motion. Plaintiff is not permitted to raise new arguments in his reply.
>
> Plaintiff has also filed a Motion for Partial Summary Judgment [] without requesting leave of Court in violation of Judge Merchant's Individual Practices and Rules.  As this case has yet to proceed to discovery -- and discovery is, in fact, stayed pending the Court's rulings on the various pending motions, see May 17, 2024 Dkt. Order -- Plaintiff's motion is premature.  *See, e.g.*, *Byrd v. Grove St. Mgmt. Corp.*, No. 16-CV-6017 (MAT), 2016 WL 6663006, at *2 (W.D.N.Y. Nov. 11, 2016) (finding "it would be inappropriate to enter summary judgment against Defendants and in Plaintiff's favor" where parties had not conducted any discovery); *Toussie v. Allstate Ins. Co.*, 213 F. Supp. 3d 444, 445 (E.D.N.Y. 2016) ("Rule 56(b) allows a summary judgment motion to be made 'at any time.' But courts routinely deny motions for summary judgment as

premature when discovery over relevant matters is incomplete."); *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 23 F. Supp. 3d 173, 18889 (S.D.N.Y. 2014) ("in many cases [a motion for summary judgment] will be premature until the nonmovant has had time to file a responsive pleading." (citation omitted)).  Plaintiff shall file a letter with the Court, by August 30, 2024, indicating whether he wishes to withdraw his motion for partial summary judgment at this time.  If Plaintiff does not withdraw his motion, then the undersigned will address the motion it in its forthcoming report and recommendation on the other pending motions.

Plaintiff is reminded that even as a *pro se* litigant, he must comply with all applicable procedural rules, including Judge Merchant's Individual Practices and Rules and the undersigned's Individual Practices and Rules.  *Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-5693 (SJF) (AKT), 2017 WL 9485647, at *5 (E.D.N.Y. Feb. 23, 2017) ("Although Plaintiff is proceeding in a *pro se* capacity, she has an obligation, notwithstanding her *pro se* status, to be aware of and adhere to all applicable procedural rules."), *report and recommendation adopted*, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017). Rule III(B)(1) of Judge Merchant's Individual Rules states that "a pre-motion conference with the Court must be requested before making[] . . . any motion pursuant to Fed. R. Civ. P. 12 [for dismissal] or 56 [for summary judgment][.]"

Aug. 22, 2024 Dkt. Order.

On August 30, 2024, Plaintiff filed a letter indicating that he would not withdraw his motion for partial summary judgment.  *See* Dkt. No. 73.

On September 9, 2024, Defendants CAMBA and Noel filed an opposition to Plaintiff's motion for leave to file a third amended complaint.  *See* Dkt. No. 75.  That same day, City Defendants also filed their opposition to Plaintiff's motion for leave to file a third amended complaint.  *See* Dkt. No. 76.

City Defendants filed their reply in further support of their motion for judgment on the pleadings on September 16, 2024.  *See* Dkt. No. 77.

## II.    <u>Legal Standards</u>

### A.    **Dismissal under Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court must accept the well-pleaded factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff; however, the Court need not "credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

### B.    Judgment on the Pleadings under Fed. R. Civ. P. 12(c)

In deciding a Fed. R. Civ. P. 12(c) motion, courts "employ[ ] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (*per curiam*)). Thus, the court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [plaintiffs'] favor. To survive a Rule 12(c) motion, [plaintiffs'] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (alterations in original) (quoting *Johnson*, 569 F.3d at 43-44). "Judgment on the pleadings may be granted 'where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.'" *Deckers Outdoor Corp. v. Next Step Grp., Inc.*, No. 23-CV-02545 (ALC), 2024 WL 3459609, at *2 (S.D.N.Y. July 18, 2024) (quoting *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)).

On a Rule 12(c) motion, the court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation omitted). The complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Id.* (citation omitted).

### C.    Leave to Amend under Fed. R. Civ. P. 15

Under Fed. R. Civ. P. 15, "[t]he court should freely give leave [to amend] when justice so requires," making sure to interpret the rule liberally in favor of amendment so as to enable disputes to be resolved on the merits whenever possible. *See* Fed. R. Civ. P. 15(a)(2); *Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) (holding that leave to amend is

entrusted to the court's discretion); *Assam v. Deer Park Spring Water, Inc.*, 163 F.R.D. 400, 404 (E.D.N.Y. 1995). "Rule 15(a)(2) is a lenient standard, and the Court is to "freely give leave when justice so requires." *Borozny v. Raytheon Techs. Corp., Pratt & Whitney Div.*, No. 21-CV-1657 (SVN), 2023 WL 7037523, at *2 (D. Conn. Oct. 26, 2023) (citing *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021)). "If the [movant] has at least colorable grounds for relief, justice . . . require[s]" that the court grant leave to amend a complaint. *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 506 (S.D.N.Y.1992) (quoting *S.S. Silberblatt v. East Harlem Pilot Block–Building 1 Hous. Dev. Fund Co., Inc.*, 608 F.2d 28, 42 (2d Cir. 1979)).

Generally, leave to amend pleadings shall only be denied "if there is delay, bad faith, futility, or prejudice to the non-moving party." *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 445 (E.D.N.Y. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In determining futility, the test is whether "the proposed claim could not withstand a Fed. R. Civ. P 12(b)(6) motion to dismiss. *Salazar v. Browne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 383 (E.D.N.Y. 2011) (citing *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). Before applying this test, however, the Court notes that it is well-established in the Second Circuit that "[t]he burden of proving futility rests on the party opposing the amendment." *Eliya, Inc. v. Steven Madden, Ltd.*, No. 15-CV-01272 (DRH) (SIL), 2017 WL 8794774, at *5 (E.D.N.Y. Feb. 2, 2017), *report and recommendation adopted*, 2017 WL 1190943 (E.D.N.Y. Mar. 30, 2017); *see Lumetrics, Inc. v. Bristol Instruments, Inc.*, 101 F. Supp. 3d 264, 270 (W.D.N.Y. 2015) ("In sum, [the opposing party] has failed to meet its burden to demonstrate that an amendment would be futile . . . ."); *Blaskiewicz v. Cty. of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998) ("The party opposing such amendment has the burden of establishing that leave to amend would be prejudicial or futile."); *Harrison v.*

*NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998) ("The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile.").

### D.    Partial Summary Judgment under Fed. R. Civ. P. 56

Pursuant to Fed. R. Civ. P. 56, a court should grant summary judgment on a claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "In other words, a court should grant summary judgment to a party if the facts in the record could not support any outcome other than victory for that party." *Berbick v. Precinct 42*, 977 F. Supp. 2d 268, 273 (S.D.N.Y. 2013) (Sullivan, J.).  "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted).  "Material" facts are facts that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmovant and must draw all reasonable inferences in favor of that party and "eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal citation omitted); *see also Anderson*, 477 U.S. at 255 ("[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

"The Federal Rules permit partial summary judgment in order to "limit the issues to be determined at trial." *In re Ciprofloxacin Hydrochloride Antitrust Litigation*, 261 F. Supp. 2d 188,

231 (E.D.N.Y. 2003) (Rule 56 "authorizes partial summary judgment that falls short of a final determination to limit the issues to be determined at trial."). "The standard for partial summary judgment under Rule 56(d) is the same as the standard applied under Rule 56(c)." *John Hancock Life Ins. Co. (USA) v. Meer as Tr. of Everett Fam. Irrevocable Tr.*, No. 09-CV-2561 (JBW), 2010 WL 11626952, at *6 (E.D.N.Y. May 17, 2010). A motion for partial summary judgment, however, is not proper where "it requests disposition of elements of a claim rather than judgment on a claim." *S.E.C. v. Thrasher*, 152 F. Supp. 2d 291, 295 (S.D.N.Y. 2001).

### D.    *Pro Se* Submissions

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.* To assess plausibility, the Court considers the "allegations on the face of the complaint" as well as "documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." *McDonald v. Esposito*, No. 20-CV-828 (RPK) (RML), 2021 WL 1062259, at *2 (E.D.N.Y. Mar. 18, 2021) (quoting *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020)).

"Because *pro se* plaintiffs 'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a pro se [complaint] than they would in reviewing a pleading submitted by counsel.'" *Peachey v. Zayaz*, No. 23-CV-06409 (PMH), 2024 WL 4932527, at *2 (S.D.N.Y. Dec. 2, 2024) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). But while "*[p]ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading

26

requirements." *Peachey*, 2024 WL 4932527, at *2 (citation omitted).  While the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## III.   Defendant White's Motion to Dismiss

On May 13, 2024, Defendant White filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  *See* Dkt. No. 47.  On July 11, 2024, Plaintiff filed a notice of voluntary dismissal in which he dismissed all causes of action in the amended complaint against Defendants White as well as Defendants Okun and Legal Aid Society.  *See* Dkt. No. 58.  On July 15, 2024, the Court entered an order dismissing these Defendants from the case. *See* July 15, 2024 Dkt. Order.

As Defendant White is no longer a defendant in this action, the undersigned respectfully recommends that Defendant White's motion to dismiss should be denied as moot.  *See Muzumala v. Fed. Bureau of Investigation*, No. 22-CV-3789 (JGK), 2022 WL 20088073, at *1 (S.D.N.Y. Dec. 23, 2022) ("Because DHS is no longer a party to the action, the plaintiff's request for review of the claims against DHS is denied as moot.").

## IV.   City Defendants' Motion for Judgment on the Pleadings

City Defendants move for judgment on the pleadings under Rule 12(c), seeking dismissal of all claims against them in the amended complaint.  *See* Dkt. No. 54.  City Defendants argue that probable cause existed for each of the six arrests alleged in the amended complaint, that some claims are time-barred or procedurally defective, and that the individually-named defendants are shieled by qualified and prosecutorial immunity.  *See id.*  City Defendants also argue that Plaintiff failed to state a claim for municipal liability under *Monell*.  *See id.*

### A.     Plaintiff's Section 1983 Claims

Plaintiff asserts claims under 42 U.S.C. § 1983, which provides a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citation omitted); *see also Yagel v. The Town of Haverstraw*, No. 24-CV-2030 (NSR), 2024 WL 5090174, at *2 (S.D.N.Y. Dec. 11, 2024) (Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.") (citations omitted); *Bailey v. City of New York*, 79 F. Supp. 3d 424, 440 (E.D.N.Y. 2015).

To state a claim under Section 1983, Plaintiff must plausibly allege "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)); *see also Flynn v. James*, 513 F. App'x. 37, 39 (2d Cir. 2013).

"In order for a defendant in a Section 1983 action to be held liable, the plaintiff must demonstrate that the defendant was personally involved in the alleged constitutional violations." *Yagel*, 2024 WL 5090174, at *2 (citation omitted). Personal involvement is defined as "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). "Important context is that a defendant 'in a § 1983 action is not liable simply on the basis of holding a high position of

authority.'" *Yagel*, 2024 WL 5090174, at *2 (quoting *Dawson v. Cnty. of Westchester*, 351 F. Supp. 2d 176, 196 (S.D.N.Y. 2004)).

### 1.    False Arrest

Plaintiff's first cause of action alleges six instances of false arrest based on purportedly false complaints, officers' misinterpretation of protection orders, and invalid orders.  *See* Dkt. No. 27 ¶¶ 286-96.  City Defendants argue that Plaintiff's false arrest claim fails because the allegations in the amended complaint demonstrate that probable cause, or, arguable probable cause, existed for each arrest.  *See* Dkt. No. 54 at 17.

### a)    Legal standard

Claims of false arrest under Section 1983 derive from the Fourth Amendment right to be free from unreasonable seizures, including the right to be free from arrest without probable cause. *See, e.g.*, *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).  To state a Section 1983 claim for false arrest, a plaintiff must allege "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (*per curiam*) (internal quotation marks omitted); *see Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 240 (S.D.N.Y. 2014) (same).  A claim for false arrest brought under Section 1983 is "substantially the same" as a claim for false arrest under New York law.  *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) ("Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law."); *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021).

The existence of probable cause "is a complete defense to an action for false arrest brought under New York Law or § 1983." *Ackerson*, 702 F.3d at 19 (2d Cir. 2012) (internal quotations omitted); *accord Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118-19 (2d Cir. 1995); *Jaegly*, 439 F.3d at 151; *McCullough v. Graves*, No. 24-506, 2024 WL 4615821, at *2 (2d Cir. Oct. 30, 2024) ("Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff.") (citations omitted); *Gill v. Giuliani*, No. 23-CV-4087 (DLC), 2024 WL 4858992, at *5 (S.D.N.Y. Nov. 21, 2024) ("Probable cause is a complete defense to an action for false arrest brought under New York law or § 1983."). *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) ("The existence of probable cause to arrest— even for a crime other than the one identified by the arresting officer—will defeat a claim of false arrest under the Fourth Amendment") (citing *Devenpeck v. Alford*, 543 U.S. 146, 152-54 (2004)).

"Probable cause exists when a law enforcement officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Iosilevich v. City of New York*, No. 22-CV-3714 (RPK) (LB), 2024 WL 4362510, at *3 (E.D.N.Y. Sept. 30, 2024) (quoting *United States v. Diaz*, 854 F.3d 197, 203 (2d Cir. 2017)). "The Supreme Court has explained that 'probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Jeanty v. City of New York*, No. 21-CV-5344 (OEM) (JAM), 2024 WL 3849418, at *10 (E.D.N.Y. Aug. 16, 2024), *reconsideration denied*, No. 21-CV-5344 (OEM) (JAM), 2024 WL 4827736 (E.D.N.Y. Nov. 18, 2024) (quoting *United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008)); *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (explaining that probable cause arises when officers have "knowledge or reasonably trustworthy information of facts and

circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.").

When determining probable cause, courts consider the totality of the circumstances and the facts known to the officer at the time of the arrest. *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (citation omitted); *accord Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006). Courts will dismiss false arrest claims where "the complaint is devoid of facts showing that the arresting officer could not have reasonably concluded that there was probable cause to make the arrest." *Liang v. City of New York*, No. 10-CV-3089 (ENV) (VVP), 2013 WL 5366394, at *6 (E.D.N.Y. Sept. 24, 2013), *aff'd sub nom. Liang v. Zee*, 764 F. App'x 103 (2d Cir. 2019); *see also Weyant*, 101 F.3d at 852 ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers."). "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted).

A "victim's identification is typically sufficient to provide probable cause." *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013). "But that is not necessarily the case when circumstances raise doubts as to the victim's veracity." *Iosilevich*, No. 22-CV-3714 (RPK) (LB), 2024 WL 4362510, at *3 (citations omitted). Ultimately, the "failure to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010)).

### b)    January 8, 2021 Arrest

Plaintiff alleges that he was arrested on January 8, 2021 based on Defendant Sanders's allegations and without verification or review of the text messages she referenced in the complaint.

31

*See* Dkt. No. 27 ¶¶ 75-76.  Plaintiff alleges that at the time of his arrest, Defendants Aquino and Chen were aware of the family court dispute and the domestic incident reports filed by both parties. *See id.* ¶ 81.  Taking the alleged facts in the amended complaint as true, the amended complaint states circumstances which raise some doubt as to Defendant Sanders's veracity and Defendants Aquino and Chen's lack of action to investigate or corroborate the allegations made by Defendant Sanders.  *See Liang*, 2013 WL 5366394, at *6 (dismissing false arrest claims where complaint demonstrated that officers had probable cause to arrest plaintiff).

While officers can generally rely on a victim's complaint to establish probable cause, there are circumstances where an officer may need to investigate further.  *See Curley*, 268 F.3d at 69-70; *Nash*, 2019 WL 1367159, at *5.  For example, "where, as here, a bitter prior relationship exists and is known to the arresting officer before the arrest is made, the complaint alone may not constitute probable cause; the officers may need to investigate further."  *Sankar v. City of New York*, 867 F. Supp. 2d 297, 306 (E.D.N.Y. 2012) (Dearie, J.).  Courts recognize that prior relationships can "give[] rise to a motive for a false accusation" and are "[t]he most common situation in which . . . doubts arise" as to the veracity of a victim's complaint.  *Id.*

Plaintiff and Defendant Sanders's relationship, as described in the amended complaint, is the very type of "bitter relationship" which would cause a reasonable officer to investigate Defendant Sanders's claims further.  *See Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 134 (E.D.N.Y. 1998) (finding known motive to make false accusations where officer was aware that "complaint was made by one spouse against another in the midst of divorce proceedings"); *Morris v. City of New York*, No. 14-CV-1749 (JG) (LB), 2015 WL 1914906, at *5 (E.D.N.Y. Apr. 27, 2015) (finding that ongoing disputes between plaintiff and victim involving prior accusations and complaints to

the police made victim "an unreliable [] informant whose statement, under the circumstances, could not form the sole basis for an arrest").

Specifically, the amended complaint alleges that both Defendants Aquino and Chen were aware of over 20 prior domestic incident reports filed by **both** Defendant Sanders **and** Plaintiff. *See* Dkt. No. 27 ¶ 81 ("Defendants Aquino and Chen were aware that there were approximately 20 plus Domestic Incident Reports filed by [Plaintiff] and Defendant Sanders against each other"). Accepting all factual allegations in the amended complaint as true and drawing all reasonable inferences in Plaintiff's favor, the Court can infer that Defendant s Aquino and Chen were aware that Defendant Sanders was the subject of domestic incident reports *filed by Plaintiff*, which could give rise to a motive for her to falsely accuse Plaintiff of committing a crime. *See Hayden*, 594 F.3d at 160 (explaining that the court must "draw all reasonable inferences in [plaintiff's] favor" on a Rule 12(c) motion).

Knowing this background and information, and viewed through the lens of a Fed. R. Civ. P. 12(c) motion, questions of fact exist as to whether Defendants Chen and Aquino had probable cause to arrest Plaintiff, based on Defendant Sanders's complaint. And, assuming the allegations in the amended complaint to be true, Defendants Chen and Aquino should have investigated Defendant Sanders's claims further, including by reading the referenced text messages from Plaintiff to confirm whether they violated the temporary order of protection. *See Minfee v. City of New York*, No. 20-CV-274 (RPK) (CLP), 2021 WL 3565864, at *3 (E.D.N.Y. Aug. 12, 2021) ("[W]hen an officer has reason to doubt the credibility of a complainant, the officer does not necessarily have probable cause based on complainant statements. Under those circumstances, the officer may need to investigate further to establish probable cause."); *Sherman v. City of New York*, No. 18-CV-5359 (ARR) (SJB), 2019 WL 2164081, at *8 (E.D.N.Y. May 16, 2019) (denying

motion to dismiss false arrest claim where complaint demonstrated that arresting officers should have investigated victim's claims further to establish probable cause given plaintiff and victim's prior relationship involving a dispute over a purported loan).

The authority on which City Defendants rely is not to the contrary. City Defendants cite cases recognizing that officers may generally rely on a victim's criminal complaint in making an arrest. *See* Dkt. No. 54 at 20. But the cases cited expressly note that this principle does not apply when circumstances "raise doubts as to the victim's veracity." *Williams v. City of New York*, 683 F. App'x 57, 59 (2d Cir. 2017); *Jaegly*, 439 F.3d at 153; *Romney*, 2017 WL 1317011, at *7. Moreover, while City Defendants argue that Defendants Aquino and Chen's knowledge of the domestic incident reports "bolsters support" for their probable cause determination, *see* Dkt. No. 54 at 20, the converse could also be true at the pleading stage.

Accordingly, at this stage in the litigation, drawing all reasonable inferences in Plaintiff's favor, the undersigned finds that Plaintiff sufficiently alleged circumstances raising doubts about Defendant Sanders's veracity, thereby defeating the existence of probable cause based on her accusations. *See Fabrikant*, 691 F.3d at 216 (probable cause does not exist where "the circumstances raise doubt as to the person's veracity"); *Bullard v. City of New York*, 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) (denying a motion to dismiss where the facts alleged by the plaintiff in his complaint established that the victim was not a reliable source of probable cause, and yet "the defendants did nothing to investigate the allegations, corroborate them, or pursue [the plaintiff's] claims that he was innocent"); *Allen v. Leonard*, No. 18-CV-7163 (SJF) (AKT), 2020 WL 4587752, at *11 (E.D.N.Y. Mar. 3, 2020) (recommending denial of motion to dismiss where plaintiff sufficiently alleged circumstances raising doubts as to the complainants' veracity, thereby defeating the existence of probable cause based on the complainants' accusations), *report and*

34

*recommendation adopted*, 2020 WL 2537280 (E.D.N.Y. May 19, 2020); *Sherman*, 2019 WL 2164081, at *8-9 (denying motion to dismiss where plaintiff sufficiently alleged "circumstances that raise doubts as to the [person's] veracity.").

City Defendants argue that, even if probable cause did not exist, arguable probable cause—and, in turn, qualified immunity—would bar his January 8, 2021 false arrest claim.  At this stage in the litigation, the Court disagrees.

"Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Myers v. Patterson*, 819 F.3d 625, 633 (2d Cir. 2016) (internal quotation marks omitted).  Whether an officer's belief that probable cause existed was reasonable is determined by looking to "the facts known to the police" at the time of arrest. *See, e.g., Zalaski v. City of Hartford*, 723 F.3d 382, 393 (2d Cir. 2013). "[I]n situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity." *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002).

Although qualified immunity claims "should be decided as early as possible in a case," it "is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed." *Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013); *see also McKenna v. Wright*, 386 F.3d 432, 435-36 (2d Cir. 2004) ("[U]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted.").  "[T]he defense of qualified immunity [generally] cannot support the grant of a Rule 12(b)(6) motion . . . [unless] 'the facts supporting the defense appear on the

face of the complaint.'" *Hyman v. Abrams*, 630 F. App'x 40, 41–42 (2d Cir. 2015) (citations omitted).

The Court finds the motion to dismiss Defendants Chen and Aquino on qualified immunity grounds is premature. *Rivera v. Fischer*, 655 F. Supp. 2d 235, 239-40 (W.D.N.Y. 2009) ("[T]he allegations of the complaint do not demonstrate as a matter of law that Conway is entitled to qualified immunity from suit. Depending on what evidence is adduced through discovery, dismissal of plaintiff's claims against Conway may be warranted on a properly supported motion for summary judgment, but at this point, dismissal on this basis as to Conway is premature.").

Taking the amended complaint's allegations that Defendants Chen and Aquino were aware that there were more than 20 Domestic Incident Reports filed by Plaintiff *and* Defendant Sanders against one another, such allegations preclude a finding of arguable probable cause on the officers' behalf. *See Iosilevich*, 2024 WL 4362510, at *4 (rejecting qualified immunity argument in a Rule 12(b)(6) motion where the "allegations plausibly suggest that [the defendant] was aware that [plaintiff's ex-wife] had previously filed at least one complaint against plaintiff that had been investigated but not substantiated."); *see also McGee v. Doe*, 568 F. App'x 32, 38 (2d Cir. 2014) (summary order) (reversing dismissal on the basis of qualified immunity where putative victim's "statement to the police was offered" at the direction of a co-defendant with whom police officers knew plaintiff to have a "private dispute").

Accordingly, the undersigned respectfully recommends that the Court deny City Defendants' motion to dismiss Plaintiff's January 8, 2021 false arrest claim, without prejudice for City Defendants to renew on a motion for summary judgment.

### c)    June 11, 2021 Arrest

Plaintiff was arrested on June 11, 2021 for allegedly violating a temporary order of protection by sending Defendant Sanders a text message.  *See* Dkt. No. 27 ¶¶ 87-94.  Plaintiff argues that the order of protection prohibited only threatening or harassing behavior, not all communications.  *See id.* ¶¶ 87-97.

The fact that the temporary order of protection may not have prohibited Plaintiff from *all* communications with Defendant Sanders is of no moment because Plaintiff admits that he was required to refrain from assaulting, harassing, menacing, intimidating, or threatening Defendant Sanders.  *Id.* ¶¶ 88-89.  And regardless of Plaintiff's argument that he was "simply engaging in a back-and-forth conversation with Defendant Sanders," Defendant Cheng could reasonably construe the vile content of Plaintiff's text messages—questioning why Defendant Sanders failed to abort their child, calling Defendant a "hoodrat," and making a disparaging comment about welfare recipients—as in defiance of the order of protection.  *See United States v. Esters*, No. 21-CR-398 (EK), 2022 WL 16715891, at *4 (E.D.N.Y. Nov. 4, 2022) ("Generally speaking, probable cause is a low bar, requiring only a 'fair probability' that a crime has been or is being committed; it does not mean more likely than not." (citation omitted)); *see also Mack v. City of New York*, No. 12-CV-675 (ERK) (JMA), 2013 WL 527560, at *3 (E.D.N.Y. Feb. 11, 2013) (holding that it was beside the point whether an order of protection prohibited plaintiff from communicating with his estranged wife where the complaint described text messages that she described as "very disturbing" and caused her worry).

For these reasons, the allegations in the amended complaint demonstrate that Defendant Cheng had probable cause to arrest Plaintiff on June 11, 2021.  Therefore, the undersigned respectfully recommends that the Court grant City Defendants' motion to dismiss Plaintiff's false June 11, 2021 false arrest claim.

### d)    February 1, 2022 Arrest

Plaintiff was arrested for allegedly violating a limited temporary order of protection by sending Defendant Sanders text messages containing "curse words" on November 3, 2021 and January 24, 2022, respectively.  *See* Dkt. No. 27 ¶¶ 107-08, 111, 115-16, 119-20, 127.  Plaintiff claims that Defendant Sanders "did not like or appreciate" the text messages.  *Id.* ¶ 119. Plaintiff alleges that Defendant Arty reviewed the text messages and the temporary protective order prior to arresting him.  *See id.* ¶¶ 107-08, 111, 116, 120.

Based on the information available to Defendant Arty at the time, there was probable cause for Plaintiff's arrest.  While Plaintiff again alleges that the text messages were part of back-and-forth communications, he also admits that Defendant Arty reviewed the text messages and determined that they constituted harassment, menacing, or threatening conduct in violation of the temporary order of protection.  "It is not a court's job to second guess the arresting officer's assessment of the facts on the ground."  *Kanderskaya v. City of New York*, 11 F. Supp. 3d 431, 438 (S.D.N.Y. 2014), *aff'd*, 590 F. App'x 112 (2d Cir. 2015).   To the extent there is doubt about the reasonableness of such an assessment, the complaint must articulate those doubts to survive dismissal.  *See Liang*, 2013 WL 5366394, at *6.

Per the amended complaint, Plaintiff "used colorful language better known as curse words" in his text messages to Defendant Sanders.  *Id.* ¶¶ 119, 124.  While Plaintiff has a different view of the messages, the amended complaint does not allege any facts to demonstrate that Defendant Arty's view was unreasonable.  Defendant Arty very well could have read the messages, which Plaintiff concedes contained curse words, and determined that the totality of the circumstances established a "fair probability" that the words constituted harassment, menacing, or threatening conduct in violation of the temporary order of protection.  *See Esters¸* 2022 WL 16175891 at *4.

Accordingly, the undersigned respectfully recommends that the Court grant City Defendants' motion to dismiss Plaintiff's February 1, 2022 false arrest claim.

### e) June 9, 2022 Arrest

Plaintiff was arrested for allegedly violating a Full Order of Protection dated February 2, 2022, requiring him to "stay away" from and "not communicate" with Defendant Sanders, except "subject to Family Court orders Re: Custody and Visitation." *See* Dkt. No. 27 ¶¶ 131, 133. Plaintiff contends his text message regarding NAJ's picture day was incidental communication permitted under the family court visitation order dated February 4, 2022. *Id.* ¶ 133. Plaintiff alleges that Defendant Mays ignored the terms of the family court order, which explicitly authorized "incidental" communication with Defendant Sanders to facilitate visitation with NAJ. *Id.* ¶¶ 132, 136-38.

Plaintiff's amended complaint, however, belies Plaintiff's argument. In the amended complaint, Plaintiff asserts that there was an order of protection that precluded communication with Defendant Sanders (Dkt. No. 27 ¶ 131), notwithstanding a supplemental order that allowed incidental communications (*Id.* ¶ 132). Plaintiff appears to concede this point, as he states, in his opposition to City Defendants' motion, that "[i]t may have been legally permissible for Defendant Mays to arrest [Plaintiff] for communicating by text with Defendant Sanders on [May 31, 2022]. Indeed, the [February 2, 2022] Order of Protection ordered [Plaintiff] not to communicate with Defendant Sanders." Dkt. No. 70 at 15.

The amended complaint also asserts that Defendant Sanders reported to the NYPD that Plaintiff texted a photo of Plaintiff "sticking up [his] middle finger at [Defendant Sanders]." Dkt. No. ¶¶ 134, 136. While Plaintiff claims he did not text Defendant Sanders such a photo, such an allegation does not change the fact that his own amended complaint asserts that Defendant Sanders

reported the existence of the photo to the NYPD. *See id.* An "an officer is not required to eliminate every possible line of impeachment that might apply to a victim complainant." *Koester v. Lanfranchi*, 288 F. App'x 764, 766-67 (2d Cir. 2008); *see also Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) (observing that arresting officers are "neither required nor allowed to sit as prosecutor, judge or jury"). "This principle applies even when a police officer is presented with different stories from an alleged assault victim and the accused assailant." *Koester*, 288 F. App'x at 766-67 (citing *Curley*, 268 F.3d at 70 (holding that police do not have to disprove accused's claim of innocence to rely on victim's account as probable cause for arrest).

The Court can also incorporate the actual text message at issue by reference, since Plaintiff explicitly discusses the text in the amended complaint and since Plaintiff appends the text message to his own motion for summary judgment at Dkt. No. 68-30, *see Strock*, 982 F.3d at 63. Incorporating this text message bolsters the probable cause for Plaintiff's arrest on June 9, 2022. The text message exchange clearly illustrates an image of Plaintiff's purported hand giving the middle finger to Defendant Sanders in response to her request to schedule NAJ's return. *See* Dkt. No. 68-30. Such a vulgar exchange quite clearly serves no purpose in facilitating contact or visitation with Defendant Sanders.

Accordingly, the undersigned respectfully recommends that the Court grant City Defendants' motion to dismiss Plaintiff's June 9, 2022 false arrest claim.

### f)    September 26, 2022 Arrest

Plaintiff was arrested after attempting to pick up NAJ from school, which Defendant Sanders claimed violated a visitation order issued on March 2, 2022. *See* Dkt. No. 27 ¶ 151, 198. Plaintiff alleges his actions complied with the visitation order and that he was listed as an authorized person on NAJ's school pickup card. *Id.* ¶ 153.

Plaintiff contends that Defendant Noel, the school supervisor, and school safety agents blocked his attempt to leave with NAJ, despite the visitation order and his authorization on the pickup card. *Id.* ¶ 157. He further alleges that Defendant Sanders falsely informed officers that she had sole legal custody of NAJ, which Plaintiff asserts was untrue. *Id.* ¶¶ 171-72. Plaintiff alleges that the responding officers reviewed the March 2, 2022 visitation order to confirm its terms. *Id.* ¶ 176. Based on this review, the officers concluded Plaintiff's attempt to pick up NAJ violated the terms of the order. *Id.* ¶ 193.

Significantly, Plaintiff claims that "Defendant Sanders had an active stay away order of protection which required Defendant Sanders to stay away from any location Mr. Jeanty was present." *Id.* ¶ 165. Plaintiff alleges that "Defendants Serrano, Phillips, Willacy, Souffrant, Lai, (SSA) M. White, McCain, Roman, Aponte, Mercado and Noel were aware of a valid temporary stay away order of protection in favor of [Plaintiff]." *Id.* ¶ 166.

Assuming these facts to be true, which the Court is required to do at this stage in the litigation, there are doubts as to whether the NYPD Officers should have taken any steps to address the stay away order that Plaintiff purportedly had in place *against* Defendant Sanders. The officers involved in Plaintiff's arrest on September 26, 2022 might therefore have legitimately questioned Defendant Sanders's veracity given the alleged stay away order against her. *Cf. Glassman v. City of New York*, No. 10-CV-2468 (SHS), 2013 WL 31952, at *6 (S.D.N.Y. Jan. 3, 2013), *aff'd*, 557 F. App'x 97 (2d Cir. 2014) ("None of the inferences and innuendo Glassman relies on would have given a reasonable officer cause to doubt [the complaining witness's] veracity.") Given the totality of the facts known to the arresting officers, and given the current procedural posture, the Court cannot determine that probable cause existed for the September 26, 2022 arrest.

41

Accordingly, this undersigned respectfully recommends that the Court deny City Defendants' motion to dismiss Plaintiff's September 26, 2022 false arrest claim, without prejudice for City Defendants to renew on a motion for summary judgment.

### g)    December 10, 2022 Arrest

Plaintiff alleges that he was arrested on December 10, 2022 for violating the "Full Order of Protection," dated September 27, 2022, which required him "to stay away from and to not communicate with, harass, menace, intimidate or threaten Defendant Sanders and NAJ" except as permitted by subsequent custody or visitation orders. *See* Dkt. No. 27 ¶¶ 217-18, 226-27. The February 4, 2022 family court order explicitly allowed Plaintiff to have incidental contact with Defendant Sanders to facilitate visitation with NAJ. *See id.* ¶ 226. Thus, probable cause could only exist if the officers reasonably believed that Plaintiff's actions—sending texts about NAJ's coat and being present to pick her up—violated the protection order. *See Weyant*, 101 F.3d at 852 (probable cause exists when officers have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime").

Responding NYPD officers initially reviewed both the Full Order of Protection and visitation order and determined that Plaintiff had not violated the protective order. *See* Dkt. No. 27 ¶¶ 225-28. Plaintiff alleges that officers later arrested him after Defendant Sanders insisted the family court order was invalid or expired. *See id.* ¶¶ 229-30. Plaintiff contends that the officers failed to reconcile the conflicting orders and omitted the family court order from their reports, despite its direct relevance to his alleged violation. *See id.* ¶¶ 238-39. "Courts regularly decline to make probable cause findings at the motion to dismiss stage, especially in the face of incomplete

or conflicting allegations." *RDK NY Inc. v. City of New York*, No. 21-CV-1529 (EK) (JAM), 2024 WL 4333704, at *6 (E.D.N.Y. Sept. 28, 2024).

Furthermore, Plaintiff alleges that Defendant Sanders frequently made false or exaggerated complaints against him. While officers can rely on a complainant's statements, they must investigate further when the complainant's credibility is in doubt. *See Curley*, 268 F.3d at 69-70; *Nash*, 2019 WL 1367159, at *5. The officers' reliance on Defendant Sanders's insistence that the family court order was invalid, without verifying her claims, undermines probable cause. *See Fabrikant*, 691 F.3d at 216; *Bullard*, 240 F. Supp. 2d at 298; *Allen*, 2020 WL 4587752, at *11; *Sherman*, 2019 WL 2164081, at *8-9.

Accepting Plaintiff's allegations as true, the officers lacked probable cause to arrest him for violating the Full Order of Protection. Plaintiff's communications appear consistent with the Family Court visitation order's exception for incidental contact, and the officers failed to reconcile the conflicting orders. Moreover, City Defendants' reliance on Defendant Sanders's allegations without adequate investigation undermines the reasonableness of the arrest.

Accordingly, the undersigned respectfully recommends that the Court deny City Defendants' motion to dismiss Plaintiff's December 10, 2022 false arrest claim, without prejudice for City Defendants to renew on a motion for summary judgment.

### 2.    Malicious Prosecution

Plaintiff's second cause of action asserts malicious prosecution claims for each of Plaintiff's six arrests. *See* Dkt. No. 27 ¶¶ 297-310. City Defendants argue that Plaintiff has failed to state a claim for malicious prosecution because there was probable cause to prosecute him, and the amended complaint fails to allege that City Defendants acted with actual malice. *See* Dkt. No. 54 at 27-29.

To state a Section 1983 claim for malicious prosecution, the plaintiff must allege that: "(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice." *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991); *see also Dukes v. City of New York*, 879 F. Supp. 335, 341 (S.D.N.Y. 1995) (same). Although Section 1983 provides the federal claim, the elements of the underlying malicious prosecution tort are borrowed from state law. *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 162 (2d Cir. 2013) ("A § 1983 claim for malicious prosecution looks to the relevant state common law.").

A necessary element of a malicious prosecution claim is that the subject criminal proceeding "was instituted with actual malice." *Posr*, 944 F.2d at 100. "Actual malice requires pleading facts that show the defendant 'commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *TADCO Const. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp. 2d 253, 271 (E.D.N.Y. 2010) (citation and quotation marks omitted). "[M]alice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996), *as amended* (May 21, 1996) (internal quotation marks omitted). There must be a showing of some deliberate act punctuated with awareness of conscious falsity to establish malice." *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002).

Here, the amended complaint contains only conclusory allegations of City Defendants' purported malice. Specifically, the amended complaint alleges that "[t]he facts will demonstrate

that all named Defendants callously, purposely, intentionally and knowingly violated [Plaintiff's] rights and did so with malice." Dkt. No. 27 ¶ 4. The amended complaint does not allege how City Defendants acted maliciously, nor does it provide any specific facts to indicate that City Defendants acted for improper reasons. *See generally* Dkt. No. 24. "Conclusory allegations of malice, with no factual basis or grounds to infer maliciousness, are insufficient to establish a malicious prosecution claim." *Haigler v. Fischer*, No. 17-CV-574 (RJA) (HKS), 2023 WL 8114838, at *12 (W.D.N.Y. May 2, 2023), *report and recommendation adopted*, 2023 WL 8113498 (W.D.N.Y. Nov. 22, 2023); *see also Dettelis v. Zimmerman*, No. 17-CV-407 (FPG), 2017 WL 5891327, at *3 (W.D.N.Y. Nov. 29, 2017) (dismissing malicious prosecution claim where complaint was "rife with boilerplate references to 'malice,'" but "devoid of factual allegations indicating that Defendants acted for improper reasons"); *McClenic v. Shmettan*, No. 15-CV-705 (SJF) (SIL), 2016 WL 3920219, at *8 (E.D.N.Y. July 15, 2016) (dismissing the amended complaint because it "inadequately alleges actual malice, and Plaintiff's malicious prosecution claim should therefore be dismissed on those grounds alone.").[5]

---

[5] "The existence of probable cause to commence a proceeding is a complete defense to a claim of malicious prosecution." *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 392 (S.D.N.Y. 2016) (citation omitted). "The standard for probable cause for malicious prosecution is slightly higher than the probable cause standard for false arrest cases." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). In a malicious prosecution case, probable cause exists if "facts and circumstances would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)); *see Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (probable cause under New York law is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of" (citations omitted)). "A finding of probable cause supporting an arrest defeats a malicious prosecution claim unless plaintiff can demonstrate that at some point subsequent to the arrest, additional facts came to light that negated probable cause." *Dukes*, 879 F. Supp. at 342; *see Landon v. Cnty. of Orange*, No. 08-CV-8048 (CS) (LMS), 2009 WL 2191335, at *8 (S.D.N.Y. July 23, 2009) (explaining that a plaintiff "must plead facts sufficient to establish a lack of probable cause" at the initiation or continuation of the criminal proceeding to state claim for malicious prosecution). Here, at minimum, the facts alleged in the amended complaint establish that Plaintiff's arrests on June 11, 2021, February 1, 2022, and June 9, 2022 are supported by probable cause determinations. For those arrests, Plaintiff sets forth no facts to suggest that probable cause dissipated between any of the times he was arrested and the time his prosecutions were initiated. *See Landon*, 2009 WL 2191335, at *8 (holding plaintiff failed to state malicious prosecution

Accordingly, the undersigned respectfully recommends that the Court grant City Defendants' motion to dismiss Plaintiff's second cause of action for malicious prosecution.

### 3.    Excessive Force/Battery

Plaintiff's third cause of action alleges that City Defendants used excessive force during his September 26, 2022 arrest. *See* Dkt. No. 27 ¶¶ 311-19.

The Fourth Amendment prohibits the use of force that is "objectively unreasonable" in the "totality of the circumstances faced by the officer on the scene." *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (citation omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* "Like all excessive force claims, the pivotal question is whether the officer[s'] behavior was objectively unreasonable in light of the circumstances." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 519 (S.D.N.Y. 2013) (citation omitted).

"A '*de minimis* use of force will rarely suffice to state a Constitutional claim.'" *Feaster v. City of Middletown*, No. 16-CV-734 (LMS), 2016 WL 10570984, at *4 (S.D.N.Y. Nov. 28, 2016) (citing, *inter alia*, *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)). Moreover, "[c]ourts in

---

claim where complaint failed to allege facts to establish that probable cause dissipated after arrest); *see also Lowth*, 82 F.3d at 571 (explaining that probable cause dissipates where "the groundless nature of the charges [are] made apparent by the discovery of some intervening fact").

this Circuit regularly hold that a plaintiff must have sustained some injury to maintain a claim of excessive force." *Pesola v. City of New York*, 15-CV-1917 (PKC)(SN), 2016 WL 1267797, at *7 (S.D.N.Y. Mar. 30, 2016) (citing cases). "That injury, however, need not be severe." *Id.* (citing cases).

Here, Plaintiff contends that City Defendants "used unreasonable and excessive force and committed battery" during his September 26, 2022 arrest by "grabbing, yanking, and pinning Plaintiff to a chair and wall, by forcibly grabbing [Plaintiff's] limbs and body and forcibly pulling him away from NAJ, and by possessing their guns and tasers in close proximity to [Plaintiff]." Dkt. No. 27 ¶ 313.

Even accepting these allegations as true, Plaintiff fails to allege anything beyond a *de minimis* use of force, which is insufficient for an excessive force claim. *Feaster*, 2016 WL 10570984, at *4 (granting motion to dismiss excessive force claim where the plaintiff alleged that the officers, *inter alia*, "grabbed plaintiff and yanked her out of the vehicle," and "grabbed plaintiff with both hands"); *Marom v. City of New York*, 15-CV-2017 (PKC), 2016 WL 916424, at *7 (S.D.N.Y. Mar. 7, 2016) (dismissing claim where "[t]he most severe of [plaintiff's] excessive force allegations are that officers 'grabbed [plaintiff] by her arms, pulled her by her arms, and threw her onto the ground,' . . . and that officers dragged her by her hair and pulled her up onto her feet"); *Acosta v. City of New York*, No. 11-CV-856 (KBF), 2012 WL 1506954, at *10 (S.D.N.Y. Apr. 26, 2012) (dismissing excessive force claim where plaintiff alleged that police officer "pushed his wrist into his pocket, punched him in the chest, threw him to the ground face first, forcibly handcuffed his left arm, and attempted to manipulate his right arm into handcuffs as well"); *Wims v. New York City Police Dept.*, No. 10-CV-6128 (PKC), 2011 WL 2946369, at *4-*5 (S.D.N.Y. July 20, 2011) (granting motion to dismiss excessive force claim granted where the plaintiff

claimed that officers physically brutalized him and threw him face first on to the ground; level of force was deemed *de minimis* because, among other things, the plaintiff identified no specific or identifiable injury as a result of force)).

Indeed, the *de minimis* nature of the alleged force here is underscored by Plaintiff's failure to plead a resulting specific or identifiable injury. *See Lindner v. Newell*, No. 11-CV-8365, 2013 WL 12617686, at *8 (S.D.N.Y. Mar. 26, 2013) (Nathan, J.) (dismissing the plaintiff's excessive force allegations as they "do not amount to either serious force or a serious injury"); *Mittelman v. Cnty. of Rockland*, No. 07-CV-6382 (CM) (LMS), 2013 WL 1248623, at *13 (S.D.N.Y. Mar. 26, 2013) (dismissing excessive force claim where plaintiff failed to allege a resulting injury); *Wims*, 2011 WL 2946369, at *4 ("It is clear that some type of injury is required to prevail on a § 1983 excessive force claim.") (quoting *Castro v.. County of Nassau*, 739 F.Supp.2d 153, 177 n. 16 (E.D.N.Y. 2010)).

Additionally, City Defendants' possession of guns and tasers near Plaintiff does not constitute excessive force. *See Morvillo v. County of Suffolk*, No. 22-CV-3775 (ARR) (ARL), 2024 WL 5186729, at *5 (E.D.N.Y. Dec. 20, 2024) ("[T]he vast majority of cases within the Second Circuit" conclude that 'merely drawing weapons' in the course of an arrest does not constitute excessive force as a matter of law.") (citations omitted); *Cabral v. City of New York*, No. 12-CV-4659 (LGS), 2014 WL 4636433, at *11 (S.D.N.Y. Sept. 17, 2014) ("[The defendant's] approach with his gun drawn does not constitute excessive force as a matter of law."); *Mittelman*, 2013 WL 1248623, at *13 ("Likewise insufficient is Plaintiff's assertion that the officers pointed guns at him. A threat of force does not constitute excessive force.").

Moreover, Plaintiff's allegedly tight handcuffing claim fails to state a cause of action. *See* Dkt. No. 27 ¶ 314. "The question" in assessing whether a police officer has used excessive force

in handcuffing a plaintiff is "whether an officer reasonably should have known during handcuffing that his use of force was excessive." *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019). "A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both." *Id.* "In analyzing excessive force claims arising out of the use of handcuffs, courts in this circuit frequently consider (1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists." *Gonzalez v. Hirschman*, No. 15-CV-810 (GHW), 2016 WL 354913, at *4 (S.D.N.Y. Jan. 28, 2016) (internal quotation marks omitted). "It is well established in this Circuit that claims of excessive force are not established by allegations that overly tight handcuffs caused minor, temporary injuries." *Sullivan v. City of New York*, No. 17-CV-3779 (KPF), 2018 WL 3368706, at *10 (S.D.N.Y. July 10, 2018) (internal quotation marks and alterations omitted). At the same time, "[a] court's reasonableness analysis is not limited to a factual checklist; it must instead be guided by a 'careful balanc[e]' between the 'nature and quality of the intrusion' and the 'countervailing government[al] interests at stake' under the circumstances." *Cugini*, 941 F.3d at 613 (quoting *Graham*, 490 U.S. at 396)).

Measured against these standards, Plaintiff does not allege any of the elements necessary to sustain a handcuffing claim for excessive force. Plaintiff instead merely pleads that City Defendants merely put him in handcuffs even though he was innocent. *See* Dkt. No. 27 ¶ 314. But simply placing someone in handcuffs who might be innocent does not constitute excessive force. *See Pierre v. City of New York*, No. 12-CV-9462 (LAK) (GWG), 2014 WL 56923, at *9 (S.D.N.Y. Jan. 7, 2014) (dismissing excessive force claim where plaintiff did not allege that arresting officers "used any significant force whatsoever" when they handcuffed him during his

49

arrest); *see also Livigni v. Ortega*, No. 15-CV-9454 (CM), 2016 WL 6143351, at *4 (S.D.N.Y. Oct. 19, 2016) (dismissing excessive force claim where the plaintiff merely "allege[d] that his handcuffs were unreasonably tight, and that as a result he suffered a loss of circulation and that his wrists are chronically debilitated" but "d[id] not provide any more information about the extent of his alleged injuries, nor d[id] he allege that [the] [d]efendants ignored a request to loosen the handcuffs" (internal quotation marks omitted)).  And Plaintiff fails to allege any physical injury stemming from the purportedly tight handcuffs.  *See Dunkelberger v. Dunkelberger*, No. 14-CV-3877 (KMK), 2015 WL 5730605, at *14 (S.D.N.Y. Sept. 30, 2015) ("Here, although Plaintiffs plead that Richard complained to the troopers that the handcuffs were too tight and were hurting him, and that the troopers did not loosen them, [] there is no allegation that Richard suffered any injury as a result.  Therefore, Plaintiffs fail to state a claim for excessive force based on the handcuffing of Richard.").

Accordingly, the undersigned respectfully recommends that the Court grant City Defendants' motion to dismiss Plaintiff's third cause of action for excessive force and battery.

### 4.      Failure to Intervene

Plaintiffs fourth cause of action alleges that City Defendants failed to intervene "to prevent the unlawful arrest, use of excessive force, battery[,] and malicious prosecution of Mr. Jeanty or against Mr. Jeanty."  Dkt. No. 27 ¶ 321.  City Defendants argue that Plaintiff's failure to intervene claim must be dismissed because the amended complaint does not allege an underlying violation of Plaintiff's constitutional rights.  *See* Dkt. No. 54 at 37-38.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Ekukpe v. Santiago*, 823 F. App'x 25, 32 (2d Cir. 2020)

(summary order) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  "An officer who fails to intercede in the use of excessive force or another constitutional violation is liable for the preventable harm caused by the actions of other officers."  *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (citation omitted).  A failure to intervene claim "is contingent upon the disposition of the primary claims underlying the failure to intervene claim."  *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012); *see also Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 599 (S.D.N.Y. 2013) ("Failure to intervene claims are contingent upon the disposition of the primary claims underlying the failure to intervene claim." (internal quotation marks omitted)).

Here, the Court agrees with City Defendants that insofar as Plaintiff has failed to sufficiently allege an underlying violation of his constitutional rights, Plaintiff has also failed to sufficiently allege a failure-to-intervene claim.  *See Gong v. Sarnoff*, No. 23-CV-00343 (LJL), 2024 WL 3638335, at *10 (S.D.N.Y. Aug. 1, 2024) ("Because Plaintiff has not alleged any violation of his constitutional rights, he thus does not allege a claim for failure to intervene."); *Coleman v. City of New York*, No. 07-CV01051 (CM), 2010 WL 571986, at *1 (S.D.N.Y. Feb. 2, 2010) (dismissing failure to intervene claims against police officers where no underlying constitutional violation was alleged).

But because the Court recommends denying City Defendants' motion to dismiss Plaintiff's January 8, 2021 false arrest claim, September 26, 2022 false arrest claim, and December 10, 2022 false arrest claim, a plausible claim exists at the pleading stage for failure to intervene with respect to those three specific arrests.  Thus, the undersigned respectfully recommends that the Court grant City Defendants' motion to dismiss Plaintiff's failure to intervene claims, except with respect to the alleged failure to intervene in Plaintiff's January 8, 2021 arrest; September 26, 2022 arrest; and

December 10, 2022 arrest; without prejudice for City Defendants to renew on a motion for summary judgment.

### 5.    First Amendment

Plaintiff's eleventh cause of action is for violation of his First Amendment rights to free speech, as against the City of New York, Defendants Aquino, Cheng, Arty, Mays, Ngai, Rodriguez, and M. White, as well as Contratto and Sanders.  Dkt. No. 27 ¶¶ 366-74.   Plaintiff argues that his arrests were retaliatory for him expressing his opinion of Defendant Sanders in text messages, and he asserts resulting injuries, including the chilling of his First Amendment rights.  *Id*.  City Defendants argue that Plaintiff has failed to state a claim for retaliation because his arrests were supported by probable cause.  *See* Dkt. No. 54 at 36.

To prevail on a claim for First Amendment retaliation, a private citizen must prove that: "(1) he has an interest protected by the First Amendment; (2) [the] defendants' actions were motivated or substantially caused by his exercise of that right; and (3) [the] defendants' actions effectively chilled the exercise of his First Amendment right."  *Kuck v. Danaher III*, 600 F.3d 159, 168 (2d Cir. 2010) (quoting *Curley*, 268 F.3d at 73).  It is well settled that the existence of probable cause will defeat a First Amendment claim that is "premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence [him]."  *Fabrikant*, 691 F.3d at 215; *see also Curley*, 268 F.3d at 73 (concluding that a finding of probable cause obviates the need to undertake "an inquiry into the underlying motive for the arrest").  As the Second Circuit explained, "[a]n individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause,' even if that prosecution 'is in reality an unsuccessful attempt to deter or silence criticism of the government.'"  *Fabrikant*, 691 F.3d at 215 (quoting *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992)).

Here, Plaintiff's retaliation claims are precluded for those arrests in which the amended complaint sufficiently demonstrates the existence of probable cause, including Plaintiff's June 11, 2021; February 1, 2022; and June 9, 2022 arrests. *See Gersbacher v. City of New York*, No. 14-CV-7600 (GHW), 2017 WL 4402538, at *14 (S.D.N.Y. Oct. 2, 2017) (dismissing retaliation claims where plaintiff's arrest was supported by probable cause); *Marlin v. City of New York*, No. 15-CV-2235 (CM), 2016 WL 4939371, at *14 (S.D.N.Y. Sept. 7, 2016) (same).

Plaintiff's retaliation claims against certain of the City Defendants, however, appear to stem from their alleged participation in Plaintiff's December 10, 2022 arrest, for which the Court has determined that the amended complaint raises doubts—at this stage in the litigation—as to the existence of probable cause.

But even when liberally construing the allegations in the amended complaint, and giving Plaintiff's claims every favorable inference, the Court still finds that Plaintiff has failed to assert a plausible First Amendment retaliation claim. While Plaintiff alleges that these Defendants arrested him to silence him and prevent him from expressing his views of Defendant Sanders, such conclusory allegations cannot support a retaliation claim. *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("A complaint of retaliation that is wholly conclusory can be dismissed on the pleadings alone."); *Raymond v. City of New York*, 317 F. Supp. 3d 746, 774 (S.D.N.Y. 2018) (holding that conclusory allegations cannot suffice to state a claim for retaliation). Plaintiff has alleged no facts to suggest that the speech in question—his ability to text Defendant Sanders, ostensibly in violation of multiple Court orders—was a protected interest or that it was ultimately actually chilled as a result of City Defendants' actions. Additionally, and as discussed below, Plaintiff's threadbare retaliation allegations as to the City of New York are insufficient for municipal liability to attach under *Monell*.

53

Accordingly, the undersigned respectfully recommends that City Defendants' motion to dismiss Plaintiff's First Amendment claim be granted.

### 6.    Interference with Familial Rights Claim

Plaintiff alleges that City Defendants deprived him of his Fourteenth Amendment rights by interfering with his "fundamental, constitutionally protected liberty interest in the companionship, care, custody, and management of [h]is daughter NAJ." Dkt. No. 27 ¶ 328. Plaintiff claims that during the course of his September 26, 2022 arrest, City Defendants removed NAJ from Plaintiff and prevented him from picking her up from school, thus interfering with his constitutional rights as NAJ's father. *See id.* ¶ 334.

"[T]he Supreme Court [has] recognized a right to intimate association that allows individuals to 'enter into and maintain certain intimate human relationships without undue intrusion by the State.'" *United States v. Thompson*, 896 F.3d 155, 166 (2d Cir. 2018) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)). "The Court identified 'the personal affiliations that exemplify these considerations' as including 'those that attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives.'" *Id.* (quoting *Roberts*, 468 U.S. at 619-20). The Second Circuit "has not determined whether the right to intimate association finds its roots in the First Amendment or in the Due Process Clauses of the Fifth and Fourteenth Amendments." *Id.* at 166 n.12. Even so, it has held that a "claim for infringement of the right to familial association requires conduct so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Gorman v. Rensselaer Cty.*, 910 F.3d 40, 47 (2d Cir. 2018). Further, "a claim under the Due Process Clause for infringement of the right

to familial associations requires the allegation that state action was specifically intended to interfere with the family relationship." *Id.* at 48.

Here, Plaintiff specifically contends that his September 26, 2022 arrest deprived him of his constitutional right to familial association. *See* Dkt. No. 27 ¶¶ 327-35. As the undersigned respectfully recommends that Plaintiff's September 26, 2022 false arrest claim survives, the undersigned further respectfully recommends that the Court grant City Defendants' motion to dismiss Plaintiff's interference with familial associations claim, except with respect to any such claim arising out of the September 26, 2022 arrest—without prejudice for City Defendants to renew on a motion for summary judgment.

### 7.    Substantive Due Process

"To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). "For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)). "[W]here a claim can be characterized as a violation of the Fourth Amendment, it should be analyzed as such, and not as a substantive due process claim." *Sacramento*, 523 U.S. at 842 ("[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

Here, the amended complaint alleges that City Defendants violated Plaintiff's substantive due process rights by engaging in excessive force and battery, forcibly separating him from NAJ, filing false child abuse charges, and falsely arresting him.  Dkt. No. 27 ¶ 338.  As discussed above, the complained-of conduct occurred during City Defendants' seizure of Plaintiff.  As a result, Plaintiff cannot claim a violation of substantive due process.  *See Sacramento*, 523 U.S. at 842; *see also Terranova v. New York*, 144 F. App'x 143, 147 (2d Cir. 2005) (affirming dismissal of substantive due process Fourteenth Amendment claim on the basis that a cause of action was available under the Fourth Amendment).

Additionally, even if Plaintiff's substantive due process claim was not duplicative of his other claims, it would still be subject to dismissal because the amended complaint alleges that NAJ was temporarily removed from Plaintiff so that his parenting status could be investigated and his arrest effectuated.  *See* Dkt. No. 27 ¶¶ 153, 194.  This type of temporary removal does not rise to the level of a substantive due process violation.  *See Nicholson v. Scoppetta*, 344 F.3d 154, 172 (2d Cir. 2003) ("[B]rief removals generally do not rise to the level of a substantive due process violation, at least where the purpose of the removal is to keep the child safe during investigation."); *Mulqueen v. Herkimer Cnty. Child Protective Servs.*, No. 22-CV-1301 (TJM) (ATB), 2023 WL 4931679, at *9 (N.D.N.Y. Aug. 2, 2023) (explaining that "temporary deprivations do 'not result in the parents' wholesale relinquishment of their right to rear their children,' [and] so they are not constitutionally outrageous or conscience-shocking" (citation omitted)), r*eport and recommendation adopted*, 2024 WL 756833 (N.D.N.Y. Feb. 23, 2024).

Accordingly, the undersigned respectfully recommends that the Court grant City Defendants' motion to dismiss Plaintiff's substantive due process claim.

### 8.    Municipal Liability

Plaintiff also seeks to hold the City liable for the alleged constitutional violations under *Monell*. *See generally* Dkt. No. 1.

"[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted). A plaintiff may establish the existence of an official policy or custom by showing "the constitutional violation was caused by: '(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with municipal employees.'" *Nelson v. City of New York*, No. 18-CV-4636 (PAE), 2019 WL 3779420, at *15 (S.D.N.Y. Aug. 9, 2019) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

A plaintiff may plead a *Monell* claim based on a failure to train only by pleading that a City's "failure to train its subordinates . . . is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). To show deliberate indifference, "[p]laintiffs are required to submit evidence that defendants knew to a moral certainty that the City would confront a given situation; the situation presented the City with a difficult choice or there was a

history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of plaintiffs' rights." *Id.* (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)); *see also Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) ("While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery . . . this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim.").

Applying these standards, Plaintiff has failed to plausibly allege municipal liability. "First, to the extent that [Plaintiff] fails to allege an underlying constitutional violation, his . . . *Monell* claims also fail." *Nigro v. City of New York*, No. 19-CV-2369 (JMF), 2020 WL 5503539, at *5 (S.D.N.Y. Sept. 11, 2020) (citing *Lanning*, 908 F.3d at 30). Because the Court concluded above that some of Plaintiff's Section 1983 claims fail, it follows that there can be no municipal liability with respect to these claims. *See Homere v. Inc. Vill. of Hempstead*, 322 F. Supp. 3d 353, 372 (E.D.N.Y. 2018) (recommending dismissal of Plaintiff's municipal liability claims where amended complaint fails to plausibly allege a deprivation of a constitutional right).

Second, Plaintiff's allegations of a failure to train or supervise officers are entirely conclusory. The amended complaint only alleges that the City "did negligently hire, retain, train, and/or supervise Aquino, Chen, Cheng, Serrano, Willacy, Phillips, Souffrant, Lai, Arty, Mays, (SSA) M. White, Mercado, Aponte, McCain, Roman, Ngai, and Rodriguez, who were unfit, and whom they knew to be unfit, for the performance of police duties on the dates of [Plaintiff's] arrest." Dkt. No. 27 ¶ 361. It further alleged that the City had obligations to ensure that NYPD officers were trained in when and how to arrest parents while children are present, and how to handle domestic disputes at school, and that these defendants would have acted differently had they been properly trained. *Id.* ¶¶ 361-63.

Plaintiff does not, however, plead any facts that suggest, even circumstantially, that the alleged failure to train or supervise amounted to deliberate indifference to the constitutional rights of people who may find themselves in Plaintiff's situation. *See Santos v. New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) (dismissing municipal liability claims where plaintiff failed to allege that failure to train amounted to deliberate indifference). The absence of any concrete allegation as to a specific training deficiency also precludes Plaintiff from proceeding on a failure to train theory. *See Nelson*, 2019 WL 3779420, at *16 (dismissing *Monell* claim based on alleged failure to train where plaintiff failed to identify a specific training deficiency). While the amended complaint references, *inter alia*, the First, Fourth, and Fourteenth Amendments of the Constitution, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. For the reasons stated above—*i.e.*, the absence of specific factual support and the ubiquity of bare, speculative assertions in the amended complaint—the Court cannot conclude that Plaintiff has plausibly alleged the deprivation of a constitutional right. For this additional reason, Plaintiff's municipal liability claims fails as a matter of law.

Accordingly, the undersigned respectfully recommends that the Court grant City Defendants' motion to dismiss Plaintiff's *Monell* claims.

### 9. Prosecutorial Immunity

Defendant Contratto is a legal assistant in the Kings County District Attorney's office, whom Plaintiff seeks to hold liable for malicious prosecution under state/common law and § 1983, and for infringing Plaintiff's First Amendment right to free speech because she allegedly executed a sworn criminal court complaint charging Plaintiff in connection with his February 1, 2022 arrest.

*See* Dkt. No. 27 ¶¶ 33, 122, 299, 351, 367.  City Defendants argue that Defendant Contratto is shielded by prosecutorial immunity.  *See* Dkt. No. 54 at 34.

The doctrine of "absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994); *see also Root v. Liston*, 444 F.3d 127, 131 (2d Cir. 2006) (describing absolute immunity as an "extreme protection").

In determining whether an official is entitled to absolute immunity, courts "take a 'functional approach,' examining 'the nature of the function performed, not the identity of the actor who performed it.'" *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 50 U.S. 259, 269 (1993)).  Absolute immunity applies when an official is engaged in "prosecutorial actions that are 'intimately associated with the judicial phase of the criminal process.'" *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  Such "functions include deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas," but not "'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings,'" for which an official is only entitled to qualified immunity.  *Simon*, 727 F.3d at 171-72 (quoting *Buckley*, 509 U.S. at 273).  When it attaches, absolute prosecutorial immunity "extends to those performing functions closely associated with that process," shielding "not only officials performing discretionary acts of a judicial nature, but also individual employees who assist such an official and who act under that official's direction in performing functions closely tied to the judicial process." *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995) (citation omitted); *see also O'Neal v. Morales*, 679 F. App'x

16, 19 (2d Cir. 2017) (affirming grant of absolute immunity to New York City Housing Authority Police Department detective who "investigated what could be seen from the victim's apartment only because the ADA requested that he do so shortly before trial, and only to obtain a specific piece of information relevant to anticipated trial testimony" (emphasis in original)).  The official bears the burden of showing that he is entitled to absolute immunity for the function in question. *Simon*, 727 F.3d at 172.

Here, Plaintiff alleges that Defendant Contratto executed a sworn criminal court complaint charging Plaintiff with various offenses.  *See* Dkt. No. 27 ¶ 122.  Defendant Contratto has shown that she is entitled to absolute prosecutorial immunity because her act of executing a criminal court complaint was undertaken in the course of the prosecutor's role as an advocate for the state.  *See* Dkt. No. 54 at 35.  The fact that Defendant Contratto was allegedly a legal assistant does not obviate such immunity.  *See Malik v. City of New York*, 841 Fed. App'x 281, 284 (2d Cir. 2021) (holding that any non-attorney employee of a district attorney's office who assists a prosecutor in carrying out his or her prosecutorial functions is covered by absolute prosecutorial immunity to the same extent as the prosecutor they are assisting); *Hamilton v. City of New York*, No. 15-CV-4574 (CBA) (SJB,) 2019 WL 1452013, at *13 (E.D.N.Y. Mar. 19, 2019) (extending absolute immunity to an investigator of the district attorney's office who sought to procure false testimony from a witness); *Popal v. Brown*, No. 19-CV-832 (KAM), 2019 WL 11624209, at *6, n. 9 (E.D.N.Y. June 13, 2019) (concluding that a non-attorney employee of a prosecutor's office who undertakes ministerial actions "intimately related to the judicial process at the express direction and control of a prosecutor, enjoys absolute immunity.").

And even if the Court were to find that Defendant Contratto is not absolutely immune from suit, Defendant Contratto would, at minimum, be entitled to qualified immunity as her conduct did

not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1985); *see also Barr v. Abrams*, 641 F. Supp. 547 (S.D.N.Y. 1986), *aff'd*, 810 F.2d 358 (2d Cir. 1987) (finding that investigators on the state Attorney General's staff were protected against damages by qualified immunity).

Accordingly, the undersigned respectfully recommends that the Court grant City Defendants' motion and dismiss Defendant Contratto from the case.

### B.    Plaintiff's State Law Claims

The amended complaint also asserts causes of action for false arrest/false imprisonment, malicious prosecution, battery, and negligent hiring, retention, training, and supervision under New York law.  *See* Dkt. No. 27 ¶¶ 341-47 (seventh cause of action for false arrest and false imprisonment against certain of the City Defendants, CAMBA, Noel, and Sanders), ¶¶ 348-54 (eighth cause of action for malicious prosecution against certain of the City Defendants), ¶¶ 355-59 (ninth cause of action for battery against certain of the City Defendants), ¶¶ 360-65 (negligent hiring, retention, training and supervision claims against Defendants City of New York, Legal Aid Society, and CAMBA).  The amended complaint includes a cause of action for violation of New York City  Administrative Code, Chapter 8 Section 8-803 against certain of the City Defendants, *id.* ¶¶ 375-81, and for *respondeat superior* against Legal Aid Society, *id.* ¶¶ 382-86.

City Defendants argue that Plaintiff's state and common law tort claims should be dismissed because they are time-barred and because Plaintiff failed to file a notice of claim for two of his six arrests.  *See* Dkt. No. 54 at 29-31.

### 1.    Timeliness

Under New York law, a cause of action against a municipal defendant for false arrest, malicious prosecution, and excessive force are subject to a one-year and ninety-day statute of

limitations.  *See* N.Y. Gen. Mun. L. §50-i.  "The provisions of N.Y. Gen. Mun. Law § 50-i apply not only to claims against municipalities, but also to suits against 'officer[s], agent[s], or employee[s] whose conduct caused the injury.'"  *Warner v. Village of Goshen Police Dept.*, 256 F. Supp. 2d 171, 174 (S.D.N.Y. 2003) (quoting *Gonzalez v. City of New York,* Case No. 94-CV-7377 (SHS), 1996 WL 227824, *2 (S.D.N.Y. May 3, 1996)).

"[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). "[A] defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008).

First, as with a § 1983 claim for false arrest, "a false imprisonment claim starts to run when a detainee begins to be held pursuant to legal process."  *Watson v. United States*, 865 F.3d 123, 131 (2d Cir. 2017). "[F]alse imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges."  *Id.* (citation omitted).

In this case, Plaintiff alleges that he was arrested on January 8, 2021, June 11, 2021, February 1, 2022, June 9, 2022, September 26, 2022, and December 10, 2022.  *See generally* Dkt. No. 1.  Although Plaintiff does not explicitly state when he was arraigned for each arrest, Plaintiff states that he was "taken away from his children for periods over 24 hours per arrest."  Dkt. No. 27 ¶ 270.  Liberally construed, Plaintiff's false arrest claims appear to have accrued once he was released from custody—approximately 24 hours after each of the aforementioned arrests.

Plaintiff filed this lawsuit on December 26, 2023.  *See id.*  Thus, any state law claims for false arrest related to Plaintiff's first four arrests (on January 8, 2021, June 11, 2021, February 1,

2022, and June 9, 2022, respectively) fall outside the one-year and ninety-day statute of limitations. As a result, the undersigned respectfully recommends that the Court grant City Defendants' motion to dismiss any state law claims for false arrest arising out of the January 8, 2021, June 11, 2021, February 1, 2022, and June 9, 2022 arrests.

Plaintiff also brings claims for excessive force state law battery. An excessive force claim accrues "when the use of force occurred." *McClanahan v. Kelly*, No. 12-CV-6326 (PGG), 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014). Causes of action for assault and battery accrue immediately upon the occurrence of the tortious act. *Canosa v. Ziff*, No. 18-CV-4115 (PAE), 22019 WL 498865, at *8 (S.D.N.Y. Jan. 28, 2019). Thus, any claims of battery arising out of Plaintiff's first four arrests are also time-barred. The undersigned respectfully recommends that the Court grant City Defendants' motion to dismiss any state law claims for battery arising out of the January 8, 2021, June 11, 2021, February 1, 2022, and June 9, 2022 arrests, respectively.

### 2. Notice of Claim

"Under New York law, in order to bring state law claims against a municipality, a plaintiff must file a Notice of Claim within ninety days after accrual of the claim, describing the nature of each claim in compliance with Section 50–e of the General Municipal Law." *Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 347 (E.D.N.Y. 2013). "This requirement is mandatory in Federal Court and failure to comply results in dismissal of claims." *Id.*; *see Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 404 (S.D.N.Y. 2009) (dismissing claims where the Plaintiff failed to file a timely notice of complaint). New York State notice of claim requirements do not apply to claims brought pursuant to Section 1983. *Eberle*, 985 F. Supp. 2d at 349 (quoting *Fanelli v. City of New York*, 13-CV-1423 (KBF), 2013 WL 6017904, at *5 (S.D.N.Y. Nov. 1, 2013)); *see also Day v. Moscow*, 955 F.2d 807, 814 (2d Cir.1992) (noting that notice of claim provisions are

not applicable to Section 1983 claims brought in federal court).  The failure to timely serve a notice of claim under Section 50-e "ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999).

Here, Plaintiff alleges that he served notices of claim on the City of New York "on or about October 21, 2022 relating to the [September 26, 2022] arrest, [January 4, 2022] relating to the [June 11, 2021] & [January 8, 2021] arrests and on [April 29, 2022] relating to the [February 1, 2022] arrest."  Dkt. No. 27 ¶ 42.  By Plaintiff's own account, he served the notices of claim approximately 25 days after his September 26, 2022 arrest, 207 days after his June 11, 2021 arrest, 361 days after his January 8, 2021 arrest, and 87 days after his February 1, 2022 arrest.  *See id.* Plaintiff does not plead that he filed a notice of claim in connection with his June 9, 2022 or December 10, 2022 arrests.  Thus, Plaintiff did not serve timely notices of claim for his January 8, 2021, June 11, 2021, June 9, 2022, and December 10, 2022 arrests.

Accordingly, the undersigned respectfully recommends that the Court grant City Defendants' motion to dismiss Plaintiff's state law claims relating to his January 8, 2021, June 11, 2021, June 9, 2022 and December 10, 2022 arrests.  *See Davis v. City of New York*, No. 16-CV-4097 (CBA) (LB), 2017 WL 5514198, at *5 (E.D.N.Y. Aug. 24, 2017) (recommending dismissal of plaintiff's state law claims where plaintiff failed to allege the timely filing of a notice of claim), *report and recommendation adopted*, 2017 WL 5514181 (E.D.N.Y. Nov. 16, 2017); *Eberle*, 985 F. Supp. 2d at 348 (dismissing claims where plaintiff failed to plead that he served a notice of claim); *Warner*, 256 F. Supp. 2d at 175 (dismissing pendent state law tort claims for failure to serve notice of claim and noting lack of federal court jurisdiction to permit filing of late notice of claim).

### 3.    Negligent Hiring, Retention, Training, and Supervision

Plaintiff's tenth cause of action seeks to hold the City, the Legal Aid Society, and CAMBA[6] liable for negligently hiring, retaining, training, and supervising the individual employees of the City and Noel.  *See* Dkt. No. 27 ¶¶ 360-65.  As noted *supra*, Plaintiff has voluntarily dismissed all causes of action in the amended complaint against the Legal Aid Society.  *See* Dkt. No. 58.

To prevail on this claim, Plaintiff must allege that "(1) the tort-feasor and the defendant were in an employee-employer relationship, (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations and quotation marks omitted).  "The employee also must not be acting within the scope of his or her employment; [for] in that situation the employer [would] only be liable . . . vicariously under the theory of *respondeat superior*, [and] not for negligent supervision or retention."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129-30 (2d Cir. 2019) (quoting *Gray v. Schenectady City Sch. Dist.*, 86 A.D.3d 771, 927 N.Y.S.2d 442, 446 (3d Dep't 2011)); *see also Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 522 (S.D.N.Y. 2015) ("New York law does not permit a claim for negligent hiring, training, retention[,] or supervision where the defendants act in the scope of their employment.") (collecting cases).

Here, Plaintiff has alleged no facts to support such a claim against the City of New York. Specifically, Plaintiff has failed to allege that the City knew or should have known of its employees' alleged tortious propensities.  *See Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 330 (S.D.N.Y. 2011) (dismissing a claim for negligent supervision where the plaintiffs did not "allege[]

---

[6] The Court addresses this claim against CAMBA below.

any facts demonstrating that [the defendants] knew or should have known of their [employees'] propensity for tortious conduct, prior to the wrongdoing alleged in the Complaint").

Accordingly, the undersigned respectfully recommends that the Court grant the motion to dismiss Plaintiff's negligent hiring, retention, training, and supervision claim.

### 4.    Section 8-803 of the Administrative Code

Plaintiff's twelfth cause of action asserts a claim pursuant to Section 8-803 of the Administrative Code, also known as Local Law 48, against Defendants Aquino, Chen, Cheng, Serrano, Willacy, Phillips, Souffrant, Lai, Arty, Mays, (SSA) M. White, Mercado, Aponte, McCain, Mercado, Roman, Ngai, Enorme, Cherenfant, Maher, and Rodriguez.  *See* Dkt. No. 27 ¶¶ 375-81; *see also* Dkt. No. 54 at 37.

Section 8-803 of the Administrative Code provides a civil right of action for deprivation of civil rights.  N.Y.C. Admin. Code Sec 8-803.  Further, Section 8-807 of the Administrative Code states that "the right against unreasonable search and seizure, including excessive force used in connection with a search or seizure, created, granted or protected by Section 8-802 shall be construed in the same manner as the right against unreasonable search and seizure, including excessive force used in connection with a search or seizure, created, granted or protected by the fourth amendment of the federal constitution."  *Id.*  As discussed above, a finding of probable cause defeats an action for false arrest under New York law and the Fourth Amendment.  *See Gill*, 2024 WL 4858992 at *5; *Figueroa*, 825 F.3d at 99.  New York City Administrative Code Sec 8-803 claims brought against municipalities or their employes are also subject to notice of claim and statute of limitations provisions in General Municipal Law Section 50-k.  *See* N.Y.C. Admin. Code Sec 8-806 ("Notwithstanding any provision to the contrary in section 50-k of the general municipal law or any other provision of law, a person aggrieved must make a claim pursuant to section 8-

67

803 in a civil action within 3 years after the alleged deprivation of a right created, granted or protected by section 8-802 occurred.").

As discussed above, as Plaintiff's arrests on June 11, 2021, February 1, 2022, and June 9, 2022 were supported by probable cause, Plaintiff has failed to state a claim for unlawful search or seizure under the Fourth Amendment or New York State Constitution.  Thus, the undersigned respectfully recommends that Plaintiff's claim for violation of Section 8-803 of the Administrative Code stemming from his June 11, 2021, February 1, 2022, and June 9, 2022 arrests be dismissed on these grounds.

Moreover, because Plaintiff filed this lawsuit on December 26, 2023, *see* Dkt. No. 1, his Section 8-803 claims related to his arrests on January 8, 2021, June 11, 2021, February 1, 2022, and June 9, 2022, respectively, fall outside of the one-year and ninety-day statute of limitations prescribed by General Municipal Law Section 50-i.  Because Plaintiff did not serve timely notices of claim for his January 8, 2021, June 11, 2021, June 9, 2022, and December 10, 2022 arrests, respectively, they are similarly time-barred.  Thus, in light of the above, the undersigned respectfully recommends that Plaintiff's claim for violation of Section 8-803 of the Administrative Code stemming from his January 8, 2021, June 11, 2021, June 9, 2022, and December 10, 2022 arrests be dismissed on these grounds.

As noted above, however, Plaintiff's arrest on September 26, 2022 presents questions of fact as to whether probable cause existed.  Moreover, for this particular claim, City Defendants cannot avail themselves of qualified immunity.  *See* N.Y.C. Admin. Code Sec 8-804 ("It is not a defense to liability pursuant to this chapter that a covered individual has qualified immunity or any other substantially equivalent immunity.").  Thus, because questions of fact pervade Plaintiff's claims of violation of Section 8-803 of the Administrative Code in connection with Plaintiff's

September 26, 2022 arrest, the undersigned respectfully recommends that the Court deny Defendants' motion to dismiss Plaintiff's Section 8-803 of the Administrative Code claims arising out of Plaintiff's arrest on September 26, 2022, without prejudice for City Defendants to renew on a motion for summary judgment.

## V.    **Plaintiff's Cross-Motion for Partial Summary Judgment**

On August 19, 2024, Plaintiff filed an opposition to City Defendants' motion for judgment on the pleadings and cross-moved for partial summary judgment for false arrest/unlawful detention as to Defendants Cheng, Arty, Serrano, Phillips, Willacy, McCain, White and Aponte. *See* Dkt. No. 68; Dkt. No. 68-3 ¶17. Plaintiff attaches a series of criminal court complaints, orders of protection, and other documents to his motion, and claims that the documents establish that there was no probable cause for his arrests. *See* Dkt. No. 68-2; Dkt. No. 68-3 ¶¶ 18-20. The Court concludes that Plaintiff's cross-motion for summary judgment fails for multiple, independent reasons.

First, while the Federal Rules of Civil Procedure permit a party to move for summary judgment "at any time," Fed. R. Civ. P. 56(b), no party should be "unjustly deprived of [its] ability to meet [its] burden of production" at summary judgment. *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989). Instead, the non-moving party is entitled to "an opportunity to discover information that is essential to [its] opposition" to the summary judgment motion. *Id.* (quoting *Anderson*, 477 U.S. at 250 n.5). Accordingly, "courts routinely deny motions for summary judgment as premature when discovery over relevant matters is incomplete." *Toussie v. Allstate Insurance Co.*, 213 F. Supp. 3d 444, 445 (E.D.N.Y. 2016); *see also Kaiser v. Fairfield Properties*, 20-CV-5399 (GRB) (JMW), 2022 WL 17412405, at *8–9 (E.D.N.Y. Feb. 11, 2022) (recommending denial of plaintiff's motion for summary judgment as

premature where no discovery had occurred and defendants had filed a motion to dismiss under Rule 12(b)(6).

Here, Plaintiff's cross-motion for summary judgment is premature because discovery has not yet begun and City Defendants had filed a motion for judgment on the pleadings under Rule 12(c). Accordingly, because City Defendants—the non-moving parties—have not yet had the opportunity to conduct any discovery and because their motion for judgment on the pleadings under Rule 12(c) was pending at the time of the instant summary judgment, the undersigned respectfully recommends that Plaintiff's motion for partial summary judgment should be denied. *See Trebor Sportswear*, 865 F.2d at 511; *see also Toussie*, 213 F. Supp. 3d at 445; *Kaiser*, 2022 WL 17412405, at *8–9.

## VI.    **Defendants CAMBA's and Noel's Motion to Dismiss**

Defendants CAMBA and Noel move to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6). *See* Dkt. No. 64. In total, the amended complaint asserts five counts with respect to CAMBA and Noel: (1) 42 U.S.C. § 1983 vis-à-vis the Fourth and Fourteenth Amendments against both Defendants, *see* Dkt. No. 27 ¶¶ 286-296; (2) 42 U.S.C. § 1983 vis-à-vis Fourteenth Amendment familial rights/interference with intimate association/intentional interference with custodial rights against Ms. Noel exclusively, *see id.* ¶¶ 327-55; (3) 42 U.S.C. § 1983 vis-à-vis substantive due process against Ms. Noel exclusively, *see id.* ¶¶ 336-40; (4) false arrest/false imprisonment at common law against both Defendants, *see id.* ¶¶ 341-47; and (5) negligent hiring/retention/supervision/training against CAMBA exclusively, *id.* ¶¶ 360-65.

For the reasons set forth below, the undersigned respectfully recommends that Defendant CAMBA and Noel's motion be granted and that the claims asserted against them be dismissed.

### A.    **Section 1983 Claims**

Defendants CAMBA and Noel argue that Plaintiff's first, fourth, and sixth causes of action, all of which are brought under Section 1983, should be dismissed because they are private actors, and Plaintiff has not plead an exception to the state-action doctrine. *See* Dkt. No. 64-2. They further argue that even if they were state actors, the amended complaint nonetheless fails to plausibly allege that Plaintiff suffered a constitutional deprivation because there was probable cause for Plaintiff's September 26, 2022 arrest, Plaintiff was only temporarily separated from NAJ while he was detained and arrested, and the amended complaint fails to show any shocking-conscience behavior. *Id.* Lastly, Defendants CAMBA and Noel argue that the amended complaint shows that they are entitled to qualified immunity. *Id.*

### 1.    State Action Doctrine

Defendants CAMBA and Noel first argue that Plaintiff's constitutional claims must be dismissed because the amended complaint fails to sufficiently allege that their conduct constituted state action under 42 U.S.C. § 1983. *Id.* at 13.

It is well established that private conduct, no matter how wrongful, does not give rise to liability under Section 1983 unless it can be "fairly attributable" to the state. *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) ("The fundamental question . . . is whether the private entity's challenged actions are 'fairly attributable' to the state."); *see Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

A private actor may be considered a state actor only if one of the recognized exceptions to the state action doctrine applies, such as if the private entity performed a public function traditionally reserved to the state (the "public function test"), the private entity acted jointly with the state (the "joint action test"), or the private entity was coerced or controlled by the state (the

"compulsion test"). *See Sybalski v. Indep. Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). In analyzing these exceptions, the Court must focus on "the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity." *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 264 (2d Cir. 2014) (quoting *Fabrikant*, 691 F.3d at 207).

Here, Plaintiff alleges that Defendant CAMBA "was and is" a New York corporation and "multi-service agency that provides community-based programming, including infant and maternal health, family support, and youth development programs." Dkt. No. 27 ¶ 36. Plaintiff further alleges that Defendant Noel was "employed by CAMBA." *Id.* ¶ 32. Having affirmatively alleged that Defendants CAMBA and Noel are not state actors, the viability of Plaintiff's constitutional claims turns on whether the amended complaint sufficiently alleges one of the above exceptions. This Court concludes that it does not.

### a)    The Public Function Test

The public function test applies when a private entity assumes powers or performs functions that are traditionally and exclusively reserved to the state. *Grogan*, 768 F.3d at 264; *see Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004) ("State action may be found in situations where an activity that traditionally has been the exclusive, or near exclusive, function of the State has been contracted out to a private entity.").

Here, the amended complaint fails to demonstrate that CAMBA and Noel were performing a public function on September 26, 2022 when Plaintiff was arrested. While the amended complaint alleges that "CAMBA is a multi-service agency that provides community-based programming including infant and maternal health, family support, and youth development

programs," Dkt. No. 27 ¶ 36, such services are not exclusive government functions. *See Gogan*, 768 F.3d at 265 (explaining that public function test "focuses not on whether the activity delegated to the private entity has been regularly performed by governments, but instead on whether the activity historically has been 'an exclusive prerogative of the sovereign'" (citation omitted)). And "[t]he mere fact that CAMBA provides social services to the public is not enough to confer liability under Section 1983." *Rodriguez v. CAMBA (Where You Can) Supportive Hous.*, No. 23-CV-8088 (PKC) (VMS), 2023 WL 8788922, at *3 (E.D.N.Y. Dec. 19, 2023) (dismissing Section 1983 claims against CAMBA on state action grounds); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982) ("That a private entity performs a function which serves the public does not make its acts state action.").

Moreover, while the amended complaint also alleges that "[f]or more than 20 years, CAMBA has provided quality shelter services with the NYC Department of Homeless Services (DHS)," Dkt. No. 27 ¶ 36, courts have routinely held that the mere receipt of public funding or a government contract does not transform private entities into state actors absent a showing that they performed a public function. *See Rodriguez*, 2023 WL 8788922, at *3; *Reaves v. Dep't of Veterans Aff.*, No. 08-CV-1624 (RJD), 2009 WL 35074, at *3 (E.D.N.Y. Jan. 6, 2009), *as corrected* (Jan. 14, 2009) ("[T]he provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors.").

As the amended complaint does not show that CAMBA or Noel performed any function that is traditionally the state's alone, such as policing, running a prison, or conducting elections, Plaintiff has failed to allege a sufficient basis to invoke the public function doctrine. *See Terry v.*

*Adams*, 345 U.S. 461, 468-70 (1953) (state action found where private actor administered election of public officials)

### b)    Joint Action Test

Under the joint action test, a private party may be considered a state actor if it acted jointly with state officials or conspired with them to deprive a plaintiff of constitutional rights.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970).  To meet this standard, a plaintiff must allege that the state and the private actor shared a common goal or plan that resulted in the deprivation of a constitutional right.  *See Betts v. Shearman,* 751 F.3d 78, 85 (2d Cir. 2014) ("A charge of joint action amounts to alleging some agreement between private and public actors to violate plaintiff's constitutional rights.") (quoting *Cunningham v. Southlake Center for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991)).

Here, the amended complaint does not allege that Noel or CAMBA entered into any agreement or formed a conspiracy with state officials.  Although Plaintiff alleges that Defendant Noel "actively participated in the decision-making process employed by the arresting officers," Dkt. No. 27 ¶ 295, the provision of information to a state official—even if that information is false or results in the official taking affirmative action—is insufficient to constitute 'joint action' with state actors for purposes of § 1983."  *Lienau v. Garcia*, No. 12-CV-6572 (ER), 2013 WL 6697834, at *6 (S.D.N.Y. Dec. 19, 2013) (collecting cases).  This is so even where the private actor is alleged to have furnished the government with false information "out of malice."  *See Valez v. City of New York*, No. 08-CV-3875 (DLC), 2008 WL 5329974, at *1, *3 (S.D.N.Y. Dec. 16, 2008) (holding that plaintiff failed to state a claim under § 1983 against his landlords based on allegations that the landlords gave the police false information that plaintiff was planting marijuana in his yard "out of malice and in an effort to get [the plaintiff] ejected from the home he was renting" where plaintiff

failed to "allege facts suggesting that defendants and the police had any meeting of the minds or intent to conspire").

Moreover, merely providing services under a government contract or interacting with governmental entities does not establish the type of coordinated joint activity required to transform private conduct into state action. *See Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 269 (2d Cir. 2014) (holding that private ambulatory service was not a state actor despite receiving a majority of its funding from private sources where there was no evidence that town appointed any organization's board, or had any say in organization's management, personnel, or disciplinary decisions, and contract identified organization as an independent contractor).

Accordingly, the amended complaint fails to sufficiently allege the joint action exception to state action.

### c)    Compulsion test

Under the compulsion test, a private entity's conduct may be deemed state action if the state exercised such coercive power or significant encouragement that the private actor's decisions must be regarded as those of the state. *See Adickes*, 398 U.S. at 170-71.

Here, the amended complaint contains no allegations that the government coerced or compelled Defendants CAMBA and Noel to act as they did. Plaintiff does not allege that any state official directed, pressured, or forced CAMBA or Noel to engage in the specific conduct at issue—namely, attempting to prevent Plaintiff from picking up NAJ from school based on their interpretation of the temporary protective order, an interpretation which was informed by another private citizen, and providing arresting officers with information to support the arrest. Absent factual allegations showing that the government ordered or heavily influenced CAMBA and Noel's actions, neither Noel nor CAMBA's conduct can be attributed to the state under the compulsion

exception to the state action doctrine.  *See Grogan,*, 768 F.3d at 269; *see also Albert v. Carovano*, 851 F.2d 561, 570-571 (2d Cir. 1988) (holding that private college who adopted disciplinary code pursuant to New York state law was not acting as a state actor when it enforced the disciplinary code because state never sought to compel the school's enforcement of rules nor did it ever inquire about such enforcement).

Accordingly, Plaintiff has failed to demonstrate that the compulsion exception to the state action doctrine applies.

### 2.    Deprivation of a Constitutional Right

Next, Defendants argue that even if the amended complaint sufficiently alleged state action, Plaintiff still fails to plead a deprivation of constitutional rights.

### a)    False Arrest

As noted above, the existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest."  *Bernard*, 25 F.3d at 102; *Curley*, 268 F.3d at 70 (citation omitted).  "Courts will dismiss a claim for false arrest if the complaint is devoid of facts showing that the arresting officer could not have reasonably concluded that there was probable cause to make the arrest."  *Liang*, 2013 WL 5366394, at *6.

Here, while the undersigned respectfully recommends that Plaintiff's September 26, 2022 false arrest claim against City Defendants survive motion practice, this claim fails against Defendant Noel and CAMBA.  In sum, there is no allegation in the amended complaint that Defendant Noel or any other CAMBA employee arrested or detained Plaintiff.  *See generally* Dkt. No. 27.  Section 1983 false arrest liability attaches "to one who causes or directs an arrest or imprisonment in New York" only where "the defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active,

officious and undue zeal to the point where the officer is not acting of his own volition." *Carmellino v. Dist. 20 of New York City Dep't of Educ.*, No. 03-CV-5942 (PKC), 2006 WL 2583019, at *61 (S.D.N.Y. Sept. 6, 2006) (quoting *Curley*, 153 F.3d at 5, 13–14); *TADCO Const. Corp.*, 700 F. Supp. 2d at 253, 268–69. "To hold a defendant liable as one who affirmatively instigated or procured an arrest, a plaintiff must show that the defendant or its employees did more than merely provide information to the police." *King v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997); *see also Toure v. Air France*, No. 21-CV-1645 (GRB) (ST), 2022 WL 4079592, at *2 (E.D.N.Y. Sept. 6, 2022) (dismissing false arrest claim against private individual who merely gave police information resulting in plaintiff's arrest). Courts routinely dismiss false arrest claims, brought under § 1983 or New York law, against private citizens who "merely [sought] police assistance or furnish[ed] information to law enforcement authorities who [were] then free to exercise their own judgment as to whether an arrest should be made." *Carmellino*, 2006 WL 2583019, at *61 (citation omitted); *see, e.g.*, *Toure*, 2022 WL 4079592, at *2 (collecting cases).

The amended complaint alleges that Defendant Noel "actively participated in the decision-making process employed by the arresting officers" by providing them with information to make an arrest. *See* Dkt. No. 27 ¶¶ 174-75, 295. As the amended complaint does not allege any facts to suggest that arresting officers decided to arrest Plaintiff based on anything other than their own volition, Plaintiff's false arrest claim fails. *See Carmellino*, 2006 WL 2583019, at *61. Accordingly, the undersigned respectfully recommends that Plaintiff's Section 1983 false arrest claim is dismissed with respect to Defendant Noel and CAMBA.

### b)    Interference with Familial Rights

As noted above, a "claim for infringement of the right to familial association requires conduct so shocking, arbitrary, and egregious that the Due Process Clause would not countenance

it even were it accompanied by full procedural protection." *Gorman*, 910 F.3d at 47. It also "requires the allegation that state action was specifically intended to interfere with the family relationship." *Id.* at 48.

Here, the amended complaint fails to state an interference with familial rights claim against Defendants CAMBA and Noel because there are no facts to plausibly allege that they specifically intended to interfere with Plaintiff's family relationship with NAJ. *See Gorman*, 910 F.3d at 48. The amended complaint instead alleges, in conclusory fashion, that "Defendants . . . purposefully targeted [Plaintiff's] bond with NAJ," Dkt. No. 27 ¶ 330, and then later refutes this notion by alleging that NAJ was merely temporarily removed from Plaintiff, *see id.* ¶¶ 153, 194. These allegations, accepted as true, are insufficient to establish that Defendants CAMBA and Noel specifically intended to interfere with Plaintiff's family relationship with NAJ.

Accordingly, the undersigned respectfully recommends that Plaintiff's interference with familial associations claim be dismissed.

### c)    Substantive Due Process

As noted above, a substantive due process claim requires the plaintiff to plead "state action . . . 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin*, 577 F.3d at 431 (citation omitted); *see also Velez*, 401 F.3d at 93 ("For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" (quoting *Lewis*, 523 U.S. at 847 n.8).

Here, the amended complaint fails to allege that Defendant Noel engaged in egregious or outrageous conduct that shocks the contemporary conscience. *See generally* Dkt. No. 1. At best, the amended complaint provides that NAJ was temporarily removed from Plaintiff so that his

parenting status could be investigated and his arrest effectuated.  *See id.* ¶¶ 153, 194.  This type of temporary removal does not rise to the level of a substantive due process violation.  *See Nicholson*, 344 F.3d at 172; *Mulqueen*, 2023 WL 4931679, at *9.

Accordingly, the amended complaint fails to state a substantive due process claim against Defendant Noel, and therefore, Plaintiff's sixth cause of action against Defendants Noel should be dismissed.

### 3.    Qualified Immunity

Finally, Defendants CAMBA and Noel argue that even if Plaintiff had adequately pled both state action and a constitutional deprivation, they would still be entitled to dismissal based on qualified immunity.  *See* Dkt. No. 64-2 at 19.

As noted above, qualified immunity "shields officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rupp*, 91 F.4th at 642 (2d Cir. 2024) (quoting *Harlow*, 457 U.S. at 818).  "A defendant pleading qualified immunity on a motion to dismiss is entitled to prevail if the allegations in the complaint fail to state a claim of violation of clearly established law."  *Id.* (internal quotation marks omitted).

Here, even assuming that Defendants CAMBA and Noel were acting under color of law, their alleged conduct—providing information to arresting officers that formed the probable cause for Plaintiff's arrest—was objectively reasonable and no clearly established precedent would have alerted them that such conduct violated Plaintiff's constitutional rights.  As alleged in the amended complaint, Defendant Noel "misunderstood" Plaintiff's status with respect to NAJ and acted upon that "misunderstanding."  *See* Dkt. No. 27 ¶¶ 151-52, 157-58.  Taking this as true, any alleged misunderstanding would have been reasonable because, as alleged: (a) it was based upon legal

advice from Defendants Sanders's attorneys[7]; (b) police officers construed the March 2, 2022 temporary order of protection accordingly; and (c) Defendant Sanders informed police officers that she had legal custody of NAJ and that Plaintiff was not permitted to remove NAJ from school. *See id.* at ¶¶ 171, 176, 255. These facts belie any incompetence or knowing violation of the law on Ms. Noel's part and therefore implicate qualified immunity.

Accordingly, Plaintiff's fifth and sixth causes of action against Defendant Noel should be dismissed for the added reason of qualified immunity.

Because the amended complaint does not adequately allege state action, does not set forth facts showing a constitutional deprivation, and would in any event be barred by qualified immunity, Defendants' motion to dismiss Plaintiff's fifth and sixth causes of action with respect to Defendant Noel should be granted.

## B.    Plaintiff's State Law Claims

As Plaintiff's federal claims against CAMBA and Noel fail, 28 U.S.C. § 1367(c)(3) affords the Court discretion to dismiss Plaintiff's state claims without consideration of their merits. But even if Plaintiff's state law claims against CAMBA and Noel are considered, they too should be dismissed for failure to state a claim.

### 1.    Plaintiff's False Arrest Claim is Untimely

Under New York law, "[c]auses of action based on false arrest and false imprisonment accrue upon the subject's release from confinement and are governed by a one-year statute of limitations." *Bellissimo v. Mitchell*, 122 A.D.3d 560, 560 (2d Dep't 2014) (citing CPLR 215(3)). "[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v.*, 774 F.3d at 798 n.12 (2d Cir. 2014). "[A] defendant may

---

[7] The Second Circuit has suggested that, for purposes of qualified immunity, "the solicitation of legal advice informs the reasonableness inquiry." *Taravella v. Town of Wolcott*, 599 F.3d 129, 135 n. 3 (2d Cir. 2010).

raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008).

Here, insofar as the September 26, 2022 arrest is concerned, the amended complaint is silent as to when, exactly, Plaintiff was released from confinement, but it does provide that Plaintiff was not confined as of at least December 10, 2022, when he "went to pick up NAJ for her court-ordered scheduled visit." Dkt. No. 27 ¶ 217. Even if measured from this date, Plaintiff's false arrest/imprisonment claim is untimely, as this action was not commenced until December 26, 2023. *See* Dkt. No. 1.

Accordingly, the amended complaint fails to state a claim for false arrest or false imprisonment under New York law, and therefore, Plaintiff's seventh cause of action should be dismissed against Defendants CAMBA and Noel.

## 2.    Negligent Hiring and Supervision

Plaintiff's tenth cause of action seeks to hold Defendant CAMBA liable for negligently hiring, retaining, supervising, and training Defendant Noel. *See* Dkt. No. 27 ¶¶ 360-65.

Plaintiff's tenth cause of action should be dismissed because Plaintiff has alleged no facts to support such a claim. *See Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (explaining that the elements of a negligent supervision claim are "(1) the tort-feasor and the defendant were in an employee-employer relationship, (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." (internal citations and quotation marks omitted)). Plaintiff has not, for example, alleged any facts demonstrating that Defendant CAMBA knew or should have known of Defendant Noel's purported propensity for tortious conduct prior to Plaintiff's September 26, 2022 arrest. *See*

*Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 330 (S.D.N.Y. 2011) (dismissing a claim for negligent supervision where the plaintiffs did not "allege[] any facts demonstrating that [the defendants] knew or should have known of their [employees'] propensity for tortious conduct, prior to the wrongdoing alleged in the Complaint").

Accordingly, Plaintiff's tenth cause of action with respect to Defendants CAMBA should be dismissed.

## VI.    Plaintiff's Motions for Leave to File Amended Complaints

Plaintiff seeks leave to file a second amended complaint "in further response to Defendant Noel and CAMBA's Motion to Dismiss." Dkt. Nos. 56, 56-1.  Plaintiff also seeks leave to file a third amended complaint in response to City Defendants' motion for judgment on the pleadings. *See* Dkt. No. 69.

"When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Aquino v. Prudential Life & Cas. Ins. Co.*, 419 F. Supp. 2d 259, 278 (E.D.N.Y. 2005) (citing *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them")).  The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (citation omitted)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  The Court should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend if a valid claim could be stated. *Clifton*

*v. Hra Nyc Govt*, No. 16-CV-1753, 2016 WL 4203486, at *1 (E.D.N.Y. Aug. 9, 2016) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Even under this liberal standard, however, the court may decline to provide the plaintiff with an opportunity to re-plead if the court finds that the plaintiff "cannot correct the defects in his federal claims" and therefore "any attempt to amend the pleading . . . would be futile." *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, at *5 (E.D.N.Y. Apr. 10, 2012); *see Cuoco*, 222 F.3d at 112 (citing *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998)) ("The problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). Moreover, while amendments to *pro se* complaints should be granted "fairly freely," even *pro se* litigants are not entitled to unlimited opportunities to amend their pleadings. *Hagans v. Nassau Cnty, Police Dep't*, No. 18-CV-1918, 2020 WL 1289529, at *9 (E.D.N.Y. Mar. 18, 2020) (quoting *Holmes v. Goldin*, 615 F.2d 83, 85 (2d Cir. 1980)); *Best v. City of N.Y.*, No. 12-CV-7874, 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014).

Here, Plaintiff has sought to file a proposed second amended complaint (Dkt. No. 56-1) and, subsequently, a third amended complaint (Dkt. Nos. 68-69). The undersigned respectfully recommends that these motions be granted in part and denied in part. The Court does not recommend that the current proposed second amended complaint or the current proposed third amended complaint be permitted to be filed at this stage, as these proposed pleadings contain too many allegations inconsistent with the present opinion. Instead, should the Court adopt this Report and Recommendation, the undersigned will promptly hold a status conference with the parties to ensure that the newly operative complaint—deemed a second amended complaint on the docket

—is consistent with the Court's rulings herein, while also ensuring that any proposed amendment will not be futile.

## VIII.   <u>Conclusion</u>

For the foregoing reasons, the undersigned respectfully recommends that:

1. The Court deny City Defendants' motion to dismiss Plaintiff's January 8, 2021 false arrest claim, without prejudice for City Defendants to renew on a motion for summary judgment.

2. The Court grant City Defendants' motion to dismiss Plaintiff's June 11, 2021 false arrest claim.

3. The Court grant City Defendants' motion to dismiss Plaintiff's February 1, 2022 false arrest claim.

4. The Court grant City Defendants' motion to dismiss Plaintiff's June 9, 2022 false arrest claim.

5. The Court deny City Defendants' motion to dismiss Plaintiff's September 26, 2022 false arrest claim, without prejudice for City Defendants to renew on a motion for summary judgment.

6. The Court deny City Defendants' motion to dismiss Plaintiff's December 10, 2022 false arrest claim, without prejudice for City Defendants to renew on a motion for summary judgment.

7. The Court grant City Defendants' motion to dismiss Plaintiff's second cause of action for malicious prosecution.

8. The Court grant City Defendants' motion to dismiss Plaintiff's third cause of action for excessive force and battery.

9. The Court grant City Defendants' motion to dismiss Plaintiff's failure to intervene claims, except with respect to the alleged failure to intervene in Plaintiff's January 8, 2021 arrest; September 26, 2022 arrest; and December 10, 2022 arrest, without prejudice for City Defendants to renew on a motion for summary judgment.

10. The Court grant City Defendants' motion to dismiss Plaintiff's First Amendment claim.

11. The Court grant City Defendants' motion to dismiss Plaintiff's interference with familial associations claim, except with respect to any such claim arising out of the September 26, 2022 arrest, without prejudice for City Defendants to renew on a motion for summary judgment.

12. The Court grant City Defendants' motion to dismiss Plaintiff's substantive due process claim.

13. The Court grant City Defendants' motion to dismiss Plaintiff's *Monell* claim.

14. The Court grant City Defendants' motion and dismiss Defendant Contratto from the case.

15. The Court grant City Defendants' motion to dismiss any state law claims arising out of the January 8, 2021, June 11, 2021, February 1, 2022, June 9, 2022, and December 10, 2022 arrests.

16. The Court grant City Defendants' motion to dismiss Plaintiff's negligent hiring, retention, training, and supervision claim.

17. The Court grant City Defendants' motion to dismiss Section 8-803 of the Administrative Code claims, except for those arising out of Plaintiff's arrest on September 26, 2022, without prejudice for City Defendants to renew on a motion for summary judgment.

18. The Court deny Plaintiff's motion for partial summary judgment.

19. The Court grant Defendant CAMBA and Noel's motion to dismiss.

20. The Court grant in part and deny in part Plaintiff's motion to file a second amended complaint and a third amended complaint.

A copy of this Report and Recommendation is being electronically served on counsel. City Defendants are directed to serve a copy of this Report and Recommendation on Plaintiff and file proof of service by December 30, 2024.

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). See also Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Merchant. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: Brooklyn, New York
      December 28, 2024

**SO ORDERED**.

    */s/ Joseph A. Marutollo*
JOSEPH A. MARUTOLLO
United States Magistrate Judge