**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------X
VLADIMIR JEANTY

        Plaintiff,

        -against-

THE CITY OF NEW YORK,  LT CARLOS SERRANO,
TAX ID #946236; PO ALI WILLACY, TAX ID #966905;
PO ASHLEY PHILLIPS, TAX ID #972872; PO JEAN
SOUFFRANT, TAX ID #958086; PO SHUNJIE LAI, TAX
ID #967155; PO JONATHAN AQUINO, TAX ID
#957337; PO GREGORY RODRIGUEZ, TAX ID
#973154; PO YURI ENORME TAX ID #956623;  PO
BENJAMIN CHEN, TAX ID #960362; SCHOOL SAFETY
AGENT MELANIE WHITE, TAX ID #343692; SCHOOL
SAFETY AGENT IAN MCCAIN, TAX ID #372038
SCHOOL SAFETY AGENT ELIZABETH APONTE,
TAX ID #353281; SCHOOL SAFETY AGENT JOSHUA
MERCADO, TAX ID #363829; SGT. GODWIN NGAI,
TAX ID #954175; PO LANDREY CHERENFANT, TAX
ID#946454; BRIAN MAHER, TAX ID #955113;  UNA P.
SANDERS;  SCHOOL  SAFETY  AGENT  YVONNE
POPO;  SCHOOL  SAFETY  AGENT  SUPERVISOR
RAUL ZAPATA, TAX ID #339713, PO ORLANDO
ORTEGA; PO JONATHAN PESSOA,


        Defendants.

----------------------------------------------X

**CIVIL ACTION  NO.:**

**1:23-cv-09472**

**PROPOSED THIRD
AMENDED
COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiff, Vladimir Jeanty, pro-se for his Complaint alleges as follows:

### A. <u>PRELIMINARY STATEMENT</u>

1. Plaintiff Vladimir Jeanty, Pro-se brings this seemingly expansive action against multiple

    private individuals and New York City employees.

2. Mr. Jeanty will outline facts below of how these private individuals and City employees

3. individually and in concert violated Mr. Jeanty's Federal and State Constitutional Rights.

4. Additionally, certain City officials violated Mr. Jeanty's Civil Right under NYC Municipal and State laws.

5. The facts will demonstrate that all named Defendants callously, purposely, intentionally and knowingly violated Mr. Jeanty's rights and did so with malice.

6. The named Defendant violated Mr. Jeanty's rights simply because Mr. Jeanty is a black male who simply wanted/wants to be involved in raising His daughter who at all times relevant was under the age of 8.

7. Mr. Jeanty brings this action to address and vindicate the egregious and persistent violation of His rights by the named Defendants.

## B. <u>PARTIES</u>

8. Plaintiff Vladimir Jeanty (Hereinafter "Mr. Jeanty") is now a 50 year black male father of 4 who at all times relevant was a resident of New York. Mr. Jeanty has a child in common, NAJ, with Una P. Sanders. Mr. Jeanty at all times relevant lived in Far Rockaway New York.

9. Subject child NAJ is Mr. Jeanty and Una Sanders' now 7 ½ year old daughter. At all times relevant NAJ lived with her mother Una P. Sanders in Brooklyn, New York.

10. Defendant Una P. Sanders ("Sanders") is a 40 year old black woman. She is a mother of 4. She has a child in common, NAJ, with Mr. Jeanty. She lives at 230 Lott Ave., Apt 1I Brooklyn, New York.

11. Defendant City of New York (the "City") is a municipal corporation duly organized under the laws of the State of New York. At all times relevant hereto, the City, acting

through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters, including the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD and for ensuring that NYPD personnel obey the laws of the United States, the State of New York and the City of New York. Business address is City of New Yor, Corporation Counsel, 100 Church St. New York, NY 10007.

12. Defendant, Police Lieutenant Carlos Serrano, Tax ID #946236 , ("Serrano") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is NYPD TB Bus Enforcement Unit, 130 Livingston St., Brooklyn, NY 11201.

13. Defendant, Police Officer Ashley Phillips, Tax ID #972872, ("Phillips") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of her employment as such. Business Address is 79th Precinct, 263 Tompkins Ave, Brooklyn, NY 11216.

14. Defendant, Police Officer Ali Willacy, Tax ID #966905, ("Willacy") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business Address is 79th Precinct, 263 Tompkins Ave, Brooklyn, NY 11216.

15. Defendant, Police Officer Jean Souffrant, Tax ID #958086, ("Souffrant") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business Address is 79th Precinct, 263 Tompkins Ave, Brooklyn,

NY 11216.

16. Defendant, Police Officer Jonathan Pessoa, Tax ID #unknown, ("Pessoa") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business Address is 79th Precinct, 263 Tompkins Ave, Brooklyn.

17. Defendant, Retired Police Officer Orlando Ortega Tax ID #unknown, ("Ortega") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Last known business Address is 79th Precinct, 263 Tompkins Ave, Brooklyn,

18. Defendant, Police Officer Shunjie Lai, Tax ID #967155, ("Lai") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is NYPD TB Bus Enforcement Unit, 130 Livingston St., Brooklyn, NY 11201.

19. Defendant, Police Officer Gregory Rodriguez, Tax ID #973154, ("Rodriguez") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

20. Defendant, Police Officer Yuri Enorme, Tax ID #956623, ("Enorme") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

21. Defendant, Police Sergeant Godwin Ngai, Tax ID #954175, ("Ngai") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

22. Defendant, Police Officer Landrey Cherenfant, Tax ID#946454, ("Cherenfant") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

23. Defendant, Police Officer Brian Maher, Tax ID #955113, ("Maher") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

24. Defendant Police Officer Benjamin Chen, Tax ID #960362, ("Chen") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 115th Precinct, 92-15 Northern Blvd, Queens, NY 11372.

25. Defendant Police Officer Jonathan Aquino, Tax ID #957337 ("Aquino") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 73rd Precinct, 1470 E New York Ave, Brooklyn, NY 11212.

26. Defendant, School Safety Agent Ian McCain, Tax ID #372038, ("McCain") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the

scope of his employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

27. Defendant, School Safety Agent Joshua Mercado Tax ID #363829, ("Mercado") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

28. Defendant, School Safety Agent Supervisor Raul Zapata, Tax ID #339713, ("Zapata") of the NYPD acting in the capacity of supervisor, agent, servant, and employee of the City, and within the scope of her employment as such. Business address, NYPD School Safety, Brooklyn  North Division, 850 Grand St., Brooklyn, NY 11211.

29. Defendant, School Safety Agent Melanie White, Tax ID #3436925, ("SSA M. White") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the scope of her employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

30. Defendant, School Safety Agent Elizabeth Aponte, Tax ID #353281 ("Aponte") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the scope of her employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

31. Defendant, School Safety Yvonne Popo Tax ID #XXXXX, ("Popo") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

## C.  JURISDICTION AND VENUE

32. This action arises under the Fourth and Fourteenth Amendments to the United States

Constitution, 42 U.S.C. §§ 1983,1988, New York State law and New York City Administrative Code.

33. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367.

34. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the acts complained of occurred in the Eastern District of New York.

### D. JURY DEMAND

35. Plaintiff demands trial by jury.

### E. FACTUAL ALLEGATIONS

#### i. Conditions Precedent/Notice of Claim

36. Plaintiff served notices of claim on the City of New York on or about October 21, 2022 relating to the 9/26/2022 arrest, 1/4/2022 relating to the 6/11/2021 & 1/8/2021 arrests and on 4/29/2022 relating to the 2/1/2022 arrest.

37. At least thirty days have elapsed since the service of the notices of claim, and adjustment or payment of the claims has been neglected or refused.

38. This action has been commenced within one year and ninety days after September 26, 2022; the happening of the events, in part upon which the claims are based.

#### ii. New York Custody and Visitation Rights

39. In New York State Custody a Custody Order gives responsibility for the child's care and how the child is brought up to one or both of the child's parents or to someone else. There are two parts of custody: (1) legal custody and (2) physical custody. A New York court can make orders about the child's custody only until the child is 18 years old. The Court gives custody based on what is best for the child, this is called the "best interest of the child." If there is no court order, then both parents have equal rights to physical and legal

custody of the child[1].

40. In New York State whoever has legal custody has the right to make important decisions about a child's care such as medical care or religious upbringing. If the Judge gives joint legal custody, the parents make major decisions about the child together. It doesn't matter which parent the child lives with; both parents must agree on the decisions together. If the Judge gives one parent sole legal custody, only one parent has the right to make major decisions for the child.

41. In New York State whoever has physical custody, also known as residential custody, is responsible for the actual physical care and supervision of a child. If the Judge gives joint physical custody, the child lives with each parent for an equal amount of time. If the Judge gives sole physical custody, the child lives with this adult more than 50% of the time and this person is the custodial party and the noncustodial party will have visitation.

### iii.    Mr. Jeanty and Defendant Sanders' Family Court case

42. NAJ a female was born on 6/8/2016.

43. Mr. Jeanty had previously informed Defendant Sanders that he did not want to have any children with her.

44. Despite Mr. Jeanty's feelings toward Ms. Sanders Mr. Jeanty welcomed the birth of NAJ.

45. Mr. Jeanty accompanied Defendant Sanders to her prenatal doctor's appointments.

46. Mr. Jeanty was present at NAJ's birth.

47. Mr. Jeanty picked up Defendant Sanders and NAJ from the hospital.

48. Mr. Jeanty expressed to Defendant Sanders his desire to be in NAJ's life and to help raise her.

49. From birth to approximately March of 2017 everything was fine between Mr. Jeanty and Defendant Sanders.

50. In March of 2017 Defendant Sanders found out Mr. Jeanty was involved with another female.

51. Ms. Sanders began to refuse to allow Mr. Jeanty any contact with NAJ.

52. In April of 2018, Mr. Jeanty went to Queens County Family Court to file a visitation petition.

53. Mr. Jeanty was informed that he had to file in Kings County because NAJ was part of a Neglect proceeding in that Court.

54. Mr. Jeanty went to KCFC and found out for the first time that NAJ was part of Defendant Sanders' Article 10 Neglect Petition for allegedly leaving NAJ unsupervised at a McDonald in Brooklyn.

55. This neglect petition proceeding terminated in September of 2020 when defendant Sanders accepted an ACD disposition.

56. At all relevant times Mr. Jeanty was granted multiple variations of a visitation order which allowed Mr. Jeanty to visit with NAJ. Mr. Jeanty requested this visitation order because Defendant Sanders refused to allow Mr. Jeanty to spend any time with NAJ.

57. Mr. Jeanty is not and never was and absent dad.

58. As of April 2018, to present Mr. Jeanty and Defendant Sanders have pending cross-motions for custody of NAJ.

59. At all times relevant and from 6/8/2016 (NAJ birth) to 10/15/2023 neither Mr. Jeanty nor Defendant Sanders had legal custody of NAJ nor legal physical custody of NAJ by Court order or otherwise.

60. Mr. Jeanty and Defendant Sanders had equal legal rights to NAJ.

61. At all relevant times Mr. Jeanty had a Court issued visitation order.

62. On 10/16/2023 during an ex-parte proceeding Judge Caroline Cohen of KCFC granted

Defendant Sanders temporary custody of NAJ in part as a result of the events leading to the arrest of Mr. Jeanty on 9/26/2022.

63. The City of New York through the NYC DOE provides facilities, equipment and staffing.

64. The City of New York through the NYC NYPD provides School Safety Agents (SSA) as security at its DOE facilities.

65. The SSA's are under the direct supervision and control of the CAMBA program Director.

66. At PS3, Bedford Village School, Defendant Noel was the program director for the year 2022 to 2023.

iv. **Events and Facts of 1/8/2021 Arrest as to Defendants Chen and Aquino**

67. On or about  an unknown date and time Defendant Sanders made a complaint with Defendant Aquino and Chen.

68. Defendant Sanders alleged that Mr. Jeanty violated a temporary limited order of protection dated 12/14/2020 issued by a Family Court Referee.

69. Defendant Sanders alleged that on 12/28/2020 Mr. Jeanty followed, scared, alarmed and annoyed her after exchanging NAJ after a visit.

70. Defendant Sanders reported:

> "After [Mr. Jeanty] transferred physical custody of [NAJ] to [Defendant Sanders], [Mr. Jeanty] did follow [Defendant Sanders] for a block and impede [Defendant Sanders'] path causing [Defendant Sanders] to step and walk around [Mr. Jeanty]."

71. Defendant Aquino and Chen had no further information from Defendant Sanders that Mr.Jeanty followed her or followed her with the intent of harassing annoying or alarming Defendant Sanders.

72. Mr. Jeanty could not possibly or physically follow Defendant Sanders and at the same time impede her path. Clearly Defendant Sanders was walking behind and following Mr.

Jeanty causing her to step and walk around Mr. Jeanty.

73. Defendant Sanders alleged that on 1/6/2021 Mr. Jeanty repeatedly texted Defendant Sanders thereby alarming and annoying her.

74. Defendant Sanders did provide a copy of these alleged text messages, Defendant Aquino and Chen read them and would have understood that they were messages sent via text during a back and forth conversation.

75. Mr. Jeanty did not harass, menace, intimidate or threaten Defendant Sanders.

76. Mr. Jeanty was simply expressing his personal views of Defendant Sanders to Defendant Sanders via text in response to defendant Sanders' text messages to Mr. Jeanty.

77. Nothing Mr. Jeanty texted Defendant Sanders or did constituted physical menace or placed Defendant Sanders in fear of death, imminent serious physical injury or physical injury.

78. Nothing Defendant Sanders reported to Defendant Aquino constituted evidence of any crime or wrongdoing towards or against Defendant Sanders.

79. Mr. Jeanty did not violate the limited order of protection.

80. Defendant Aquino and Chen were aware that Mr. Jeanty and defendant Sanders were in a Family Court dispute.

81. Defendant Aquino and Chen were aware that there were approximately 20 plus Domestic Incident Reports filed by Mr. Jeanty and Defendant Sanders against each other.

82. Defendants Aquino and Chen arrested Mr. Jeanty without His consent.

83. Defendant Aquino and Chen did not have reasonable suspicion that a crime occurred.

84. Defendant Aquino and Chen arrested Mr. Jeanty without probable cause.

85. Defendant Aquino charged Mr. Jeanty with:

PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE
PL 240.26(3) HARASSMENT IN THE SECOND DEGREE

PL 120.14(3) MENACING IN THE SECOND DEGREE
PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE
PL 240.26(2) HARASSMENT IN THE SECOND DEGREE

86. Defendant Aquino intentionally made up and exaggerated these charges to arrest Mr. Jeanty and prosecute him.

87. Defendant Aquino arrested and charged Mr. Jeanty in an attempt to stop Mr. Jeanty from expressing His views and opinions of Defendant Sanders.

88. Defendant Aquino falsely reported to the Kings County ECAB ADA that Mr. Jeanty menaced Defendant Sanders after exchanging NAJ.

89. Defendant Aquino falsely reported to the Kings County ECAB ADA that Mr. Jeanty harassed Defendant Sanders by texting defendant Sanders repeatedly.

90. There were no repeated text messages from Mr. Jeanty to Defendant Sanders.

**v. Events and facts of 9/26/2022 arrest as to Defendants Sanders, Serrano, Phillips, Willacy, Souffrant, Lai, (SSA) M. White, McCain, Aponte, Mercado, Zapata, Ortega Pessoa and Noel.**

91. On 9/24/2022 Mr. Jeanty texted Defendant Sanders and asked if she would allow NAJ to have an extended visit with Mr. Jeanty due to the 4-day holiday from 9/24/22 to 9/27/22.

92. Defendant Sanders refused to agree.

93. Mr. Jeanty informed Defendant Sanders that if she was not spending this time with NAJ, and if she sent NAJ to school Mr. Jeanty would go to the NAJ's school and pick her up.

94. Defendant Sanders sent NAJ to school to participate in Jewish Holiday event.

95. At approximately 10am Mr. Jeanty went to NAJ's school, PS3 50 Jefferson St, Brooklyn NY to pick her up.

96. At approximately 8:30am on 9/26/2022, prior to picking up NAJ Mr. Jeanty called the school and spoke to Defendant Noel and asked if NAJ was there.

97. Defendant Noel said 'yes'. Mr. Jeanty informed Defendant Noel that he would be picking NAJ up.

98. Defendant Noel called Defendant Sanders and informed her that Mr. Jeanty was on His way to pick up NAJ.

99. Once at PS3, at approximately 10:00am on 9/26/2022, Mr. Jeanty informed the school safety agent Yvonne Popo and Defendant Noel that he was there to pick up NAJ.

100. Defendant Noel came out with a copy of Mr. Jeanty's 3/2/2022 temporary order of visitation and informed Mr. Jeanty that he could not pick NAJ because the visitation order did not allow Mr. Jeanty to pick up NAJ. Exhibit #1)

101. Mr. Jeanty informed Defendant Noel that she was aware that Mr. Jeanty was NAJ's father and that Mr. Jeanty's name was on NAJ's DOE blue card as the only other person allowed to pick up NAJ other than Defendant Sanders.

102. Defendant Noel was aware that Mr, Jeanty's name was on the NYC DYCD application for NAJ.

103. Mr. Jeanty informed Defendant Noel that She misunderstood the visitation order and that She should not involve herself in Mr. Jeanty and Defendant Sanders' personal business.

104. Mr. Jeanty informed Defendant Noel that Defendant Sanders did not have any Court order granting her legal custody of NAJ and she therefore could not tell anyone not to allow Mr. Jeanty to pick up their daughter NAJ.

105. There were no orders of protections against Mr. Jeanty relating to NAJ.

106. Defendant Noel continued to refuse to bring NAJ to Mr. Jeanty.

107. Mr. Jeanty asked if He could see NAJ to make sure she was alright.

108. Defendant Noel agreed to let Mr. Jeanty see NAJ.

109. When Defendant Noel brought NAJ out, Mr. Jeanty picked her up and informed Defendant Noel that they were leaving and where should he sign NAJ out.

110. Mr. Jeanty began to attempt to exit the building.

111. Defendant Noel yelled to the school safety agents Defendants (SSA) M. White, McCain, Zapata, Aponte, Mercado to lock the doors and not allow Mr. Jeanty to leave.

112. Defendant Noel directed Defendants (SSA) M. White, McCain, Zapata, Aponte, Mercado to detain Mr. Jeanty and to arrest Mr. Jeanty if He left the building.

113. Defendant Noel attempted to grab NAJ by the arm out of Mr. Jeanty's hands.

114. Defendant McCain a black male School Safety Agent grabbed Mr. Jeanty and informed Mr. Jeanty if He left the school he would be arrested.

115. Mr. Jeanty escaped SSA McCains grasp and walked down the stairs in the vestibule.

116. (SSA) M. White, Aponte and Zapata stood in front of the building 3 doors to block Mr. Jeanty from leaving. (Exhibit #2).

117. Mr. Jeanty attempted to exit through the doors but SSA White, Aponte or Zapata pushed against NAJ's back to block Mr. Jeanty.

118. Mr. Jeanty turned around and attempted to exit backwards and again SSA White, Aponte or Zapata pushed against Mr. Jeanty's back.

119. Mr. Jeanty repeatedly asked to be let out and was refused.

120. Mr. Jeanty was repeatedly told by the school safety agents that if He released NAJ he could leave the building.

121. Mr. Jeanty sat down and called 911 for assistance.

122. SSA Popo and Charmaine Noel were standing at the top of the staircase blocking that exit as Defendant Noel was telling her that Mr. Jeanty could not pick up NAJ because of a visitation order and it was not his visitation day.

123. School Safety Agent Yvonne Popo called 911 at the direction of Defendant Noel and falsely reported Mr. Jeanty was unlawfully trying to pick up NAJ from school and leave

and that Mr. Jeanty was an irate parent.

124. SSA Popo did not read the order.

125. Mr. Jeanty was being held against his will.

126. The 911 radio and sprint report indicated in part:

> "MOTHER AND FATHER CUSTODIAL TO THE LOC D1791" and "AUTH OF BROOKLYN NORTH PLATOON COMMANDER ---STS FATHER IS CHILD TO LEAVE WITH THE CHILD--PARENT ONLY HAS VISITIATION NO CUSTODIAL---NO WPNS---NO INJ--MB RED SHIRT BLK PANTS---THIN BUIILT---130 LBS 6 FT-----REQ ETA PLEASE D1791"

127. Defendant Noel called Defendant Sanders again and told her to hurry up to PS3 because Mr. Jeanty was trying to take NAJ.

128. Defendant Sanders had an active stay away order of protection which required Defendant Sanders to stay away from any location Mr. Jeanty was present.

129. Defendants Willacy, Phillips and Souffrant were the first police officer to arrive on scene.

130. Defendants Serrano and Lai arrived approximately 20 minutes after.

131. Defendants Willacy, Phillips and Souffrant spoke to Defendant Sanders and various school safety agents.

132. Defendants Willacy and Phillips correctly told Defendant Sanders that since neither parents had custody Mr. Jeanty could pick up NJ.

133. Defendants Willacy and Phillips allowed Defendants Sanders to change their mind.

134. Defendants Serrano, Phillips, Willacy, Souffrant, Ortega, Pessoa, Lai, (SSA) M. White, McCain, Zapata, Aponte, Mercado and Noel were aware of a valid temporary stay away order of protection against Defendant Sanders in favor of Mr. Jeanty.

135. Defendant Noel knowingly summoned Defendant Sanders to Mr. Jeanty's location.

136. The Police Officer defendants allowed defendant Sanders to remain where Mr. Jeanty

was despite there being no emergency regarding NAJ and a stay away order of protection in place against Defendant Sanders.

137. Defendant Sanders came to PS3 despite knowing Mr. Jeanty was there and she was required to stay away.

138. She stood outside the doors.

139. Mr. Jeanty sat in a seat with NAJ on his lap.

140. Defendant Noel called Defendant Sanders multiple times to ensure Defendant Sanders that Mr. Jeanty would not be allowed to leave with NAJ.

141. After speaking to Defendant Sanders and other school safety agents Defendant Serrano immediately and in an aggressive manner approached Mr. Jeanty and told Mr. Jeanty let go of NAJ and that He could not leave with her.

142. Defendant Sanders knowingly and falsely told Defendant Noel she had full legal custody of NAJ.

143. Defendant Sanders told Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai that NAJ lived with her and that Mr. Jeanty was not allowed to pick her up from PS3.

144. Defendant Sanders knowingly and falsely told Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai that Mr. Jeanty was not allowed to pick up NAJ because of a visitation order and because NAJ lived with her.

145. Defendant Sanders informed Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai that She and Mr. Jeanty were scheduled to have a trial for legal custody of NAJ.

146. Defendant Sanders never provided Defendants Noel, Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai a legal custody Court Order in her favor.

147. Mr. Jeanty explained to Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai that He was NAJ's dad, and he was there to pick her up, He informed Defendant Sanders, His name was on the DOE blue Card and that He and Defendant Sanders had the same right to NAJ because there was no custody order in place just a visitation order in Mr. Jeanty's favor.

148. Defendant Serrano had a private meeting with Defendant Noel.

149. Defendant Noel knowingly and falsely informed Defendant Serrano that Mr. Jeanty was not allowed to pick up NAJ from PS3.

150. Defendant Noel knowingly and falsely informed Defendant Serrano that Defendant Sanders had custody of NAJ.

151. Defendants Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai read the temporary order of visitation and insisted that the visitation order did not allow Mr. Jeanty to pick up NAJ and that because NAJ lived with Defendant Sanders, Defendant Sanders therefore had custody of NAJ.

152. Mr. Jeanty repeatedly asked if he could leave with NAJ, Defendants Serrano, Phillips, Souffrant, Willacy and Lai told Mr. Jeanty 'NO'.

153.        Mr. Jeanty stood up in an attempt to leave and Defendants Serrano, Phillips, Souffrant Willacy, Lai and other NYPD officers quickly surrounded Mr. Jeanty and NAJ and forced Mr. Jeanty to sit down.

154. Mr. Jeanty repeatedly asked if he was under arrest and was repeatedly told 'NO'.

155. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai demanded that Mr. Jeanty release NAJ to the custody of Defendant Noel.

156. Mr. Jeanty refused to release NAJ to Defendant Noel.

157. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai demanded Mr.

Jeanty release NAJ to Defendant Phillips.

158. Mr. Jeanty refused to release NAJ to Defendant Phillips.

159. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai knew and saw that the entire time NAJ was in Mr. Jeanty custody and control she was not harmed, hurt, in danger or in need of medical assistance. NAJ was fine. There was no emergency.

160. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai told Mr. Jeanty if He wanted to leave Mr. Jeanty simply needed to release NAJ to them or Defendant Noel.

161.     Mr. Jeanty informed Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai that if they or Defendant Sanders produced an order of custody in Defendant Sanders' behalf Mr. Jeanty would gladly turn NAJ to Defendant Sanders.

162. No custody order was produced because none existed.

163. At various times NAJ cried because she was scared of all the commotion caused by the police around Her and Mr. Jeanty. Mr. Jeanty was able to console her and explain to her what was going on and let her know everything would be alright.

164. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai had no reason to detain Mr. Jeanty and NAJ.

165. Defendants Serrano, Phillips, Souffrant, Willacy and Lai had no reason to arrest

166. Mr. Jeanty.Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai arrested Mr. Jeanty so that NAJ could be turned over to Defendant Sanders and Defendant Noel.

167. At some point NAJ wanted to use the bathroom.

168. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai demanded that Mr. Jeanty turn NAJ over to Defendant Phillip so she could take NAJ to the bathroom.

169. Mr. Jeanty refused and asked if He could take NAJ to the bathroom...Defendant Serrano said 'NO' and refused to allow Mr. Jeanty to take NAJ to the bathroom.

170. Defendant Serrano changed His mind later and told Mr. Jeanty he could take NAJ to the bathroom. Mr. Jeanty took NAJ to the bathroom.

171. Upon returning to his seat, Defendant Serrano informed Mr. Jeanty he would be put under arrest.

172. Defendants Serrano, Souffrant, Willacy, Ortega, Pessoa and Lai forcibly held Mr. Jeanty' legs and pried Mr. Jeanty's arms open, and Defendant Phillips forcibly removed NAJ from Mr. Jeanty's custody and control without his permission.

173. Defendant Phillips took NAJ away from Mr. Jeanty.

174. Defendant Phillips told NAJ that what Mr. Jeanty did was wrong.

175. Defendant Willacy told Mr. Jeanty and NAJ that Mr. Jeanty was a bad parent and did not deserve to have custody of NAJ.

176. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai arrested Mr. Jeanty for allegedly violating:

   PL 195.05 Obstructing Governmental Administration
   PL 215.50(3) Criminal Contempt
   PL 260.10(1) Endangering the Welfare of a Child.

177. Mr. Jeanty did not endanger NAJ.

178.      The only danger to NAJ were Defendants Serrano, Phillips, Souffrant, Willacy, Lai, Noel and other police officers.

179.      Mr. Jeanty did not and could not violate the KCFC visitation order which was issued in Mr. Jeanty's favor and Defendant Sanders did not have legal custody or legal physical custody of NAJ.

180. Mr. Jeanty did not obstruct any governmental administration as Defendants Serrano,

Phillips, Souffrant, Willacy and Lai unlawfully detained and arrested Mr. Jeanty for no legal reason.

181. Despite asking multiple time if He could leave with NAJ, Mr. Jeanty and NAJ were unlawfully detained for approximately 4 hours and not allowed to leave the building.

182. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai arrested Mr. Jeanty for allegedly violating PL 195.05 Obstructing Governmental Administration in 2nd Degree by falsely alleging that Mr. Jeanty interfered with an official function.

Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai were not performing any official function because they responded to Mr. Jeanty's 911 call with the intent of taking NAJ from Mr. Jeanty and turning her over to Defendants Sanders and Noel for no legal reason.

183. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai arrested Mr. Jeanty for allegedly violating PL 260.10(1) Endangering the Welfare of a Child by falsely claiming that Mr. Jeanty would not allow NAJ to use the bathroom.

184. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai knew Defendant Serrano refused to allow Mr. Jeanty to take NAJ to the bathroom. Defendant Serrano specifically only wanted Defendant Phillips to take NAJ to the bathroom, which Mr. Jeanty refused.

185. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai arrested Mr. Jeanty for allegedly violating PL 215.50(3) Criminal Contempt in the 2nd Degree by falsely alleging that Mr. Jeanty violated His own Family Court visitation order.

186. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai knew that Defendant Sanders did not have any court issued order of custody for NAJ.

187. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai knew that at all

times during this event Mr. Jeanty was not in the presence of Defendant Sanders. Mr. Jeanty was inside and Defendant Sanders was outside.

188. Defendant Willacy filed a false report alleging that Mr. Jeanty made threats against Defendant Sanders. Defendant Sanders was not in the same location as Mr. Jeanty.

189. Defendant Willacy falsely marked on a police report that there was an active stay away Order of protection for Mr. Jeanty. There was one for Defendant Sanders.

190. Defendants Willacy and Phillips falsely reported to KCDA ECAB that Mr. Jeanty threatened Defendant Sanders, violated an order of protection, hurt NAJ and resisted arrest.

191. Defendants Serrano, Willacy, Phillips, Souffrant, Ortega, Pessoa and Lai never told Mr. Jeanty he was under arrest.

192. Defendants Willacy and Phillips processed Mr. Jeanty at the 79th Precinct.

193. Defendant Willacy executed a false Suspected Child Abuse or Maltreatment Report (SCAM Report) falsely claiming that  He attempted to lawfully arrest Mr. Jeanty and that Mr. Jeanty put NAJ at risk of Personal injury. He submitted same to NYS OCFS.

194. Defendant Willacy falsely reported to ACS on 9/27/22 after Mr. Jeanty was arraigned that Mr. Jeanty used NAJ as a shield to avoid arrest and subjected NAJ to personal injury.

195. On 9/27/22 Defendant Willacy falsely reported to ACS:

On 9/26/22, the father (Vladmir) made verbal threats towards the mother (Una) in the presence of Nyasia (6). The father then forcibly held onto Nyasia and used her as a shield to prevent his arrest. Nyasia did not sustain any injuries during the incident. The role of the mother is unknown.

The incident occurred at the school. There is currently a court order for visitation. The father was attempting to violate this order by removing Nyasia from the school. The school did not allow this and called law enforcement. The father made verbal threats towards the mother and stated she was going to get what is coming to her. The father then forcibly grabbed Nyasia and used her as a shield to prevent himself from getting arrested by NYPD. The father would take her

and shuffle from side to side. The father refused to let Nyasia go and law enforcement had to remove Nyasia from him. The father was arrested for violating the order of protection. The source's badge number is 12365. There are no children under 1 in the home.

The father is currently in police custody. Nyasia is currently with the mother.

196. Defendant Willacy took a report from Defendant Sanders that He knew was false because Ms. Sanders was not present in the location where Mr. Jeanty and NAJ were.

197. Ms. Sanders knowingly executed and swore to a false DIR in support of Mr. Jeanty being falsely arrested. She was not present in the location where Mr. Jeanty and NAJ were.

198. Defendant Phillip falsely reported that Mr. Jeanty threatened Defendant Sanders. Defendant Sanders was not in the same location as Mr. Jeanty and NAJ.

199. Mr. Jeanty never consented to NAJ being taken from Him and turned over to Defendants Sanders or Noel.

200. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai did not have reasonable suspicion to detain or arrest Mr. Jeanty.

201. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai did not have probable cause to arrest Mr. Jeanty.

202. As a result of Mr. Jeanty's arrest, Mr. Jeanty was separated from NAJ for an unreasonable extended period of time.

**vi.    Events and facts of 12/10/2022 arrest as to Defendants Sanders, Ngai, Rodriguez, Enorme, Cherenfant and Maher**

203. On 12/10/2022 Mr. Jeanty went to pick up NAJ for her Court ordered scheduled visit.

204. Defendant Sanders called 911 complaining Mr. Jeanty was violating a Full Order of Protection dated 9/27/2022 requiring Mr. Jeanty to stay away from and to not communicate with, harass, menace, intimidate or threaten Defendant Sanders and NAJ.

205. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher arrived at Aprils Dance-n-

Feet located at 9411 Ave L Brooklyn NY.

206. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher encountered Mr. Jeanty outside and Defendant Sanders waiting inside the lobby.

207. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher each spoke to Mr. Jeanty and Defendant Sanders about the 911 call.

208. Defendant Sanders told Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher that Mr. Jeanty texted her; stating in a domestic incident report (DIR):

> "Vladimir keep texting me about stuff that have nothing to do with emergency or medical. He text me about a coat, Xmas, call, and what he sent to lawyers. He do not suppose to text about non-emergency and non medical."

209. Defendant Rodriguez wrote in the DIR:

> "At TPO, C/V state Def't was at scene for prearranged pick up of daughter. C/V states court order only allows def't to contact regarding emergencies. Def't contacted about request of making sure daughter has a jacket."

210. Defendant Sanders confused a Full Order of Protection against Herself as if it were against Mr. Jeanty in ¶222.

211. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher were shown the 9/27/2022 Full Order of Protection issued by Kings County Criminal Court Judge Haniff against Mr. Jeanty.

212. The 9/27/2022 FOP stated in part:

> [99] Observe such other conditions as are necessary to further the purposes of protection: "SUBJECT TO ANY SUBSEQUENT AND EXISTING SUPREME COURT ORDERS AND/OR FAMILY COURT ORDERS RE: CUSTODY & VISITATION."

213. Plaintiff provided Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher a copy of an existing 2/4/2022 Kings County Family Court CUSTODY & VISITATION

ORDER signed by Judge Caroline Cohen which stated:

> "ORDERED that Mr Vladimir Jeanty may have incidental contact and communication with Ms. Una Sanders to facilitate contact and visitation between Mr Jeanty and the subject child, Nyasia Jeanty, DOB 6/8/2016."

214. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher read both orders and all the text Mr. Jeanty sent Defendant Sanders and decided that Mr. Jeanty did not violate the 9/27/2022 FOP.

215. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher went to Defendant Sanders that Mr. Jeanty would not be arrested.

216. Defendant Sanders became angry and convinced Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher that they should arrest Mr. Jeanty because the 2/4/2022 Family Court order was not valid and expired.

217. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher believed Defendant Sanders and decided to arrest Mr. Jeanty despite being clearly able to verify that the 2/4/2022 Family Court Order was valid and unexpired.

218. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher told Mr. Jeanty was in violation of the 9/27/2022 FOP because He was not allowed to be around NAJ and that the 2/4/2022 Family Court order was not valid and expired.

219. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher knew Mr. Jeanty was allowed to pick up NAJ and to communicate with Defendant Sanders.

220. Defendant Sanders did not provide Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher any additional knew information to justify Mr. Jeanty's arrest.

221. Defendant Ngai, Rodriguez, Enorme, Cherenfant and Maher arrested and charged Mr. Jeanty in an attempt to stop Mr. Jeanty from expressing His views and opinions of Defendant Sanders.

222. Mr. Jeanty did not consent to be arrested.

223. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher did not have reasonable suspicion to detain or arrest Mr. Jeanty.

224. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher did not have probable cause to arrest Mr. Jeanty.

225. Defendant Rodriguez charged Mr. Jeanty knowing Mr. Jeanty committed no crimes.

226. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher failed to inform the Kings County District Attorney Intake that Mr. Jeanty had a Kings County Family Court order that permitted Mr. Jeanty to pick up NAJ and communicate with Defendant Sanders.

227. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher omitted from their reports that Mr. Jeanty provided and there existed a family Court order which allowed Mr. Jeanty to have contact with and communicate with Defendant Sanders and NAJ.

   vii.   **Defendants City of New York's Failure to Train its's Employees Enabled Mr. Jeanty to be Repeatedly Falsely Arrested and Denied His Parental Rights**

228. Defendants City was aware that their employees were not properly trained regarding the difference between custody and visitation orders and a parents right under each order.

229. Based on the above outlined conduct in the preceding paragraphs of all named Defendants, Mr. Jeanty has been subjected to multiple arrests without reasonable suspicion or probable cause.

230. Based on the above outlined conduct of all named Defendants, Mr. Jeanty has been subjected to multiple arrests without probable cause.

231. Mr. Jeanty was taken away from His children for periods over 24 hours per arrest.

232. Mr. Jeanty was deprived of parenting time with NAJ which caused Mr. Jeanty's relationship with NAJ to become fractured and damaged.

233. It is bad enough that the City tolerates NYPD's practice of unlawfully arresting black

males. In this case, that failure was compounded by the City's failure to train NYPD officers in child-sensitive arrest practices and domestic issues which they encounter regularly.

234. Due to that lack of training, the NYPD frequently arrests parents and caregivers in ways that harm and traumatize them and their children. Parents and Children who are forcibly separated from each other experience severe and often lifetime trauma.

235. Despite having recently addressed[5] the issue of police and other public officials separating children from parent in the matter of Jazmine Headley, the City of New York and the NYPD have changed nothing.

236. It's entirely foreseeable to the City that its officers and employees will encounter children in situations where a parent or caregiver is being arrested. At least 65% of women and 55% of men in prison have minor children[6]. As of 2017, more than 13% of arraigned defendants in New York City were full-time caregivers of at least one child.[7] And the percentage of women arrested has increased nationally. All told, at least 35,581 children in the city lived with a parent who was arrested in 2017[8].

237. In this case there was no need and no reason to arrest Mr. Jeanty. There was no need and no reason to rip Mr. Jeanty's child NAJ from His arms.

238. Contrary to popular belief black males such as Mr. Jeanty are able and willing to be full time parents to their children.

239. Nevertheless, the City has failed to train NYPD officers on child-sensitive arrest policies, including: alerting NYPD officers ahead of time that children will be present at the scene of the arrest; minimizing the use of force and handcuffing; limiting what children are able to see; and affording parents or caregivers the opportunity to explain the arrest to their child, make additional phone calls as necessary, and stay with the child until another

person arrives to care for them.

240. The City has failed to train its employees regarding New York State       law on custodial rights of mothers and fathers relative to the scope of their  responsibilities as employees.[9]

241. NYPD officers do not maintain data about or document arrests made in front of children, a failure which has concealed this issue from the public eye, obscured the profound harm it inflicts, and rebuffed all efforts at accountability.

242. NYPD officers receive no training as to *any* of these protocols—many recommended by the Department of Justice and the International Association of Chiefs of Police after formal investigation and analysis[10]. As a consequence, arresting officers do not understand the issues at stake.

243. Instead, NYPD officers continue to arrest parents and caregivers in an ad hoc manner that harms children and fosters mistrust between communities and law enforcement. "Instead of associating safety and comfort with a uniformed authority," said Tanya Krupat, Director of the Osborne Center for Justice Across Generations, children who witness a parent's arrest "associate fear, anger, and an abuse of power with those in uniform." This is even more true for parents being unlawfully arrested.

244. The NYPD—and its counterpart, the New York State Police—reportedly lag far behind all other law enforcement officers in New York when it comes to child-sensitive arrests.[11]

245. While all other officers are trained to safeguard children during a parent's arrest as part of the New York State Office of Public Safety's Basic Training, NYPD and New York State Police officers are not.[12]

246. The New York City Council has recognized the need for change in this area, and legislation is now under consideration that would implement certain NYPD training protocols about child-sensitive arrest practices.

247. The City's failure to train NYPD officers directly damaged NAJ and Mr. Jeanty and harms other New Yorkers they deal with every day.

**viii.    Damages Suffered**

248.       Mr. Jeanty suffered and continues to suffer extreme emotional distress, pain and suffering due to but not limited to; the repeated interference with parental rights, unlawful seizures, arrests, battery, incarcerations, malicious prosecutions of Mr. Jeanty by all named Defendants.

249. Plaintiff and His children suffered emotional distress, pain and suffering due to their separation caused by defendant's conduct.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – 4th and 14th Amendment, False Arrest**
**(Defendants City of New York, Aquino, Chen, Serrano, Willacy, Phillips, Souffrant, Lai, Ortega, Pessoa, (SSA) M. White, Mercado, Aponte, McCain, Zapata, Rodriguez, Ngai and Sanders)**

250. Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

251. Each named Defendant in the First Cause of Action are among other violations, responsible for the actions outlined in paragraphs 252 to 263

252. By the actions described above, the individually named defendants herein falsely or caused to be falsely arrested, unreasonably seized, falsely imprisoned, and unlawfully detained Mr. Jeanty.

253. The wrongful, unjustifiable, and unlawful apprehension, arrest, seizure, and detention of Mr. Jeanty was carried without any basis, without Plaintiff's consent, and without reasonable suspicion or probable cause.

254. The individually named defendants herein knew they lacked probable cause to arrest and unreasonably seize Mr. Jeanty, because they knew that Mr. Jeanty had not engaged in

any unlawful conduct.

255. No reasonable officer would have believed there was probable cause to arrest or unreasonably seize Mr. Jeanty under the circumstances outlined in the preceding paragraphs.

256. At all relevant times the individually named defendants in the captioned First Cause of Action acted forcibly in apprehending and arresting/unreasonably seizing Mr. Jeanty.

257. Throughout this period, Mr. Jeanty was unlawfully, wrongfully, and unjustifiably held under arrest, unreasonably seized, deprived of liberty, and falsely charged.

258. The individually named defendants herein deliberately undertook these actions and their misconduct occurred without any fault or provocation on the part of Mr. Jeanty.

259. The individually named defendants herein acted under pretense and color of state law.

260. The individually named defendants herein acted in abuse of their powers and beyond the scope of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Mr. Jeanty of His constitutional rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

261. The individually named defendants' conduct was willful, wanton, and reckless.

262. Defendant Sanders and Noel actively participated in the decision-making process employed by the arresting officers. They repeatedly insisted, encouraged and directed the arresting officers to make an arrest despite the arresting officers originally decided no arrests were warranted.

263. As a direct and proximate result of the individually named defendants misconduct and abuse of authority detailed above, Mr. Jeanty sustained the damages hereinbefore alleged.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 – 4th and 14th Amendment, Failure to Intervene (Defendants Serrano, Willacy, Phillips, Souffrant, Lai, Aquino, Rodriguez, Enorme Chen, White, McCain, Aponte, Zapata, Mercado, Ngai, Cherenfant, Maher, Popo, Ortega and Pessoa.)**

264. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

265. At no subsequent point did any of the individually named defendants herein attempt to intervene and prevent the unlawful arrest, detention and interference of familial rights of or against Mr. Jeanty.

266. Mr. Jeanty had a constitutional right not to be detained and arrested by Defendants Serrano, Willacy, Phillips, Souffrant, Lai, Ortega, Pessoa, White, McCain, Aponte, Zapata, Mercado and Popo for the sole purpose of taking his child NAJ away from him and turning her over to her mother, Defendant Sanders without a warrant, reasonable suspicion and/or probable cause that a crime was committed or about to be committed by Mr. Jeanty.

267. Mr. Jeanty had a constitutional right to care for and not to be separated from NAJ by Defendants Serrano, Willacy, Phillips, Souffrant, Lai, , Ortega, Pessoa, White, McCain, Aponte, Zapata, Mercado and Popo.

268. Mr. Jeanty had a constitutional right not to be detained and arrested by Defendants Rodriguez, Enorme, Ngai, Cherenfant and Maher without reasonable suspicion or probable cause that Mr. Jeanty committed or was about to commit a crime.

269. Uniformed NYPD officers and School Safety Agents have an affirmative duty to ensure the lawfulness of interactions between their fellow members of service and civilians and to intervene where they observe another uniformed employee falsely arresting, detaining and interfering with the familial rights of a civilian.

270. The individually named defendants herein were present and witnessed other defendants falsely arrest/unreasonably seize, detain, and interfere with the familial rights of Mr. Jeanty.

271. The individually named defendants herein had a reasonable opportunity to intervene to

prevent the false arrest of and interference with familial rights of Mr. Jeanty

272. The individually named defendants herein failed to take any action or make any effort to intervene, halt the unlawful actions of their fellow police officers or agents, or protect Mr. Jeanty.

273. Defendants Serrano, Willacy, Phillips, Souffrant, Lai, , Ortega, Pessoa, White, McCain, Aponte, Zapata, Mercado and Popo were aware of each other's unlawful acts of detaining, arresting and taking NAJ from Mr. Jeanty without reasonable suspicion or probable cause that any crime was committed.

274. Named Defendants knew Defendant Sanders did not have legal custody of NAJ.

275. Named Defendants were aware that NAJ was not harmed or in danger.

276. Named Defendants intended to take NAJ away from Mr. Jeanty for no legitimate reason.

277. Named Defendants intended to aid Defendant Sanders avoid arrest for violating an active order of protection.

278. Named Defendants read the 3/2/2022 visitation order and order of protection and refused to give them their plain and obvious meaning.

279. Defendants Rodriguez, Enorme, Ngai, Cherenfant and Maher were aware of each other's unlawful acts of detaining and arresting Mr. Jeanty without reasonable suspicion or probable cause that any crime was committed. Named Defendants read a 9/27/2022 Order which allowed Mr. Jeanty to have incidental contact with Defendant Sanders to pick up NAJ.

280. Named Defendants chose to accept Defendant Sanders' false statement that the 9/27/2022 Order was expired despite the Order having no expiration date. Named Defendants did not stop Mr. Jeanty's arrest but instead convinced and encouraged each other to arrest Mr. Jeanty.

281. Defendants Aquino and Chen failed to further investigate the circumstance regarding Defendant Sanders' complaint. Named Defendants failed to obtain further information from NYPD records which would have demonstrated Defendant Sanders' motive to fabricate criminal allegations against Mr. Jeanty.

282. The named police officer and school safety agents had ample opportunity to intervene and stop the unlawful detention, arrest and interference of familial rights of Mr. Jeanty but failed to do so.

283. The individually named defendants herein failure to intervene proximately caused the violation of Mr. Jeanty constitutional rights. As a direct and proximate result Mr. Jeanty sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
**U.S.C. § 1983 – 14th Amendment Familial Rights, Interference with Intimate Association, Intentional Interference with Custodial Rights (Serrano, Phillips, Souffrant, Willacy, Lai, Ortega and Pessoa)**

284. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

285. Plaintiff has a fundamental, constitutionally protected liberty interest in the companionship, care, custody, and management of His daughter NAJ. Pursuant to the Fourteenth Amendment, Plaintiff is entitled to the preservation of His intimate and private familial relationship with NAJ, free from unjustified government intrusion.

286. The individually named defendants herein deprived Mr. Jeanty of His parental rights and constitutional rights to familial and intimate association as to NAJ.

287. The individually named defendants herein intentionally interfered with Plaintiff 's relationship with NAJ. Defendants, some who are "peace officers" purposefully targeted Mr. Jeanty's bond with NAJ literally ripping NAJ away from Mr. Jeanty for no lawful reason and without justification and then forcing them to be separated from one another.

288. This already egregious conduct was made worse by the Supreme Court's temporary order of protection.

289. Defendant Sanders was allowed to pick up NAJ at any time without interference from anyone. She was allowed to enter the building through any door and walk throughout the building. She was given keys to open and close doors. She was allowed to remain at PS3 despite the fact that it was known that Defendant Sanders had an Order of Protection and was not allowed at the school when Mr. Jeanty was present.

290. Noel caused Mr. Jeanty and NAJ to be unlawfully detained. She caused Mr. Jeanty to be unlawfully arrested. She caused Mr. Jeanty to be separated from and to be kept away from NAJ by the police.

291. Defendants Serrano, Phillips, Souffrant, Willacy, Lai, , Ortega, Pessoa,and Noel's actions violated clearly established constitutional law.

292. No reasonable government official in 2022 would have believed that the NAJ forced removal from Mr. Jeanty and repeatedly refusing to allow Mr. Jeanty to pick up NAJ was lawful.

293. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Jeanty sustained the damages hereinbefore alleged.

**FOURTH CAUSE OF ACTION**
**State/Common Law False Arrest / False Imprisonment**
**(Defendants City of New York, Serrano, Willacy, Phillips, Souffrant, Lai, (SSA) M. White, Mercado, Aponte, McCain, Zapata, Ortega, Pessoa and Sanders.)**

294. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

295. By reason of the foregoing, and by wrongfully and illegally arresting, detaining, and imprisoning Mr. Jeanty, the individually named defendants herein, under pretense and color of state law and acting within the scope of their employment as NYPD officers,

school safety agents falsely arrested, unreasonably seized, and falsely imprisoned Mr. Jeanty.

296. Defendants' wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Mr. Jeanty were intentional and carried out with Mr. Jeanty's knowledge but without His consent.

297. The individually named defendants herein lacked probable cause or any other basis in law to arrest, unreasonably seize, or imprison Mr. Jeanty. At all relevant times, Defendants acted forcibly in detaining and arresting Mr. Jeanty.

298. The individually named defendants herein acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Mr. Jeanty's rights, privileges, welfare, and well-being, and are guilty of egregious and gross misconduct toward Mr. Jeanty.

299. The City of New York as employer of Defendants Serrano, Willacy, Phillips, Souffrant, Lai, , Ortega, Pessoa, (SSA) M. White, Mercado, Aponte, McCain and Zapata, are responsible for their wrongdoing under the doctrine of Respondeat Superior.

300. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Jeanty sustained the damages hereinbefore alleged.

**FIFTH CAUSE OF ACTION**
**Violation of NYC Administrative Code Chap. 8 Sec 8-803 (Defendants Serrano, Willacy, Phillips, Souffrant, Lai, (SSA) M. White, Mercado, Aponte, McCain, Mercado, Zapata, Ortega and Pessoa.)**

301. Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

302. The individually named defendants herein are police officer or school safety agent within the NYPD.

303. The individually named defendants herein arrested Mr. Jeanty without reasonable suspicion and without probable cause.

304. As a direct and proximate result of the City's negligence, Mr. Jeanty sustained the damages hereinbefore alleged.

305. Each and every named Defendant in this action herein are jointly and severally liable for all damages.

**SIXTH CAUSE OF ACTION**
**Respondeat Superior (City of New York)**

306. Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

307. Defendant City of New York is vicariously liable for its employees grossly negligent and/or intentional acts without cause or justification while in the course of Defendants employment as those acts were committed within the scope of Defendants employment with Defendant City of New York.

308. Defendant City of New York is vicariously liable for its employees' grossly negligent and/or intentional acts without cause or justification while in the course of Defendants employment as those acts were generally foreseeable and a natural consequence of the employment with Defendant City of New York.

309. Defendant City of New York is vicariously liable for its employees grossly negligent and/or intentional acts without cause or justification while in the course of Defendants employment as those acts could have been reasonably anticipated by defendant City of New York

310. Therefore as a result of the foregoing Plaintiff was injured.

**SEVENTH CAUSE OF ACTION**
**Abuse of Process**

**(Defendants Serrano, Willacy,  Phillips, Souffrant, Lai, , Ortega, Pessoa,  (SSA) M. White, Mercado, Aponte, McCain, Mercado, Zapata, Ortega and Pessoa.)**

311. The named defendants arrested and charged Mr. Jeanty for the sole purpose of justifying taking NAJ from His custody and turning her over to Defendant Sanders.

312. The named defendants arrested and charged Mr. Jeanty because Mr. Jeanty would not listen to their commands to turn NAJ over to them, Defendant Sanders or Noel.

313. They knew and were informed that they were responding to a non-criminal domestic dispute between two parents over custody of their child.

314. They knew they had no legitimate crimes to charge Mr. Jeanty with so they fabricated and manufactured three false charges.

315. Defendant Willacy and Phillips created false documents, (Domestic Incident Report, (DIR) Suspected Child Abuse and Maltreatment (SCAM reports)) in support of these fabricated charges.

316. Named Defendants falsely charged Mr. Jeanty and had him sent to central booking, processed and sent to face a judge who would issue a full stay away order of protection in favor of Defendant Sanders and NAJ.

317. They knew that a stay away order of protection would require Mr. Jeanty to stay away from NAJ for an extended period of time.

318. They knew that taking NAJ from Mr. Jeanty would cause Him mental pain and suffering.

## EIGHTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – 4th and 14th Amendment, Malicious Prosecution
### (Defendants City of New York, Aquino, Phillips and Rodriguez)

319.  Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

320. The individually named Defendants; Aquino, Phillips and Rodriguez herein maliciously and without justification commenced criminal proceedings against Mr. Jeanty.

321. The individually named Defendants; Aquino, Phillips and Rodriguez herein charged Mr. Jeanty with crimes falsely, maliciously, in bad faith, and without probable cause.

322. The individually named Defendants; Aquino, Phillips and Rodriguez herein knew they lacked probable cause to prosecute Mr. Jeanty because they knew he had done nothing wrong and should not have been arrested, and that no reliable information suggested he had committed any offense or violation of law.

323. Defendant Aquino executed and signed a criminal court complaint on 1/9/2021 and forwarded same to the KCDA charging Mr. Jeanty with 5 alleged crimes:

PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE,
PL 240.26(3) HARASSMENT IN THE SECOND DEGREE,
PL 120.14(3) MENACING IN THE SECOND DEGREE,
PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE,
PL 240.26(2) HARASSMENT IN THE SECOND DEGREE.

324. Defendant Phillips executed and signed a criminal court complaint on 9/26/22 and forwarded same to the KCDA charging Mr. Jeanty with 3 alleged crimes:

PL 195.05 OBSTRUCTING GOVERNMENTAL ADMINISTRATION IN THE SECOND DEGREE,
PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE,
PL 260.10(1) ENDANGERING THE WELFARE OF A CHILD.

325. Defendant Rodriguez executed and signed a criminal court complaint on 12/10/22 and forwarded same to the KCDA charging Mr. Jeanty with 3 alleged crimes:

PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE,

PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE,
PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE.

326. Defendants; Aquino, Phillips and Rodriguez lacked probable cause to charge and prosecute Plaintiff under each of the circumstances presented.

327. Defendants; Aquino, Phillips and Rodriguez had information and facts in their possession which they intentionally ignored and charged and prosecuted Mr. Jeanty

328. Defendant Aquino, Phillips and Rodriguez arrested and charged Mr. Jeanty to assist Defendant Sanders to gain an advantage in her Family Court case with Mr. Jeanty.in an attempt to justify their previous unconstitutional arrest of Mr. Jeanty.

329. Defendant Phillips charged and prosecuted Mr. Jeanty in retaliation for Mr. Jeanty's consistent refusal to agree to turn His child NAJ to the police, Charmaine Noel and/or Defendant Sanders as directed by the named Defendants in the 9/26/22 arrest.

330. Defendants; Aquino, Phillips and Rodriguez charged and prosecuted Mr. Jeanty

331. After each unlawful arrest and false charges being filed, Mr. Jeanty spent at least 24 plus hours in Central Bookings, under deplorable circumstances during a raging COVID-19 Pandemic apart from His three minor sons.

332. Mr. Jeanty was subjected to multiple Temporary Orders of Protection which themselves prohibited Mr. Jeanty to have access to or contact with NAJ.

333. Mr. Jeanty was further deprived of His liberty when He was ordered to appear in Court multiple times as follows:

as to the 1/8/2021 Arrest---4 appearances
as to the 6/11/2021 arrest---3 appearances
as to the 2/1/2022 arrest---6 appearances as
to the 6/9/2022 arrest--- 3 appearances as to
the 9/26/2022 arrest---5 appearance as to
the 12/10/2022 arrest---3 appearances.

334. For each and every unlawful arrest and malicious prosecution in ¶¶316 to 318, the charges

were all dismissed. No pleas were obtained. No convictions were obtained and the Orders of Protection against Mr. Jeanty were vacated.

335.   The individually named Defendants; Aquino, Phillips and Rodriguez herein acted under the pretense and color of state law.

336.      Defendants Aquino, Phillips and Rodriguez acted in abuse of their powers and beyond the scope and in excess of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Plaintiff of His constitutional rights secured by the and Fourteenth Amendments to the United States Constitution.

337.   Defendant Sanders encouraged, directed and directly influenced Defendants; Aquino, Phillips and Rodriguez to maliciously charge and prosecute Mr. Jeanty by providing them false information which they each independently knew was false information.

338.   The individually named Defendants; Aquino, Phillips and Rodriguez conduct herein was intentional, willful, wanton, and reckless.

339.   As a direct and proximate result of NYPD Defendants' misconduct and abuse of authority detailed above, Mr. Jeanty sustained the damages hereinbefore alleged.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a. Compensatory damages in an amount of $5,000,000 or an amount to be determined at trial;

b. Punitive damages against the individually named defendants in an amount to be determined at trial;

c. Reasonable fees and costs under 42 U.S.C. § 1988; and

d. Such other and further relief as this Court may deem just, proper and equitable.

Dated:

Queens, New York

_____  _____

Vladimir Jeanty, Plaintiff, Pro-se
PO Box 921173
Arverne, NY 11692
(516) 667-9231