**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

VLADIMIR JEANTY

        Plaintiff,

        -against-

THE CITY OF NEW YORK,  LT CARLOS SERRANO,
TAX ID #946236; PO ALI WILLACY, TAX ID #966905;
PO ASHLEY PHILLIPS, TAX ID #972872; PO JEAN
SOUFFRANT, TAX ID #958086; PO SHUNJIE LAI, TAX
ID #967155; PO JONATHAN AQUINO, TAX ID
#957337; PO GREGORY RODRIGUEZ, TAX ID
#973154; PO YURI ENORME TAX ID #956623;  PO
BENJAMIN CHEN, TAX ID #960362; SCHOOL SAFETY
AGENT MELANIE WHITE, TAX ID #343692; SCHOOL
SAFETY AGENT IAN MCCAIN, TAX ID #372038
SCHOOL SAFETY AGENT ELIZABETH APONTE,
TAX ID #353281; SCHOOL SAFETY AGENT JOSHUA
MERCADO, TAX ID #363829; SGT. GODWIN NGAI,
TAX ID #954175; PO LANDREY CHERENFANT, TAX
ID#946454; BRIAN MAHER, TAX ID #955113;  UNA P.
SANDERS;  SCHOOL  SAFETY  AGENT  YVONNE
POPO;  SCHOOL  SAFETY  AGENT  SUPERVISOR
RAUL ZAPATA, TAX ID #339713, PO ORLANDO
ORTEGA; PO JONATHAN PESSOA,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**CIVIL ACTION NO.:**

**1:23-cv-09472**

**THIRD AMENDED
COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiff, Vladimir Jeanty, pro-se for his Complaint alleges as follows:

## A. **PRELIMINARY STATEMENT**

1. Plaintiff Vladimir Jeanty, Pro-se brings this seemingly expansive action against multiple

   private individuals and New York City employees.

2. Mr. Jeanty will outline facts below of how these private individuals and City employees

3. individually and in concert violated Mr. Jeanty's Federal and State Constitutional Rights.

4. Additionally, certain City officials violated Mr. Jeanty's Civil Right under NYC Municipal and State laws.

5. The facts will demonstrate that all named Defendants callously, purposely, intentionally and knowingly violated Mr. Jeanty's rights and did so with malice.

6. The named Defendant violated Mr. Jeanty's rights simply because Mr. Jeanty is a black male who simply wanted/wants to be involved in raising His daughter who at all times relevant was under the age of 8.

7. Mr. Jeanty brings this action to address and vindicate the egregious and persistent violation of His rights by the named Defendants.

## B. <u>PARTIES</u>

8. Plaintiff Vladimir Jeanty (Hereinafter "Mr. Jeanty") is now a 50 year black male father of 4 who at all times relevant was a resident of New York. Mr. Jeanty has a child in common, NAJ, with Una P. Sanders. Mr. Jeanty at all times relevant lived in Far Rockaway New York.

9. Subject child NAJ is Mr. Jeanty and Una Sanders' now 7 ½ year old daughter. At all times relevant NAJ lived with her mother Una P. Sanders in Brooklyn, New York.

10. Defendant Una P. Sanders ("Sanders") is a 40 year old black woman. She is a mother of 4. She has a child in common, NAJ, with Mr. Jeanty. She lives at 230 Lott Ave., Apt 1I Brooklyn, New York.

11. Defendant City of New York (the "City") is a municipal corporation duly organized under the laws of the State of New York. At all times relevant hereto, the City, acting

through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters, including the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD and for ensuring that NYPD personnel obey the laws of the United States, the State of New York and the City of New York. Business address is City of New Yor, Corporation Counsel, 100 Church St. New York, NY 10007.

12. Defendant, Police Lieutenant Carlos Serrano, Tax ID #946236 , ("Serrano") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is NYPD TB Bus Enforcement Unit, 130 Livingston St., Brooklyn, NY 11201.

13. Defendant, Police Officer Ashley Phillips, Tax ID #972872, ("Phillips") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of her employment as such. Business Address is 79th Precinct, 263 Tompkins Ave, Brooklyn, NY 11216.

14. Defendant, Police Officer Ali Willacy, Tax ID #966905, ("Willacy") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business Address is 79th Precinct, 263 Tompkins Ave, Brooklyn, NY 11216.

15. Defendant, Police Officer Jean Souffrant, Tax ID #958086, ("Souffrant") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business Address is 79th Precinct, 263 Tompkins Ave, Brooklyn,

NY 11216.

16. Defendant, Police Officer Jonathan Pessoa, Tax ID #unknown, ("Pessoa") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business Address is 79th Precinct, 263 Tompkins Ave, Brooklyn.

17. Defendant, Retired Police Officer Orlando Ortega Tax ID #unknown, ("Ortega") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Last known business Address is 79th Precinct, 263 Tompkins Ave, Brooklyn,

18. Defendant, Police Officer Shunjie Lai, Tax ID #967155, ("Lai") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is NYPD TB Bus Enforcement Unit, 130 Livingston St., Brooklyn, NY 11201.

19. Defendant, Police Officer Gregory Rodriguez, Tax ID #973154, ("Rodriguez") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

20. Defendant, Police Officer Yuri Enorme, Tax ID #956623, ("Enorme") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

21. Defendant, Police Sergeant Godwin Ngai, Tax ID #954175, ("Ngai") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

22. Defendant, Police Officer Landrey Cherenfant, Tax ID#946454, ("Cherenfant") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

23. Defendant, Police Officer Brian Maher, Tax ID #955113, ("Maher") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 69th Precinct, 9720 Foster Ave, Brooklyn, NY 11236.

24. Defendant Police Officer Benjamin Chen, Tax ID #960362, ("Chen") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 115th Precinct, 92-15 Northern Blvd, Queens, NY 11372.

25. Defendant Police Officer Jonathan Aquino, Tax ID #957337 ("Aquino") was at all relevant times, a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address is 73rd Precinct, 1470 E New York Ave, Brooklyn, NY 11212.

26. Defendant, School Safety Agent Ian McCain, Tax ID #372038, ("McCain") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the

scope of his employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

27. Defendant, School Safety Agent Joshua Mercado Tax ID #363829, ("Mercado") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

28. Defendant, School Safety Agent Supervisor Raul Zapata, Tax ID #339713, ("Zapata") of the NYPD acting in the capacity of supervisor, agent, servant, and employee of the City, and within the scope of her employment as such. Business address, NYPD School Safety, Brooklyn  North Division, 850 Grand St., Brooklyn, NY 11211.

29. Defendant, School Safety Agent Melanie White, Tax ID #3436925, ("SSA M. White") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the scope of her employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

30. Defendant, School Safety Agent Elizabeth Aponte, Tax ID #353281 ("Aponte") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the scope of her employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

31. Defendant, School Safety Yvonne Popo Tax ID #XXXXX, ("Popo") of the NYPD acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. Business address, NYPD School Safety, Brooklyn North Division, 850 Grand St., Brooklyn, NY 11211.

### C. JURISDICTION AND VENUE

32. This action arises under the Fourth and Fourteenth Amendments to the United States

Constitution, 42 U.S.C. §§ 1983,1988, New York State law and New York City Administrative Code.

33. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367.

34. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the acts complained of occurred in the Eastern District of New York.

### D. JURY DEMAND

35. Plaintiff demands trial by jury.

### E. FACTUAL ALLEGATIONS

#### i. Conditions Precedent/Notice of Claim

36. Plaintiff served notices of claim on the City of New York on or about October 21, 2022 relating to the 9/26/2022 arrest, 1/4/2022 relating to the 6/11/2021 & 1/8/2021 arrests and on 4/29/2022 relating to the 2/1/2022 arrest.

37. At least thirty days have elapsed since the service of the notices of claim, and adjustment or payment of the claims has been neglected or refused.

38. This action has been commenced within one year and ninety days after September 26, 2022; the happening of the events, in part upon which the claims are based.

#### ii. New York Custody and Visitation Rights

39. In New York State Custody a Custody Order gives responsibility for the child's care and how the child is brought up to one or both of the child's parents or to someone else. There are two parts of custody: (1) legal custody and (2) physical custody. A New York court can make orders about the child's custody only until the child is 18 years old. The Court gives custody based on what is best for the child, this is called the "best interest of the child." If there is no court order, then both parents have equal rights to physical and legal

custody of the child[1].

40. In New York State whoever has legal custody has the right to make important decisions about a child's care such as medical care or religious upbringing. If the Judge gives joint legal custody, the parents make major decisions about the child together. It doesn't matter which parent the child lives with; both parents must agree on the decisions together. If the Judge gives one parent sole legal custody, only one parent has the right to make major decisions for the child.

41. In New York State whoever has physical custody, also known as residential custody, is responsible for the actual physical care and supervision of a child. If the Judge gives joint physical custody, the child lives with each parent for an equal amount of time. If the Judge gives sole physical custody, the child lives with this adult more than 50% of the time and this person is the custodial party and the noncustodial party will have visitation.

### iii.   Mr. Jeanty and Defendant Sanders' Family Court case

42. NAJ a female was born on 6/8/2016.

43. Mr. Jeanty had previously informed Defendant Sanders that he did not want to have any children with her.

44. Despite Mr. Jeanty's feelings toward Ms. Sanders Mr. Jeanty welcomed the birth of NAJ.

45. Mr. Jeanty accompanied Defendant Sanders to her prenatal doctor's appointments.

46. Mr. Jeanty was present at NAJ's birth.

47. Mr. Jeanty picked up Defendant Sanders and NAJ from the hospital.

48. Mr. Jeanty expressed to Defendant Sanders his desire to be in NAJ's life and to help raise her.

49. From birth to approximately March of 2017 everything was fine between Mr. Jeanty and Defendant Sanders.

50. In March of 2017 Defendant Sanders found out Mr. Jeanty was involved with another female.

51. Ms. Sanders began to refuse to allow Mr. Jeanty any contact with NAJ.

52. In April of 2018, Mr. Jeanty went to Queens County Family Court to file a visitation petition.

53. Mr. Jeanty was informed that he had to file in Kings County because NAJ was part of a Neglect proceeding in that Court.

54. Mr. Jeanty went to KCFC and found out for the first time that NAJ was part of Defendant Sanders' Article 10 Neglect Petition for allegedly leaving NAJ unsupervised at a McDonald in Brooklyn.

55. This neglect petition proceeding terminated in September of 2020 when defendant Sanders accepted an ACD disposition.

56. At all relevant times Mr. Jeanty was granted multiple variations of a visitation order which allowed Mr. Jeanty to visit with NAJ. Mr. Jeanty requested this visitation order because Defendant Sanders refused to allow Mr. Jeanty to spend any time with NAJ.

57. Mr. Jeanty is not and never was and absent dad.

58. As of April 2018, to present Mr. Jeanty and Defendant Sanders have pending cross-motions for custody of NAJ.

59. At all times relevant and from 6/8/2016 (NAJ birth) to 10/15/2023 neither Mr. Jeanty nor Defendant Sanders had legal custody of NAJ nor legal physical custody of NAJ by Court order or otherwise.

60. Mr. Jeanty and Defendant Sanders had equal legal rights to NAJ.

61. At all relevant times Mr. Jeanty had a Court issued visitation order.

62. On 10/16/2023 during an ex-parte proceeding Judge Caroline Cohen of KCFC granted

Defendant Sanders temporary custody of NAJ in part as a result of the events leading to the arrest of Mr. Jeanty on 9/26/2022.

63. The City of New York through the NYC DOE provides facilities, equipment and staffing.

64. The City of New York through the NYC NYPD provides School Safety Agents (SSA) as security at its DOE facilities.

65. The SSA's are under the direct supervision and control of the CAMBA program Director.

66. At PS3, Bedford Village School, Defendant Noel was the program director for the year 2022 to 2023.

**iv. Events and Facts of 1/8/2021 Arrest as to Defendants Chen and Aquino**

67. On or about an unknown date and time Defendant Sanders made a complaint with Defendant Aquino and Chen.

68. Defendant Sanders alleged that Mr. Jeanty violated a temporary limited order of protection dated 12/14/2020 issued by a Family Court Referee.

69. Defendant Sanders alleged that on 12/28/2020 Mr. Jeanty followed, scared, alarmed and annoyed her after exchanging NAJ after a visit.

70. Defendant Sanders reported:

> "After [Mr. Jeanty] transferred physical custody of [NAJ] to [Defendant Sanders], [Mr. Jeanty] did follow [Defendant Sanders] for a block and impede [Defendant Sanders'] path causing [Defendant Sanders] to step and walk around [Mr. Jeanty]."

71. Defendant Aquino and Chen had no further information from Defendant Sanders that Mr.Jeanty followed her or followed her with the intent of harassing annoying or alarming Defendant Sanders.

72. Mr. Jeanty could not possibly or physically follow Defendant Sanders and at the same time impede her path. Clearly Defendant Sanders was walking behind and following Mr.

Jeanty causing her to step and walk around Mr. Jeanty.

73. Defendant Sanders alleged that on 1/6/2021 Mr. Jeanty repeatedly texted Defendant Sanders thereby alarming and annoying her.

74. Defendant Sanders did provide a copy of these alleged text messages, Defendant Aquino and Chen read them and would have understood that they were messages sent via text during a back and forth conversation.

75. Mr. Jeanty did not harass, menace, intimidate or threaten Defendant Sanders.

76. Mr. Jeanty was simply expressing his personal views of Defendant Sanders to Defendant Sanders via text in response to defendant Sanders' text messages to Mr. Jeanty.

77. Nothing Mr. Jeanty texted Defendant Sanders or did constituted physical menace or placed Defendant Sanders in fear of death, imminent serious physical injury or physical injury.

78. Nothing Defendant Sanders reported to Defendant Aquino constituted evidence of any crime or wrongdoing towards or against Defendant Sanders.

79. Mr. Jeanty did not violate the limited order of protection.

80. Defendant Aquino and Chen were aware that Mr. Jeanty and defendant Sanders were in a Family Court dispute.

81. Defendant Aquino and Chen were aware that there were approximately 20 plus Domestic Incident Reports filed by Mr. Jeanty and Defendant Sanders against each other.

82. Defendants Aquino and Chen arrested Mr. Jeanty without His consent.

83. Defendant Aquino and Chen did not have reasonable suspicion that a crime occurred.

84. Defendant Aquino and Chen arrested Mr. Jeanty without probable cause.

85. Defendant Aquino charged Mr. Jeanty with:

PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE
PL 240.26(3) HARASSMENT IN THE SECOND DEGREE

PL 120.14(3) MENACING IN THE SECOND DEGREE
PL 215.50(3) CRIMINAL CONTEMPT IN THE SECOND DEGREE
PL 240.26(2) HARASSMENT IN THE SECOND DEGREE

86. Defendant Aquino intentionally made up and exaggerated these charges to arrest Mr. Jeanty and prosecute him.

87. Defendant Aquino arrested and charged Mr. Jeanty in an attempt to stop Mr. Jeanty from expressing His views and opinions of Defendant Sanders.

88. Defendant Aquino falsely reported to the Kings County ECAB ADA that Mr. Jeanty menaced Defendant Sanders after exchanging NAJ.

89. Defendant Aquino falsely reported to the Kings County ECAB ADA that Mr. Jeanty harassed Defendant Sanders by texting defendant Sanders repeatedly.

90. There were no repeated text messages from Mr. Jeanty to Defendant Sanders.

**v. Events and facts of 9/26/2022 arrest as to Defendants Sanders, Serrano, Phillips, Willacy, Souffrant, Lai, (SSA) M. White, McCain, Aponte, Mercado, Zapata, Popo, Ortega Pessoa.**

91. On 9/24/2022 Mr. Jeanty texted Defendant Sanders and asked if she would allow NAJ to have an extended visit with Mr. Jeanty due to the 4-day holiday from 9/24/22 to 9/27/22.

92. Defendant Sanders refused to agree.

93. Mr. Jeanty informed Defendant Sanders that if she was not spending this time with NAJ, and if she sent NAJ to school Mr. Jeanty would go to the NAJ's school and pick her up.

94. Defendant Sanders sent NAJ to school to participate in Jewish Holiday event.

95. At approximately 10am Mr. Jeanty went to NAJ's school, PS3 50 Jefferson St, Brooklyn NY to pick her up.

96. At approximately 8:30am on 9/26/2022, prior to picking up NAJ Mr. Jeanty called the school and spoke to Defendant Noel and asked if NAJ was there.

97. Defendant Noel said 'yes'. Mr. Jeanty informed Defendant Noel that he would be picking NAJ up.

98. Defendant Noel called Defendant Sanders and informed her that Mr. Jeanty was on His way to pick up NAJ.

99. Once at PS3, at approximately 10:00am on 9/26/2022, Mr. Jeanty informed the school safety agent Yvonne Popo and Defendant Noel that he was there to pick up NAJ.

100. Defendant Noel came out with a copy of Mr. Jeanty's 3/2/2022 temporary order of visitation and informed Mr. Jeanty that he could not pick NAJ because the visitation order did not allow Mr. Jeanty to pick up NAJ. Exhibit #1)

101. Mr. Jeanty informed Defendant Noel that she was aware that Mr. Jeanty was NAJ's father and that Mr. Jeanty's name was on NAJ's DOE blue card as the only other person allowed to pick up NAJ other than Defendant Sanders.

102. Defendant Noel was aware that Mr, Jeanty's name was on the NYC DYCD application for NAJ.

103. Mr. Jeanty informed Defendant Noel that She misunderstood the visitation order and that She should not involve herself in Mr. Jeanty and Defendant Sanders' personal business.

104. Mr. Jeanty informed Defendant Noel that Defendant Sanders did not have any Court order granting her legal custody of NAJ and she therefore could not tell anyone not to allow Mr. Jeanty to pick up their daughter NAJ.

105. There were no orders of protections against Mr. Jeanty relating to NAJ.

106. Defendant Noel continued to refuse to bring NAJ to Mr. Jeanty.

107. Mr. Jeanty asked if He could see NAJ to make sure she was alright.

108. Defendant Noel agreed to let Mr. Jeanty see NAJ.

109. When Defendant Noel brought NAJ out, Mr. Jeanty picked her up and informed Defendant Noel that they were leaving and where should he sign NAJ out.

110. Mr. Jeanty began to attempt to exit the building.

111. Defendant Noel yelled to the school safety agents Defendants (SSA) M. White, McCain, Zapata, Aponte, Mercado to lock the doors and not allow Mr. Jeanty to leave.

112. Defendant Noel directed Defendants (SSA) M. White, McCain, Zapata, Aponte, Mercado to detain Mr. Jeanty and to arrest Mr. Jeanty if He left the building.

113. Defendant Noel attempted to grab NAJ by the arm out of Mr. Jeanty's hands.

114. Defendant McCain a black male School Safety Agent grabbed Mr. Jeanty and informed Mr. Jeanty if He left the school he would be arrested.

115. Mr. Jeanty escaped SSA McCains grasp and walked down the stairs in the vestibule.

116. (SSA) M. White, Aponte and Zapata stood in front of the building 3 doors to block Mr. Jeanty from leaving. (Exhibit #2).

117. Mr. Jeanty attempted to exit through the doors but SSA White, Aponte or Zapata pushed against NAJ's back to block Mr. Jeanty.

118. Mr. Jeanty turned around and attempted to exit backwards and again SSA White, Aponte or Zapata pushed against Mr. Jeanty's back.

119. Mr. Jeanty repeatedly asked to be let out and was refused.

120. Mr. Jeanty was repeatedly told by the school safety agents that if He released NAJ he could leave the building.

121. Mr. Jeanty sat down and called 911 for assistance.

122. SSA Popo and Charmaine Noel were standing at the top of the staircase blocking that exit as Defendant Noel was telling her that Mr. Jeanty could not pick up NAJ because of a visitation order and it was not his visitation day.

123. School Safety Agent Yvonne Popo called 911 at the direction of Defendant Noel and falsely reported Mr. Jeanty was unlawfully trying to pick up NAJ from school and leave

and that Mr. Jeanty was an irate parent.

124. SSA Popo did not read the order.

125. Mr. Jeanty was being held against his will.

126. The 911 radio and sprint report indicated in part:

> "MOTHER AND FATHER CUSTODIAL TO THE LOC D1791" and "AUTH OF BROOKLYN NORTH PLATOON COMMANDER ---STS FATHER IS CHILD TO LEAVE WITH THE CHILD--PARENT ONLY HAS VISITIATION NO CUSTODIAL---NO WPNS---NO INJ--MB RED SHIRT BLK PANTS---THIN BUIILT---130 LBS 6 FT-----REQ ETA PLEASE D1791"

127. Defendant Noel called Defendant Sanders again and told her to hurry up to PS3 because Mr. Jeanty was trying to take NAJ.

128. Defendant Sanders had an active stay away order of protection which required Defendant Sanders to stay away from any location Mr. Jeanty was present.

129. Defendants Willacy, Phillips and Souffrant were the first police officer to arrive on scene.

130. Defendants Serrano and Lai arrived approximately 20 minutes after.

131. Defendants Willacy, Phillips and Souffrant spoke to Defendant Sanders and various school safety agents.

132. Defendants Willacy and Phillips correctly told Defendant Sanders that since neither parents had custody Mr. Jeanty could pick up NJ.

133. Defendants Willacy and Phillips allowed Defendants Sanders to change their mind.

134. Defendants Serrano, Phillips, Willacy, Souffrant, Ortega, Pessoa, Lai, (SSA) M. White, McCain, Zapata, Aponte, Mercado and Noel were aware of a valid temporary stay away order of protection against Defendant Sanders in favor of Mr. Jeanty.

135. Defendant Noel knowingly summoned Defendant Sanders to Mr. Jeanty's location.

136. The Police Officer defendants allowed defendant Sanders to remain where Mr. Jeanty

was despite there being no emergency regarding NAJ and a stay away order of protection in place against Defendant Sanders.

137. Defendant Sanders came to PS3 despite knowing Mr. Jeanty was there and she was required to stay away.

138. She stood outside the doors.

139. Mr. Jeanty sat in a seat with NAJ on his lap.

140. Defendant Noel called Defendant Sanders multiple times to ensure Defendant Sanders that Mr. Jeanty would not be allowed to leave with NAJ.

141. After speaking to Defendant Sanders and other school safety agents Defendant Serrano immediately and in an aggressive manner approached Mr. Jeanty and told Mr. Jeanty let go of NAJ and that He could not leave with her.

142. Defendant Sanders knowingly and falsely told Defendant Noel she had full legal custody of NAJ.

143. Defendant Sanders told Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai that NAJ lived with her and that Mr. Jeanty was not allowed to pick her up from PS3.

144. Defendant Sanders knowingly and falsely told Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai that Mr. Jeanty was not allowed to pick up NAJ because of a visitation order and because NAJ lived with her.

145. Defendant Sanders informed Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai that She and Mr. Jeanty were scheduled to have a trial for legal custody of NAJ.

146. Defendant Sanders never provided Defendants Noel, Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai a legal custody Court Order in her favor.

147. Mr. Jeanty explained to Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai that He was NAJ's dad, and he was there to pick her up, He informed Defendant Sanders, His name was on the DOE blue Card and that He and Defendant Sanders had the same right to NAJ because there was no custody order in place just a visitation order in Mr. Jeanty's favor.

148. Defendant Serrano had a private meeting with Defendant Noel.

149. Defendant Noel knowingly and falsely informed Defendant Serrano that Mr. Jeanty was not allowed to pick up NAJ from PS3.

150. Defendant Noel knowingly and falsely informed Defendant Serrano that Defendant Sanders had custody of NAJ.

151. Defendants Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai read the temporary order of visitation and insisted that the visitation order did not allow Mr. Jeanty to pick up NAJ and that because NAJ lived with Defendant Sanders, Defendant Sanders therefore had custody of NAJ.

152. Mr. Jeanty repeatedly asked if he could leave with NAJ, Defendants Serrano, Phillips, Souffrant, Willacy and Lai told Mr. Jeanty 'NO'.

153.      Mr. Jeanty stood up in an attempt to leave and Defendants Serrano, Phillips, Souffrant Willacy, Lai and other NYPD officers quickly surrounded Mr. Jeanty and NAJ and forced Mr. Jeanty to sit down.

154. Mr. Jeanty repeatedly asked if he was under arrest and was repeatedly told 'NO'.

155. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai demanded that Mr. Jeanty release NAJ to the custody of Defendant Noel.

156. Mr. Jeanty refused to release NAJ to Defendant Noel.

157. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai demanded Mr.

Jeanty release NAJ to Defendant Phillips.

158. Mr. Jeanty refused to release NAJ to Defendant Phillips.

159. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai knew and saw that the entire time NAJ was in Mr. Jeanty custody and control she was not harmed, hurt, in danger or in need of medical assistance. NAJ was fine. There was no emergency.

160. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai told Mr. Jeanty if He wanted to leave Mr. Jeanty simply needed to release NAJ to them or Defendant Noel.

161. Mr. Jeanty informed Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai that if they or Defendant Sanders produced an order of custody in Defendant Sanders' behalf Mr. Jeanty would gladly turn NAJ to Defendant Sanders.

162. No custody order was produced because none existed.

163. At various times NAJ cried because she was scared of all the commotion caused by the police around Her and Mr. Jeanty. Mr. Jeanty was able to console her and explain to her what was going on and let her know everything would be alright.

164. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai had no reason to detain Mr. Jeanty and NAJ.

165. Defendants Serrano, Phillips, Souffrant, Willacy and Lai had no reason to arrest

166. Mr. Jeanty.Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai arrested Mr. Jeanty so that NAJ could be turned over to Defendant Sanders and Defendant Noel.

167. At some point NAJ wanted to use the bathroom.

168. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai demanded that Mr. Jeanty turn NAJ over to Defendant Phillip so she could take NAJ to the bathroom.

169. Mr. Jeanty refused and asked if He could take NAJ to the bathroom...Defendant Serrano said 'NO' and refused to allow Mr. Jeanty to take NAJ to the bathroom.

170. Defendant Serrano changed His mind later and told Mr. Jeanty he could take NAJ to the bathroom. Mr. Jeanty took NAJ to the bathroom.

171. Upon returning to his seat, Defendant Serrano informed Mr. Jeanty he would be put under arrest.

172. Defendants Serrano, Souffrant, Willacy, Ortega, Pessoa and Lai forcibly held Mr. Jeanty' legs and pried Mr. Jeanty's arms open, and Defendant Phillips forcibly removed NAJ from Mr. Jeanty's custody and control without his permission.

173. Defendant Phillips took NAJ away from Mr. Jeanty.

174. Defendant Phillips told NAJ that what Mr. Jeanty did was wrong.

175. Defendant Willacy told Mr. Jeanty and NAJ that Mr. Jeanty was a bad parent and did not deserve to have custody of NAJ.

176. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai arrested Mr. Jeanty for allegedly violating:

PL 195.05 Obstructing Governmental Administration
PL 215.50(3) Criminal Contempt
PL 260.10(1) Endangering the Welfare of a Child.

177. Mr. Jeanty did not endanger NAJ.

178. The only danger to NAJ were Defendants Serrano, Phillips, Souffrant, Willacy, Lai, Noel and other police officers.

179. Mr. Jeanty did not and could not violate the KCFC visitation order which was issued in Mr. Jeanty's favor and Defendant Sanders did not have legal custody or legal physical custody of NAJ.

180. Mr. Jeanty did not obstruct any governmental administration as Defendants Serrano,

Phillips, Souffrant, Willacy and Lai unlawfully detained and arrested Mr. Jeanty for no legal reason.

181. Despite asking multiple time if He could leave with NAJ, Mr. Jeanty and NAJ were unlawfully detained for approximately 4 hours and not allowed to leave the building.

182. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai arrested Mr. Jeanty for allegedly violating PL 195.05 Obstructing Governmental Administration in 2nd Degree by falsely alleging that Mr. Jeanty interfered with an official function.

Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai were not performing any official function because they responded to Mr. Jeanty's 911 call with the intent of taking NAJ from Mr. Jeanty and turning her over to Defendants Sanders and Noel for no legal reason.

183. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai arrested Mr. Jeanty for allegedly violating PL 260.10(1) Endangering the Welfare of a Child by falsely claiming that Mr. Jeanty would not allow NAJ to use the bathroom.

184. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai knew Defendant Serrano refused to allow Mr. Jeanty to take NAJ to the bathroom. Defendant Serrano specifically only wanted Defendant Phillips to take NAJ to the bathroom, which Mr. Jeanty refused.

185. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai arrested Mr. Jeanty for allegedly violating PL 215.50(3) Criminal Contempt in the 2nd Degree by falsely alleging that Mr. Jeanty violated His own Family Court visitation order.

186. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai knew that Defendant Sanders did not have any court issued order of custody for NAJ.

187. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai knew that at all

times during this event Mr. Jeanty was not in the presence of Defendant Sanders. Mr. Jeanty was inside and Defendant Sanders was outside.

188. Defendant Willacy filed a false report alleging that Mr. Jeanty made threats against Defendant Sanders. Defendant Sanders was not in the same location as Mr. Jeanty.

189. Defendant Willacy falsely marked on a police report that there was an active stay away Order of protection for Mr. Jeanty. There was one for Defendant Sanders.

190. Defendants Willacy and Phillips falsely reported to KCDA ECAB that Mr. Jeanty threatened Defendant Sanders, violated an order of protection, hurt NAJ and resisted arrest.

191. Defendants Serrano, Willacy, Phillips, Souffrant, Ortega, Pessoa and Lai never told Mr. Jeanty he was under arrest.

192. Defendants Willacy and Phillips processed Mr. Jeanty at the 79th Precinct.

193. Defendant Willacy executed a false Suspected Child Abuse or Maltreatment Report (SCAM Report) falsely claiming that He attempted to lawfully arrest Mr. Jeanty and that Mr. Jeanty put NAJ at risk of Personal injury. He submitted same to NYS OCFS.

194. Defendant Willacy falsely reported to ACS on 9/27/22 after Mr. Jeanty was arraigned that Mr. Jeanty used NAJ as a shield to avoid arrest and subjected NAJ to personal injury.

195. On 9/27/22 Defendant Willacy falsely reported to ACS:

On 9/26/22, the father (Vladmir) made verbal threats towards the mother (Una) in the presence of Nyasia (6). The father then forcibly held onto Nyasia and used her as a shield to prevent his arrest. Nyasia did not sustain any injuries during the incident. The role of the mother is unknown.

The incident occurred at the school. There is currently a court order for visitation. The father was attempting to violate this order by removing Nyasia from the school. The school did not allow this and called law enforcement. The father made verbal threats towards the mother and stated she was going to get what is coming to her. The father then forcibly grabbed Nyasia and used her as a shield to prevent himself from getting arrested by NYPD. The father would take her

and shuffle from side to side. The father refused to let Nyasia go and law enforcement had to remove Nyasia from him. The father was arrested for violating the order of protection. The source's badge number is 12365. There are no children under 1 in the home.

The father is currently in police custody. Nyasia is currently with the mother.

196. Defendant Willacy took a report from Defendant Sanders that He knew was false because Ms. Sanders was not present in the location where Mr. Jeanty and NAJ were.

197. Ms. Sanders knowingly executed and swore to a false DIR in support of Mr. Jeanty being falsely arrested. She was not present in the location where Mr. Jeanty and NAJ were.

198. Defendant Phillip falsely reported that Mr. Jeanty threatened Defendant Sanders. Defendant Sanders was not in the same location as Mr. Jeanty and NAJ.

199. Mr. Jeanty never consented to NAJ being taken from Him and turned over to Defendants Sanders or Noel.

200. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai did not have reasonable suspicion to detain or arrest Mr. Jeanty.

201. Defendants Serrano, Phillips, Souffrant, Willacy, Ortega, Pessoa and Lai did not have probable cause to arrest Mr. Jeanty.

202. As a result of Mr. Jeanty's arrest, Mr. Jeanty was separated from NAJ for an unreasonable extended period of time.

**vi.  Events and facts of 12/10/2022 arrest as to Defendants Sanders, Ngai, Rodriguez, Enorme, Cherenfant and Maher**

203. On 12/10/2022 Mr. Jeanty went to pick up NAJ for her Court ordered scheduled visit.

204. Defendant Sanders called 911 complaining Mr. Jeanty was violating a Full Order of Protection dated 9/27/2022 requiring Mr. Jeanty to stay away from and to not communicate with, harass, menace, intimidate or threaten Defendant Sanders and NAJ.

205. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher arrived at Aprils Dance-n-

Feet located at 9411 Ave L Brooklyn NY.

206. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher encountered Mr. Jeanty outside and Defendant Sanders waiting inside the lobby.

207. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher each spoke to Mr. Jeanty and Defendant Sanders about the 911 call.

208. Defendant Sanders told Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher that Mr. Jeanty texted her; stating in a domestic incident report (DIR):

> "Vladimir keep texting me about stuff that have nothing to do with emergency or medical. He text me about a coat, Xmas, call, and what he sent to lawyers. He do not suppose to text about non-emergency and non medical."

209. Defendant Rodriguez wrote in the DIR:

> "At TPO, C/V state Def't was at scene for prearranged pick up of daughter. C/V states court order only allows def't to contact regarding emergencies. Def't contacted about request of making sure daughter has a jacket."

210. Defendant Sanders confused a Full Order of Protection against Herself as if it were against Mr. Jeanty in ¶222.

211. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher were shown the 9/27/2022 Full Order of Protection issued by Kings County Criminal Court Judge Haniff against Mr. Jeanty.

212. The 9/27/2022 FOP stated in part:

> [99] Observe such other conditions as are necessary to further the purposes of protection: "SUBJECT TO ANY SUBSEQUENT AND EXISTING SUPREME COURT ORDERS AND/OR FAMILY COURT ORDERS RE: CUSTODY & VISITATION."

213. Plaintiff provided Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher a copy of an existing 2/4/2022 Kings County Family Court CUSTODY & VISITATION

ORDER signed by Judge Caroline Cohen which stated:

> "ORDERED that Mr Vladimir Jeanty may have incidental contact and communication with Ms. Una Sanders to facilitate contact and visitation between Mr Jeanty and the subject child, Nyasia Jeanty, DOB 6/8/2016."

214. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher read both orders and all the text Mr. Jeanty sent Defendant Sanders and decided that Mr. Jeanty did not violate the 9/27/2022 FOP.

215. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher went to Defendant Sanders that Mr. Jeanty would not be arrested.

216. Defendant Sanders became angry and convinced Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher that they should arrest Mr. Jeanty because the 2/4/2022 Family Court order was not valid and expired.

217. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher believed Defendant Sanders and decided to arrest Mr. Jeanty despite being clearly able to verify that the 2/4/2022 Family Court Order was valid and unexpired.

218. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher told Mr. Jeanty was in violation of the 9/27/2022 FOP because He was not allowed to be around NAJ and that the 2/4/2022 Family Court order was not valid and expired.

219. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher knew Mr. Jeanty was allowed to pick up NAJ and to communicate with Defendant Sanders.

220. Defendant Sanders did not provide Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher any additional knew information to justify Mr. Jeanty's arrest.

221. Defendant Ngai, Rodriguez, Enorme, Cherenfant and Maher arrested and charged Mr. Jeanty in an attempt to stop Mr. Jeanty from expressing His views and opinions of Defendant Sanders.

222. Mr. Jeanty did not consent to be arrested.

223. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher did not have reasonable suspicion to detain or arrest Mr. Jeanty.

224. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher did not have probable cause to arrest Mr. Jeanty.

225. Defendant Rodriguez charged Mr. Jeanty knowing Mr. Jeanty committed no crimes.

226. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher failed to inform the Kings County District Attorney Intake that Mr. Jeanty had a Kings County Family Court order that permitted Mr. Jeanty to pick up NAJ and communicate with Defendant Sanders.

227. Defendants Ngai, Rodriguez, Enorme, Cherenfant and Maher omitted from their reports that Mr. Jeanty provided and there existed a family Court order which allowed Mr. Jeanty to have contact with and communicate with Defendant Sanders and NAJ.

   **vii.**
   **viii.    Damages Suffered**

228.      Mr. Jeanty suffered and continues to suffer extreme emotional distress, pain and suffering due to but not limited to; the repeated interference with parental rights, unlawful seizures, arrests, battery, incarcerations, malicious prosecutions of Mr. Jeanty by all named Defendants.

229. Plaintiff and His children suffered emotional distress, pain and suffering due to their separation caused by defendant's conduct.

**<u>FIRST CAUSE OF ACTION</u>**
**<u>42 U.S.C. § 1983 – 4th and 14th Amendment, False Arrest</u>**
**<u>(Defendants City of New York, Aquino, Chen, Serrano, Willacy, Phillips, Souffrant, Lai, Ortega, Pessoa, (SSA) M. White, Mercado, Aponte, McCain, Zapata, Popo, Rodriguez, Ngai and Sanders)</u>**

230. Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

231. Each named Defendant in the First Cause of Action are among other violations, responsible for the actions outlined in paragraphs 252 to 263

232. By the actions described above, the individually named defendants herein falsely or caused to be falsely arrested, unreasonably seized, falsely imprisoned, and unlawfully detained Mr. Jeanty.

233. The wrongful, unjustifiable, and unlawful apprehension, arrest, seizure, and detention of Mr. Jeanty was carried without any basis, without Plaintiff's consent, and without reasonable suspicion or probable cause.

234. The individually named defendants herein knew they lacked probable cause to arrest and unreasonably seize Mr. Jeanty, because they knew that Mr. Jeanty had not engaged in any unlawful conduct.

235. No reasonable officer would have believed there was probable cause to arrest or unreasonably seize Mr. Jeanty under the circumstances outlined in the preceding paragraphs.

236. At all relevant times the individually named defendants in the captioned First Cause of Action acted forcibly in apprehending and arresting/unreasonably seizing Mr. Jeanty.

237. Throughout this period, Mr. Jeanty was unlawfully, wrongfully, and unjustifiably held under arrest, unreasonably seized, deprived of liberty, and falsely charged.

238. The individually named defendants herein deliberately undertook these actions and their misconduct occurred without any fault or provocation on the part of Mr. Jeanty.

239. The individually named defendants herein acted under pretense and color of state law.

240. The individually named defendants herein acted in abuse of their powers and beyond the scope of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Mr. Jeanty of His constitutional rights secured by the Fourth and

Fourteenth Amendments to the United States Constitution.

241. The individually named defendants' conduct was willful, wanton, and reckless.

242. Defendant Sanders and Noel actively participated in the decision-making process employed by the arresting officers. They repeatedly insisted, encouraged and directed the arresting officers to make an arrest despite the arresting officers originally decided no arrests were warranted.

243. As a direct and proximate result of the individually named defendants misconduct and abuse of authority detailed above, Mr. Jeanty sustained the damages hereinbefore alleged.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 – 4th and 14th Amendment, Failure to Intervene**
**(Defendants Serrano, Willacy, Phillips, Souffrant, Lai, Aquino, Rodriguez, Enorme Chen, White (SSA), McCain, Aponte, Zapata, Mercado, Ngai, Cherenfant, Maher, Popo, Ortega and Pessoa.)**

244. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

245. At no subsequent point did any of the individually named defendants herein attempt to intervene and prevent the unlawful arrest, detention and interference of familial rights of or against Mr. Jeanty.

246. Mr. Jeanty had a constitutional right not to be detained and arrested by Defendants Serrano, Willacy, Phillips, Souffrant, Lai, Ortega, Pessoa, White, McCain, Aponte, Zapata, Mercado and Popo for the sole purpose of taking his child NAJ away from him and turning her over to her mother, Defendant Sanders without a warrant, reasonable suspicion and/or probable cause that a crime was committed or about to be committed by Mr. Jeanty.

247. Mr. Jeanty had a constitutional right to care for and not to be separated from NAJ by Defendants Serrano, Willacy, Phillips, Souffrant, Lai, , Ortega, Pessoa, White, McCain, Aponte, Zapata, Mercado and Popo.

248. Mr. Jeanty had a constitutional right not to be detained and arrested by Defendants Rodriguez, Enorme, Ngai, Cherenfant and Maher without reasonable suspicion or probable cause that Mr. Jeanty committed or was about to commit a crime.

249. Uniformed NYPD officers and School Safety Agents have an affirmative duty to ensure the lawfulness of interactions between their fellow members of service and civilians and to intervene where they observe another uniformed employee falsely arresting, detaining and interfering with the familial rights of a civilian.

250. The individually named defendants herein were present and witnessed other defendants falsely arrest/unreasonably seize, detain, and interfere with the familial rights of Mr. Jeanty.

251. The individually named defendants herein had a reasonable opportunity to intervene to prevent the false arrest of and interference with familial rights of Mr. Jeanty

252. The individually named defendants herein failed to take any action or make any effort to intervene, halt the unlawful actions of their fellow police officers or agents, or protect Mr. Jeanty.

253. Defendants Serrano, Willacy, Phillips, Souffrant, Lai, , Ortega, Pessoa, White, McCain, Aponte, Zapata, Mercado and Popo were aware of each other's unlawful acts of detaining, arresting and taking NAJ from Mr. Jeanty without reasonable suspicion or probable cause that any crime was committed.

254. Named Defendants knew Defendant Sanders did not have legal custody of NAJ.

255. Named Defendants were aware that NAJ was not harmed or in danger.

256. Named Defendants intended to take NAJ away from Mr. Jeanty for no legitimate reason.

257. Named Defendants intended to aid Defendant Sanders avoid arrest for violating an active order of protection.

258. Named Defendants read the 3/2/2022 visitation order and order of protection and refused to give them their plain and obvious meaning.

259. Defendants Rodriguez, Enorme, Ngai, Cherenfant and Maher were aware of each other's unlawful acts of detaining and arresting Mr. Jeanty without reasonable suspicion or probable cause that any crime was committed. Named Defendants read a 9/27/2022 Order which allowed Mr. Jeanty to have incidental contact with Defendant Sanders to pick up NAJ.

260. Named Defendants chose to accept Defendant Sanders' false statement that the 9/27/2022 Order was expired despite the Order having no expiration date. Named Defendants did not stop Mr. Jeanty's arrest but instead convinced and encouraged each other to arrest Mr. Jeanty.

261. Defendants Aquino and Chen failed to further investigate the circumstance regarding Defendant Sanders' complaint. Named Defendants failed to obtain further information from NYPD records which would have demonstrated Defendant Sanders' motive to fabricate criminal allegations against Mr. Jeanty.

262. The named police officer and school safety agents had ample opportunity to intervene and stop the unlawful detention, arrest and interference of familial rights of Mr. Jeanty but failed to do so.

263. The individually named defendants herein failure to intervene proximately caused the violation of Mr. Jeanty constitutional rights. As a direct and proximate result Mr. Jeanty sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
**U.S.C. § 1983 – 14th Amendment Familial Rights, Interference with Intimate Association, Intentional Interference with Custodial Rights**
**(Serrano, Phillips, Souffrant, Willacy and Lai)**

264. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

265. Plaintiff has a fundamental, constitutionally protected liberty interest in the companionship, care, custody, and management of His daughter NAJ. Pursuant to the Fourteenth Amendment, Plaintiff is entitled to the preservation of His intimate and private familial relationship with NAJ, free from unjustified government intrusion.

266. The individually named defendants herein deprived Mr. Jeanty of His parental rights and constitutional rights to familial and intimate association as to NAJ.

267. The individually named defendants herein intentionally interfered with Plaintiff 's relationship with NAJ. Defendants, some who are "peace officers" purposefully targeted Mr. Jeanty's bond with NAJ literally ripping NAJ away from Mr. Jeanty for no lawful reason and without justification and then forcing them to be separated from one another.

268. This already egregious conduct was made worse by the Supreme Court's temporary order of protection.

269. Defendant Sanders was allowed to pick up NAJ at any time without interference from anyone. She was allowed to enter the building through any door and walk throughout the building. She was given keys to open and close doors. She was allowed to remain at PS3 despite the fact that it was known that Defendant Sanders had an Order of Protection and was not allowed at the school when Mr. Jeanty was present.

270. Noel caused Mr. Jeanty and NAJ to be unlawfully detained. She caused Mr. Jeanty to be unlawfully arrested. She caused Mr. Jeanty to be separated from and to be kept away from NAJ by the police.

271. Defendants Serrano, Phillips, Souffrant, Willacy and Lai, and Noel's actions violated clearly established constitutional law.

272. No reasonable government official in 2022 would have believed that the NAJ forced

removal from Mr. Jeanty and repeatedly refusing to allow Mr. Jeanty to pick up NAJ was lawful.

273. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Jeanty sustained the damages hereinbefore alleged.

### FOURTH CAUSE OF ACTION
**State/Common Law False Arrest / False Imprisonment**
**(Defendants City of New York, Serrano, Willacy, Phillips, Souffrant, Lai, (SSA) M. White, Mercado, Aponte, McCain, Zapata, Popo, Ortega, Pessoa and Sanders.)**

274. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

275. By reason of the foregoing, and by wrongfully and illegally arresting, detaining, and imprisoning Mr. Jeanty, the individually named defendants herein, under pretense and color of state law and acting within the scope of their employment as NYPD officers, school safety agents falsely arrested, unreasonably seized, and falsely imprisoned Mr. Jeanty.

276. Defendants' wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Mr. Jeanty were intentional and carried out with Mr. Jeanty's knowledge but without His consent.

277. The individually named defendants herein lacked probable cause or any other basis in law to arrest, unreasonably seize, or imprison Mr. Jeanty. At all relevant times, Defendants acted forcibly in detaining and arresting Mr. Jeanty.

278. The individually named defendants herein acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Mr. Jeanty's rights, privileges, welfare, and well-being, and are guilty of egregious and gross misconduct toward Mr. Jeanty.

279. The City of New York as employer of Defendants Serrano, Willacy, Phillips, Souffrant,

Lai, , Ortega, Pessoa, (SSA) M. White, Mercado, Aponte, McCain and Zapata, are responsible for their wrongdoing under the doctrine of Respondeat Superior.

280. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Jeanty sustained the damages hereinbefore alleged.

**FIFTH CAUSE OF ACTION**
**Violation of NYC Administrative Code Chap. 8 Sec 8-803**
**(Defendants Serrano, Willacy,  Phillips, Souffrant, Lai, (SSA) M. White, Mercado, Aponte, McCain, Mercado,  Zapata, Popo, Ortega and Pessoa.)**

281. Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

282. The individually named defendants herein are police officer or school safety agent within the NYPD.

283. The individually named defendants herein arrested Mr. Jeanty without reasonable suspicion and without probable cause.

284. As a direct and proximate result of the City's negligence, Mr. Jeanty sustained the damages hereinbefore alleged.

285. Each and every named Defendant in this action herein are jointly and severally liable for all damages.

**SIXTH CAUSE OF ACTION**
**42 U.S.C. § 1983 – Fourteenth Amendment (Denial of Right to a Fair Trial / Fabrication of Evidence**
**(Defendants Aquino, Phillips, Willacy and Rodriguez, in their individual capacities)**

286. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

287. At all relevant times, Defendants Aquino, Phillips, Willacy and Rodriguez were acting under color of state law as NYPD officers and/or agents.

288. Defendants Aquino, Phillips, Willacy and Rodriguez fabricated information and forwarded that known false information to the Kings County District Attorney's ECAB

(hereinafter ECAB).

289. Defendant Aquino falsely stated to ECAB that Mr. Jeanty allegedly violated an order of protection which allegedly required Mr. Jeanty to not communicate with Defendant Sanders the complainant.

290. Defendant Aquino falsely stated that Mr. Jeanty "did repeatedly send informant (Sanders) repeated text messages" despite having no proof of this accusation.

291. Defendant Aquino signed the criminal court complaint despite knowing it contained false information which Aquino created.

292. Defendant Phillips falsely told ECAB that "Deft (Mr. Jeanty) to [NAJ] that [NAJ] could not go to the bathroom". Defendant Phillips knew that Defendant Serrano told Mr. Jeanty that Mr. Jeanty could not take NAJ to the bathroom.

293. Defendant Phillips falsely told ECAB that "officers convinced [Mr. Jeanty] to let [NAJ] go to the bathroom".

294. Defendant knew that Defendant Serrano after approximately 30 minutes had elapsed decided to let Mr. Jeanty take NAJ to the bathroom.

295. Defendant Phillips failed to tell ECAB that she coerced NAJ, a 6 year old child, to say that she was hurt.

296. Defendant Phillips failed to inform ECAB that Mr. Jeanty had equal 'legal custody' and 'physical legal custody' of NAJ as Defendant Sanders.

297. Defendant Phillips failed to tell ECAB that the document she reviewed was an "ORDER ON MOTION" and not a "VISITATION ORDER".

298. Defendants provided false/omitted information to/from ECAB to cover up the false arrest Defendant Phillips participated in.

299. Defendant Phillips knowing signed a criminal court complaint which stated that Mr.

Jeanty was "not permitted to have custody of [NAJ] throughout the preceding weekend"

300. Defendant Willacy provided ECAB with a S.C.A.M report that contained false information.

301. Defendant Willacy falsely told ECAB Mr. Jeanty was using NAJ as a shield.

302. Defendant Willacy falsely told ECAB that Mr. Jeanty subjected NAJ to personal injury which Defendants Willacy, Phillips, Serrano, Lai and Souffrant were responsible for when they unlawfully took NAJ from Mr. Jeanty.

303. Defendant Willacy also provided the false S.C.A.M report to NYS OCFS and NYC ACS so that neglect proceeding would be filed against Mr. Jeanty.

304. Defendant Rodriguez failed to inform ECAB that Mr. Jeanty had provided a valid and unexpired Family Court Order that allowed Mr. Jeanty to communicate with Defendant Sanders to facilitate visitation with NAJ on Court ordered visitation days.

305. Defendant Aquino knowingly signed a criminal court complaint that falsely charged Mr. Jeanty with menacing and harassing Defendant Sanders.

306. Defendant Phillips knowingly signed a criminal court complaint that falsely charged Mr. Jeanty with obstructing governmental administration, criminal contempt and endangering the welfare of a child.

307. Defendant Willacy knowingly signed a S.C.A.M report that falsely alleged Mr. Jeanty subjected NAJ to personal injury.

308. Defendants Aquino, Phillips, Willacy and Rodriguez all knew that the false information they provided could be used at a trial against Mr. Jeanty.

## SEVENTH CAUSE OF ACTION
### Abuse of Process
### (Defendants Serrano, Willacy, Phillips, Souffrant and Lai)

309. Defendants Serrano, Willacy, Phillips, Souffrant and Lai, arrested and charged Mr.

Jeanty for the sole purpose of justifying taking NAJ from His custody and turning her over to Defendant Sanders.

310. Defendants Serrano, Willacy, Phillips, Souffrant and Lai, arrested and charged Mr. Jeanty because Mr. Jeanty would not listen to their commands to turn NAJ over to them, Defendant Sanders or Noel.

311. Defendants Serrano, Willacy, Phillips, Souffrant and Lai, knew and were informed that they were responding to a non-criminal domestic dispute between two parents over custody of their child.

312. Defendants Serrano, Willacy, Phillips, Souffrant and Lai, knew they had no legitimate crimes to charge Mr. Jeanty with so they fabricated and manufactured three false charges.

313. Defendants Willacy and Phillips created false documents, (Domestic Incident Report, (DIR) Suspected Child Abuse and Maltreatment (SCAM reports)) in support of these fabricated charges.

314. Defendants Phillips and Willacy provided known false information to ECAB to support false charges in order to cover up their unlawful act of taking NAJ from Mr. Jeanty without legal justification.

315. Defendants Phillips and Willacy falsely charged Mr. Jeanty and had him sent to central booking, processed and sent to face a judge who would issue a full stay away order of protection in favor of Defendant Sanders and NAJ.

316. They knew that a stay away order of protection would require Mr. Jeanty to stay away from NAJ for an extended period of time.

317. Defendants Serrano, Phillips, Willacy, Souffrant and Lai knew that their actions would assist Ms. Sanders in Her custody case in Family Court.

318. They knew that taking NAJ from Mr. Jeanty would cause Him mental pain and suffering.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a. Compensatory damages in an amount of $5,000,000 or an amount to be determined at trial;

b. Punitive damages against the individually named defendants in an amount to be determined at trial;

c. Reasonable fees and costs under 42 U.S.C. § 1988; and

d. Such other and further relief as this Court may deem just, proper and equitable.

Dated: October 30, 2025

Queens, New York

Vladimir Jeanty, Plaintiff, Pro-se
PO Box 921173
Arverne, NY 11692
(516) 667-9231

STATE OF NEW YORK

COUNTY OF <u>QUEENS</u>

---

MR. VLADIMIR JEANTY, ON HIS OWN BEHALF AND ON BEHALF OF HIS MINOR DAUGHTER NAJ.,

Plaintiff,

---against---

CITY OF NEW YORK; LT CARLOS SERRANO, TAX ID #946236; PO WILLACY, SHIELD #12365; PO ASHLEY PHILLIPS, SHIELD #5855; PO JEAN SOUFFRANT, SHIELD #11002; PO SHUNJIE LAI, SHIELD #26355; PO STEPHEN GRECO, SHIELD #10086; PO FRANK HERNANDEZ, SHIELD #22758; DET. ALEX ARTY, SHIELD #1112; P.O KIHANG CHEUNG, SHIELD #8660; PO ALEX RAMLAKAN, SHIELD #4419; PO MIRLUIS RODRIGUEZ #4425; PO RICHAEL PICARD, SHIELD #23016; PO LEONARD GIORDANO, SHIELD #26955; PO FERNANDO GALARCE, SHIELD #5670; PO ALAN MEI, SHIELD #19312; PO JUSTIN CALANDRA, SHIELD #23626; SSA WILSON; SSA DOES 1-4; NYPD POLICE OFFICERS JOHN/JANE DOES 1-10; CAMBA EMPLOYEES JOHN/JANE DOES 1-5; NYCDOE EMPLOYEES JOHN/JANE DOES 1-5; NIVARD EDMOND-MACK; TIFFANY ROBINSON; JAMEL ROBINSON; NYC POLICE ATHLETIC LEAGUE; CAMBA; CHARMAINE NOEL; KRISTINA BEECHER; UNA SANDERS; CAROLINE OKUN;

Defendants.

---

**<u>VERIFIED NOTICE OF CLAIM</u>**

PLEASE TAKE NOTICE, that the above named Claimant claims and demands from the City of New York, CAMBA, PAL recompense for damages sustained by Claimant by reason of the false arrest and imprisonment, malicious prosecution, emotional distress, custodial interference, alienation of affection, unlawful, intentional and/or negligent, careless acts and omissions of the the City of New York, CAMBA, PAL, their agencies, agents, servants

and employees, along with any applicable benefits provided by law, and in support thereof, Claimant states:

1. This Notice of Claim is made pursuant to the requirements of the applicable Statutes including § 50(E) and 50(I) of the General Municipal Law of the State of New York and such other laws and statutes as are in the case made and provided.

2. The name and address of the Claimant is:

> VLADIMIR JEANTY
> PO BOX 921173
> ARVERNE, NY 11692

3. The Claimant is proceeding pro-se.

4. The incidents which form the basis of this claim occurred on 7/26/22, 7/28/2022, 8/5/2022, 8/8/2020, 9/21/2022 and 9/26/2022.

<u>7/26/2022, 7/28/2022, 8/5/2022 AND 8/8/2022 EVENTS</u>

5. On 7/19/22 at approximately 11am Mr. Jeanty called PAL Breukelen and spoke to an unknown staff member. Mr. Jeanty asked if it was ok to bring his daughter NAJ lunch. The staff member a female said yes, and that lunch was at 12pm.

6. On 7/19/22 at approximately 12pm. Mr. Jeanty arrived at PAL Breukelen. A dark skinned older, slim female assisted Mr. Jeanty. Mr. Jeanty informed her that he was there to drop NAJ her lunch. The staff member got NAJ and NAJ came out to get her lunch from Mr. Jeanty her dad.

7. NAJ returned to her room. Mr. Jeanty left.

8. On 7/26/22 Mr. Jeanty again came to PAL Breukelen during lunch time to give NAJ her lunch. When Mr. Jeanty arrived the doors were closed and a sign said "ring the door bell".

9. Mr. Jeanty rang the door bell. A staff member responded. Mr. Jeanty informed the staff member he wanted to give NAJ her lunch. The staff member said she would have to bring NAJ her lunch. Mr. Jeanty stated he preferred to personally give NAJ her lunch. The staff member said that this was not allowed because *"you are not allowed to see NAJ"*.

10. Mr. Jeanty asked for a supervisor. A Male named Jamel Robinson came out and repeated to Mr. Jeanty that Mr. Jeanty could not give NAJ her lunch because he was not allowed to see NAJ or take her.

11. Thereafter a female named Tiffany Robinson came out and repeated the same as Mr. Robinson.

12. Ms. Robinson stated that Mr. Jeanty could not see or take NAJ because there was a Court Order that they had to comply with.

13. Mr. Jeanty requested to see the child's application and any court order that stated Mr. Jeanty could not see or take NAJ.

14. Mr. and Ms. Robinson both refused to provide Mr. Jeanty any paperwork.

15. At all times relevant Mr. and Ms. Robinson were aware that Mr. Jeanty is NAJ's dad.

16. NYPD was called.

17. Ms. Robinson informed Mr. Jeanty that she would let Mr. Jeanty see NAJ "this one time".

18. NAJ came to see Mr. Jeanty and get her lunch.

19. Mr. Jeanty left before NYPD arrived.

20. Mr. Jeanty called and spoke to Nivard Edmond-Mack about this incident. Ms. Edmond-Mack stated she would look into this incident.

21. Mr. Jeanty returned on 7/28/2022 to again see His daughter.

22. PAL Breukelen staff refused.'

23. NYPD was called. P.O KIHANG CHEUNG #8660, PO RAMLAKAN #4419 responded and refused to assist Mr. Jeanty.

24. Mr. Jeanty filed a report and left.

25. On 8/5/22 Mr. Jeanty arrived at approximately 3:45pm with his 12 year old son JAJ. Mr. Jeanty had at this time a Court ordered visit that began at 4p.

26. Mr. Jeanty directed his 12 year old son JAJ to go into PAL Breukelen and get his sister NAJ.

27. JAJ returned to Mr. Jeanty who was waiting on the sidewalk approximately 25 ft from PAL Breukelens front door without NAJ.

28. JAJ informed Mr. Jeanty that the PAL staff refused to get his sister NAJ because he wasn't an adult. JAJ had informed them that NAJ's dad was visibly outside on the sidewalk.

29. PAL Breukelen staff refused to release NAJ to her brother JAJ and/or Mr. Jeanty.

30. NYPD was called. PO PO RODRIGUEZ #4425, PO PICARD #23016, PO GIORDANO #26955, PO GALARCE #5670 responded.

31. PAL staff, Tiffany and Jamel Robinson provided NYPD with a Court Order and a letter which they claimed did not allow Mr. Jeanty to pick up or see NAJ.

32. NYPD PO Officer Picard informed Mr. Jeanty that He would not be picking up NAJ because there was a Court order, a letter from the mother and he said so.

33. PO RODRIGUEZ #4425, PO PICARD #23016, PO GIORDANO #26955, PO GALARCE #5670, prevented Mr. Jeanty from going to the PAL Breukelen front door to get NAJ. They told Mr. Jeanty if He went to the door He would be arrested. When Mr. Jeanty attempted to go to the front door PO RODRIGUEZ #4425, PO PICARD #23016, PO GIORDANO #26955, PO GALARCE #5670, surrounded Mr. Jeanty and prevented Mr. Jeanty from going to get NAJ.

34. PAL Breukelen staff and PO RODRIGUEZ #4425, PO PICARD #23016, PO GIORDANO #26955, PO GALARCE #5670 called NAJ's mother Una Sanders. They told her Mr. Jeanty was trying to pick up His daughter.

35. PAL Breukelen staff and NYPD agreed with Ms. Sanders that they would not allow Mr. Jeanty to pick up NAJ and that they would wait for Ms. Sanders to arrive and pick up NAJ.

36. Ms. Sanders arrived at approximately 5:30pm a PAL Breukelen. Ms. Sanders and PO RODRIGUEZ #4425, PO PICARD #23016, PO GIORDANO #26955, PO GALARCE #5670, were aware that there was full order of protection against Ms. Sanders in favor of Mr. Jeanty.

37. One of the PO walked Ms. Sanders into PAL Breukelen. They escorted Ms. Sanders out a back door so that Mr. Jeanty could not see his daughter.

38. Mr. Jeanty filed a report and left at approximately 6:30pm without NAJ.

39. On 8/8/22 Mr. Jeanty arrived at PAL Breukelen to pick NAJ at approximately 10am.

40. PAL Breukelen staff refused to release NAJ to Mr. Jeanty.

41. NYPD was called. PO MEI #19312, PO CALANDRA #23626 responded. They refused to assist Mr. Jeanty with getting his daughter NAJ. They claimed there was a Court order that did not allow Mr. Jeanty to pick up NAJ.

42. Mr. Jeanty left and filed a report.

43. At all times relevant in ¶¶ 5 to 35 all named defendants were aware that Mr. Jeanty is NAJ's father.

44. At all times relevant in ¶¶ 5 to 35 all named defendants were aware that there was no Court Order that did not allow Mr. Jeanty to see or pick up NAJ, his daughter.

45. At all times relevant in ¶¶ 5 to 42 all named defendants were aware that there was no custody order that granted legal custody to Ms. Sanders.

46. At all times relevant in ¶¶ 5 to 42 all named defendants were aware that there was no custody order granted legal physical custody to Ms. Sanders.

47. At all times relevant in ¶¶ 5 to 42 all named defendants were aware that Mr. Jeanty had equal legal rights to make decisions regarding NAJ as Ms. Sanders.

48. At all times relevant in ¶¶ 5 to 42 all named defendants were aware that Mr. Jeanty had previously scene and picked up NAJ from PAL Breukelen.

<u>9/21/2022 EVENTS</u>

49. On 2/1/2022 Mr. Jeanty was arrested by Det. Arty of the NYPD 73rd precinct.

50. Det. Arty falsely charged Mr. Jeanty with 5 criminal charges ranging from criminal contempt to harassment.

51. Also involved were PO STEPHEN GRECO #10086, PO FRANK HERNANDEZ #22758.

52. Mr. Jeanty was incarcerated for over 24 hours in central booking.

53. A full order of protection was issued against Mr. Jeanty.

54. The FOP interfered with Mr. Jeanty's ability to visit his daughter NAJ or talk to her.

55. Mr. Jeanty made over 5 appearances in Kings County Criminal Court.

56. Det. Arty arrested and prosecuted Mr. Jeanty without reasonable suspicion or probable cause that any crime occurred.

57. On 6/9/2022 Mr. Jeanty was arrested by John doe officers.

58. Mr. Jeanty was arrested without reasonable suspicion or probable cause that any crime occurred.

59. Mr. Jeanty made 3 appearances in Kings County Criminal Court.

60. On 9/21/2022, the charges were dismissed in regards to both arrests.

<u>9/26/2022 INCIDENT</u>

61. On 9/26/2022, Mr. Jeanty called PS003 at approximately 9a, spoke to Ms. Charmaine Noel and confirmed that his daughter NAJ was dropped off by her mother Una Sanders.

62. 9/26/2022 was a holiday. PS3 was open providing daycare services.

63. Mr. Jeanty arrived at PS3 at approximately 10:30am and spoke to a school safety officer (old miserable black woman). Mr. Jeanty informed this officer that He was there to pick up NAJ.

64. Approximately 15 minutes later Ms. Charmaine Noel appeared holding a piece of paper and without NAJ.

65. Mr. Jeanty asked for NAJ. Ms. Noel informed Mr. Jeanty that Mr. Jeanty was not allowed to pick up NAJ.

66. Ms. Noel told Mr. Jeanty she would allow Mr. Jeanty to see NAJ.

67. Ms. Noel went to get NAJ. When Ms. Noel presented with NAJ Mr. Jeanty took NAJ and informed Ms. Noel that He and NAJ were leaving and that he wished to sign NAJ out.

68. Ms. Noel instructed 3 school safety officers to stop Mr. Jeanty.

69. Ms. Noel grabbed NAJ by her arm and attempted to yank NAJ out of Mr. Jeanty's arms. This cause NAJ pain and she began to cry.

70. 3 officers surrounded Mr. Jeanty and NAJ and told Mr. Jeanty he would be arrested if he left with NAJ. One officer was instructed by Ms. Noel to lock the door.

71. As Mr. Jeanty attempted to exit Officer Wilson prevented Mr. Jeanty from leaving by pushing on NAJ's back as NAJ was in Mr. Jeanty's arms.

72. NYPD was called.

73. Mr. Jeanty sat down in a chair and waited for NYPD.

74. NYPD arrived. Lt Serrano, was first to speak to Mr. Jeanty and told Mr. Jeanty that He had to return NAJ to the school staff and that Mr. Jeanty could not leave with His daughter.

75. Thereafter multiple people, including but not limited to LT CARLOS SERRANO, TAX ID #946236, PO WILLACY, SHIELD #12365, PO ASHLEY PHILLIPS, SHIELD #5855, PO JEAN SOUFFRANT, SHIELD #11002, PO SHUNJIE LAI, SHIELD #26355, SSA WILSON, SSA DOES 1-4, NYPD POLICE OFFICERS JOHN/JANE DOES 1-10, CAMBA EMPLOYEES JOHN/JANE DOES 1-5, NYCDOE EMPLOYEES JOHN/JANE DOES 1-5, CHARMAINE NOEL, repeatedly told Mr. Jeanty He could not leave.

76. For approximately 2 hours LT CARLOS SERRANO, TAX ID #946236, PO WILLACY, SHIELD #12365, PO ASHLEY PHILLIPS, SHIELD #5855, PO JEAN SOUFFRANT, SHIELD #11002, PO SHUNJIE LAI, SHIELD #26355, SSA WILSON, SSA DOES 1-4, NYPD POLICE OFFICERS JOHN/JANE DOES 1-10, CAMBA EMPLOYEES JOHN/JANE DOES 1-5, NYCDOE EMPLOYEES JOHN/JANE DOES 1-5, CHARMAINE NOEL, would not let Mr. Jeanty leave with NAJ.

77. LT SERRANO TAX ID #946236, PO WILLACY #12365, PO PHILLIPS #5855, PO SOUFFRANT #11002, PO LAI #26355, SSA WILSON, SSA DOES 1-4, NYPD POLICE OFFICERS JOHN/JANE DOES 1-10, refused to allow Mr. Jeanty to take NAJ to use the bathroom.

78. LT CARLOS SERRANO, TAX ID #946236, PO WILLACY, SHIELD #12365, PO ASHLEY PHILLIPS, SHIELD #5855, PO JEAN SOUFFRANT, SHIELD #11002, PO SHUNJIE LAI, SHIELD #26355, SSA WILSON, SSA DOES 1-4, NYPD POLICE OFFICERS JOHN/JANE DOES 1-10, CAMBA EMPLOYEES JOHN/JANE DOES 1-5, NYCDOE EMPLOYEES JOHN/JANE DOES 1-5, CHARMAINE NOEL, told Mr. Jeanty he was not under arrest but they repeatedly blocked Mr. Jeanty as he attempted to leave with NAJ.

79. Eventually, LT SERRANO TAX ID #946236, PO WILLACY #12365, PO PHILLIPS #5855, PO SOUFFRANT #11002, PO LAI #26355, SSA WILSON, SSA DOES 1-4, NYPD POLICE OFFICERS JOHN/JANE DOES 1-10, CAMBA EMPLOYEES JOHN/JANE DOES 1-5, NYCDOE EMPLOYEES JOHN/JANE DOES 1-5 allowed Mr. Jeanty to take NAJ to use the bathroom.

80. Upon returning to a seat LT SERRANO TAX ID #946236, PO WILLACY #12365, PO PHILLIPS #5855, PO SOUFFRANT #11002, PO LAI #26355, SSA WILSON, SSA DOES 1-

4, NYPD POLICE OFFICERS JOHN/JANE DOES 1-10, arrested Mr. Jeanty by forcibly removing NAJ from Mr. Jeanty's arms without Mr. Jeanty's permission and turning NAJ to the custody of Ms. Noel without Mr. Jeanty's permission.

81. LT CARLOS SERRANO, TAX ID #946236, PO WILLACY, SHIELD #12365, PO ASHLEY PHILLIPS, SHIELD #5855, PO JEAN SOUFFRANT, SHIELD #11002, PO SHUNJIE LAI, SHIELD #26355, SSA WILSON, SSA DOES 1-4, NYPD POLICE OFFICERS JOHN/JANE DOES 1-10, CAMBA EMPLOYEES JOHN/JANE DOES 1-5, NYCDOE EMPLOYEES JOHN/JANE DOES 1-5, CHARMAINE NOEL, repeatedly attempted to speak to NAJ without Mr. Jeanty's consent.

82. LT CARLOS SERRANO, TAX ID #946236, PO WILLACY, SHIELD #12365, PO ASHLEY PHILLIPS, SHIELD #5855, PO JEAN SOUFFRANT, SHIELD #11002, PO SHUNJIE LAI, SHIELD #26355, SSA WILSON, SSA DOES 1-4, NYPD POLICE OFFICERS JOHN/JANE DOES 1-10, CAMBA EMPLOYEES JOHN/JANE DOES 1-5, NYCDOE EMPLOYEES JOHN/JANE DOES 1-5, CHARMAINE NOEL, repeatedly told Mr. Jeanty there was a Court order forbidding Mr. Jeanty from having custody of NAJ. This was false and known to be false by all named defendants.

83. Mr. Jeanty was falsely arrested for criminal contempt, obstructing governmental administration and endangering the welfare of a child.

84. There was no order that Mr. Jeanty was in contempt of.

85. NYPD was called to PS3 by school safety officers and Ms. Noel because they did not want Mr. Jeanty to leave with NAJ.

86. At all times relevant NAJ was safe and secure in Mr. Jeanty's arms. The police and others present were scaring NAJ and threatening Mr. Jeanty.

87. LT CARLOS SERRANO, TAX ID #946236, PO WILLACY, SHIELD #12365, PO ASHLEY PHILLIPS, SHIELD #5855, PO JEAN SOUFFRANT, SHIELD #11002, PO SHUNJIE LAI, SHIELD #26355, SSA WILSON, SSA DOES 1-4, NYPD POLICE OFFICERS JOHN/JANE DOES 1-10, CAMBA EMPLOYEES JOHN/JANE DOES 1-5, NYCDOE EMPLOYEES JOHN/JANE DOES 1-5, CHARMAINE NOEL, told Mr. Jeanty he could not take NAJ to the bathroom. They told Mr. Jeanty that Mr. Jeanty had to turn NAJ over to school staff or PO Phillips for NAJ to use the bathroom. They repeatedly refused to allow NAJ to use the bathroom.

88. Lt Serranno and PO Phillips falsely reported to ECAB that Mr. Jeanty refused to let NAJ use the bathroom. They knowingly lied to the prosecutors office to sustain their false charges against Mr. Jeanty

89. There was no legitimate investigation for the police to conduct.

90. LT CARLOS SERRANO, TAX ID #946236, PO WILLACY, SHIELD #12365, PO ASHLEY PHILLIPS, SHIELD #5855, PO JEAN SOUFFRANT, SHIELD #11002, PO SHUNJIE LAI, SHIELD #26355, SSA WILSON, SSA DOES 1-4, NYPD POLICE OFFICERS JOHN/JANE DOES 1-10, CAMBA EMPLOYEES JOHN/JANE DOES 1-5, NYCDOE EMPLOYEES JOHN/JANE DOES 1-5, CHARMAINE NOEL, all knew Mr. Jeanty was NAJ's father.

91. At all times relevant in ¶¶61 to 90 all named defendants knew there was no court order preventing Mr. Jeanty from picking up NAJ.

92. The only danger present was that of NYPD's presence.

93. Mr. Jeanty was arrested without reasonable suspicion or probable cause.

94. Mr. Jeanty was arrested and prosecuted based on known false and made up allegations of Ms. Noel, Lt Lt Serrano, PO Phillips, Una Sanders and others.

95. NAJ continues to be in the presence of Ms. Noel and other persons who traumatized her.

96. Mr. Jeanty was charged and sent to central booking.

97. A full order of protection was issued against Mr. Jeanty, ordering Mr. Jeanty to stay away from his daughter NAJ.

98. A false abuse and neglect report was made to the NYS Child Abuse Hotline by NYPD.

99. As of today's date the charges against Mr. Jeanty are still pending.

100. Claimants Vladimir Jeanty and NAJ are seeking compensatory and punitive damages, costs and reasonable fees and other relief resulting from Defendants' and their officers' misconduct.

101. Claimants Vladimir Jeanty and NAJ lost their companionship and consortium with each other and his children, her siblings and family and was otherwise required to render to them services for their care and cure and seeks damages against Defendants for same.

102. Mr. Jeanty and NAJ have suffered extreme emotional distress and suffering.

103. This Notice of Claim is made and served on behalf of the Claimant in compliance with the provisions of Section 50(e) of the General Municipal Law and such other laws and statutes as are in the case made and provided.

PLEASE TAKE FURTHER NOTICE that the Claimants present these claims for adjustment and payment and notify you that unless these claims are adjusted and paid within the time provided by law from the date of presentation to you, the Claimants intend to

commence an action on these claims against the Defendants City of New York, CAMBA and each of the individually named defendants in the caption above.

DATED:     October 21, 2022

Queens, New York

_____

VLADIMIR JEANTY, CLAIMANT

# VERIFICATION

STATE OF NEW YORK)

COUNTY OF QUEENS) ss:

MR. VLADIMIR JEANTY being duly sworn, deposes and says: that I am the Claimant in the within action; that I have read the foregoing Notice of Claim and know the contents thereof; that the same is true to the knowledge of the deponent, except as to the matters therein stated to be alleged upon information and belief and as to those matters' deponent believes it to be true.

Signed and sworn to before me

this 21st day of October 2022.

_____
NOTARY PUBLIC

_____
VLADIMIR JEANTY, CLAIMANT

CYNTHIA GIBSON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01GI6213551
Qualified in Queens County
My Commission Expires 1/19/2025